IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD S. RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-746-KAJ |
| | ) | |
| THE DELAWARE RIVER AND BAY | ) | |
| AUTHORITY, JAMES JOHNSON, | ) | |
| Individually, JAMES WALLS, Individually, | ) | |
| TRUDY SPENCE-PARKER, Individually, | ) | |
| and CONSUELLA PETTY-JUDKINS, | ) | |
| Individually. | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPENDIUM OF UNREPORTED DECISIONS**

YOUNG CONWAY STARGATT & TAYLOR LLP

William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6623
Facsimile: (302) 576-3282, 3314
Email: wbowser@ycst.com; amartinelli@ycst.com
Attorneys for Defendants

LEXSEE 2003 U.S. DIST. LEXIS 19325

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION and LISA STEPLER,
Plaintiffs, v. AVECIA INC., Defendant.**

**C.A. No. 03-320-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 19325*

**October 23, 2003, Decided**

**SUBSEQUENT HISTORY:** Reargument denied by *EEOC v. Avecia Inc.*, 2004 U.S. Dist. LEXIS 7995 (D. Del., Apr. 28, 2004)
Summary judgment granted by, Sub nomine at *Stepler v. Avecia Inc.*, 2004 U.S. Dist. LEXIS 14955 (D. Del., July 19, 2004)

**DISPOSITION:** [*1] Defendant's motion to dismiss plaintiff's state law tort claim for intentional infliction of emotional distress granted.

**COUNSEL:** Patricia C. Hannigan, Esquire, Wilmington, Delaware; Philip B. Bartoshesky, Esquire, Wilmington, Delaware. Counsel for Plaintiffs.

Jennifer C. Bebko Jauffret, Esquire, Wilmington, Delaware; Ginger D. Schroder, Esquire, Buffalo, New York. Counsel for Defendant.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM OPINION

Wilmington, Delaware

**ROBINSON, Chief Judge**

## I. INTRODUCTION

On March 24, 2003, the Equal Opportunity Commission (the "EEOC") filed a complaint against Avecia, Inc. ("Avecia") on behalf of Lisa Stepler ("Stepler") alleging retaliation under Title VII of the Civil Rights Act of 1964 (*42 U.S.C. § 2000(e), et seq.*) and Title I of the Civil Rights Act of 1999 (*42 U.S.C. § 1981A*). (D.I. 1)

On July 3, 2003, Stepler filed a motion to intervene in this action. (D.I. 11) After the court granted Stepler's motion on July 8, 2003 (D.I. 11), Stepler filed a three count complaint in intervention against Avecia on July 17, 2003. (D.I. 15) Stepler alleged [*2] retaliation under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991; (2) wrongful termination pursuant to Delaware state law; and (3) intentional infliction of emotional distress pursuant to Delaware state law. The EEOC is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964. (D.I. 1 at P 3) Stepler is a resident of the State of Maryland. (D.I. 15 at P 4) Avecia is a Delaware company with business operations in the State of Delaware and the City of New Castle. (D.I. 1 at P 4) The court has jurisdiction over the EEOC's and Stepler's federal civil rights claims pursuant to *28 U.S.C. §§ 1331and 1334* and supplemental jurisdiction over all other claims pursuant to *28 U.S.C. § 1367(a)*. Avecia's motion to dismiss Stepler's intentional infliction of emotional distress claim is currently before the court. (D.I. 27) Because the *Delaware Workers' Compensation Act* (the "Act") bars Stepler's claim, the court grants Avecia's motion.

## II. BACKGROUND

Stepler began her employment at Avecia on or about November [*3] 1987. (D.I. 15 at P 6) Beginning in 1999, Stepler avers that she was subjected to a sexually hostile work environment by a male co-worker. (D.I. 15 at P 7) She complained to Avecia's management, including human resource personnel, in both April and August 2000 about the sexual harassment. (D.I. 15 at P 8)

After lodging her complaints, Stepler contends that Avecia began to treat her differently than its other employees. (D.I. 15 at P 10) For instance, Stepler maintains that Avecia scrutinized her vacation requests, work assignments, and progress more than other employees. She also alleges that Avecia required her to remain at her

work station during work breaks, but permitted other employees to enjoy breaks in designated areas with other employees. Additionally, Stepler claims that Avecia forbid her from displaying personal items around her work area, but at the same time, did not institute such restrictions on other employees.

In February 2001, Stepler informed Avecia's management that she was being subjected to disparate treatment in retaliation for complaining about sexual harassment. (D.I. 15 at P 12) She complained directly to Avecia's human resource manager about this retaliation [*4] again in March 2001. Avecia terminated Stepler's employment on or about May 11, 2001. (D.I. 15 at P 15) After being terminated, Stepler filed a complaint against Avecia with the EEOC. The EEOC conducted an investigation, determined that Avecia violated Title VII, and attempted an unsuccessful conciliation between Stepler and Avecia. (D.I. 31 at 3) Consequently, the EEOC initiate suit against Avecia on behalf of Stepler.

In count III of her complaint in intervention, Stepler argues that Avecia intentionally inflicted emotional distress on her by its disparate treatment. In particular, Stepler charges that Avecia's criticism and scrutiny was intentional, malicious, and calculated to cause her to suffer extreme emotional distress. (D.I. 15 at P 32) Stepler further claims that she suffers severe and continuing mental and emotional distress from this treatment. (D.I. 15 at P 33) Avecia, in response, denies any inappropriate or illegal conduct. (D.I. 29)

## III. STANDARD OF REVIEW

Under *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, "[a] complaint should be dismissed only if, after accepting as true all of the facts alleged in the [*5] complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted [to the plaintiff] under any set of facts consistent with the allegations of the complaint." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998).* The court, therefore, must accept as true all material allegations of the complaint, and it must construe the complaint in favor of the plaintiff. See *id.* Claims may be dismissed only if a plaintiff cannot demonstrate any set of facts that would entitle him to relief. See *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).*

## IV. DISCUSSION

Avecia raises two affirmative defenses in its motion to dismiss. First, Avecia argues that Stepler's intentional infliction of emotional distress intervention claim is barred by the Delaware statute of limitations applicable to personal injury claims. Alternatively, Avecia charges

that this claim is barred by the Act. The court will consider each of Avecia's affirmative defenses in turn below.

### A. Statute of Limitations

The Delaware statute of limitations concerning personal injury provides [*6] that "no action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of [two] years from the date upon which it is claimed that such alleged injuries were sustained." *DEL. CODE ANN. tit. 10, § 8119* (2003). "Personal injuries" include emotional injuries for statute of limitation purposes. See *Wright v. ICI Americas Inc., 813 F. Supp. 1083 (D. Del. 1993).* Accordingly, under Delaware law, a two-year limitations period applies to claims for emotional distress.

Avecia argues that Stepler's intervention claim for intentional infliction of emotion distress falls outside of the two-year statute of limitations period for a personal injury action. Avecia points out that Stepler was terminated on May 11, 2001, but did not move to intervene until July 3, 2003 or file her complaint until July 17, 2003. Given these dates, Avecia contends that more than two years have passed since Stepler's alleged injuries were sustained.

In rebuttal, Stepler maintains that her intervention complaint relates back to the EEOC's original complaint of March 2003 and that the EEOC could properly amend its complaint [*7] to assert an intentional infliction of emotion distress claim under *Rule 15(c) of the Federal Rules of Civil Procedure* because such amendment would be based upon the same conduct described in the EEOC's original complaint. Stepler, therefore, characterizes the issue as whether the claims of a complaint in intervention may relate back to the original complaint. Stepler advocates that her complaint in invention and the EEOC's original complaint are virtually identical with regard to the factual allegations. As well, she notes that Avecia answered both the EEOC's original complaint and her complaint in invention with the same defenses. Hence, Stepler argues that Avecia received notice of the conduct which forms the basis for her intentional infliction of emotional distress claim and, as a result, will not suffer undue prejudice if her intentional infliction of emotional distress intervention complaint proceeds.

In the alternative, Stepler argues that the statute of limitations was tolled from the time that she filed her complaint with the EEOC until the time that the EEOC filed its Title VII and § 1981 litigation against Avecia on her behalf. [*8] Stepler charges that over a year and one-half passed while the EEOC investigated her charges and attempted resolution outside the court system. Given this time period, Stepler asserts that her intentional infliction of emotional distress claim is within the two-year statute of limitations.

The court does not find that the two-year statute of limitations for personal injury actions bars Stepler's intentional infliction of emotional distress intervention claim as Avecia asserts. Delaware courts have found that the claims of an intervenor that relate back to the original filing defeat statute of limitation defenses. See In *Re MAXXAM, Inc.*, 698 A.2d 949 (Del. Ch. 1996); see also *Child, Inc. v. Rodgers*, 377 A.2d 374 (Del. Super. 1977), aff'd in part and rev'd in part sub nom, Pioneer Nat'l Title Ins. Co. v. Child, Inc., 401 A.2d 68 (Del. 1979). "As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense. [*9] " *Child*, 377 A.2d at 377 (quoting WRIGHT AND MILLER, 6 FEDERAL PRACTICE AND PROCEDURE § 1501 (1971)).

While it is clear that more than two years passed between Stepler's termination and the filing of her intervention complaint, the court agrees with Stepler that the conduct upon which she bases her intentional infliction of emotion distress intervention claim is the same conduct upon which the EEOC filed its Title VII and § 1981 action. As such, the court appreciates the relationship between Stepler's intentional infliction of emotional distress invention claim and the EEOC's original complaint. The court also notes that Avecia would not be prejudiced by Stepler's intentional infliction of emotion distress claim because it was provided notice of the alleged illegal conduct when the EEOC filed suit on behalf of Stepler. Accordingly, the court concludes that the "relation back" doctrine saves Stepler's intentional infliction of emotional distress intervention claim from being time-barred.

Considering Stepler's alternative argument that filing a complaint with the EEOC tolls the statute of limitations for an independent state law claim such as intentional infliction [*10] of emotional distress during the EEOC's administrative process, the court again agrees with Stepler. A litigant typically cannot file a claim for intentional infliction of emotional distress directly in federal court until a federal claim is brought because the federal court would lack subject matter jurisdiction. See *Forbes v. Merrill Lynch Fenner & Smith, Inc.*, 957 F. Supp. 450, 456 (S.D.N.Y. 1997). If the statute of limitations did not toll during the EEOC's investigation, a litigant would be forced to file any state law claim in state court and then later bring a federal discrimination claim in federal court. See id. The litigant would be forced to argue two cases with an identical fact pattern under two separate sovereigns. See id. Such a situation would thwart judicial efficiency and undermine the EEOC's opportunity to investigate allegations of employment discrimination and to

facilitate dispute resolution prior to litigation. See id. For these reasons, the court concludes that the two-year statute of limitations does not bar Stepler's intentional infliction of emotional distress claim against Avecia.

**B. The Delaware Workers' Compensation Act [*11]**

The Delaware General Assembly enacted its first Workers' Compensation Statute in 1917. 29 Del. Laws ch. 233 (1917). One of the General Assembly's purposes in enacting the statute was to provide more direct and economical compensation for injured employees and to create a pool of employers that would bear the burden of ameliorating the losses resulting from industrial accidents. See *Koeppel v. E.I. DuPont De Nemours & Co.*, 37 Del. 369, 7 W.W. Harr. 369, 183 A. 516 (Del. Super. 1936), aff'd, 38 Del. 542, 8 W.W. Harr. 542, 194 A. 847 (Del. 1937). The Act was also designed to provide prompt financial and medical assistance to injured employees and their families because litigation often delayed such assistance. See *Frank C. Sparks Co. v. Huber Baking Co.*, 48 Del. 9, 9 Terry 9, 96 A.2d 456 (Del. 1953). The Act specifically provides that "every employer and employee, adult and minor ... except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies. [*12] " *DEL. CODE ANN. tit. 19, § 2304* (2003). This provision bars common law actions against an employer where: 1) plaintiff is an employee; 2) his condition is shown to be a "personal injury" within the meaning of the statute; and 3) the injury is shown to have arisen out of and in the course of employment. The only statutory exception to this provision arises when the personal injury is caused by the willful conduct of another employee for personal reasons not related to the scope of employment. *19 DEL. CODE ANN. tit. 15, § 2301(15)(b) (2003)*.

With this legal framework in place, the key to whether the Act precludes an action "lies in the nature of the [personal] injury for which plaintiff makes [a] claim, not [in] the nature of the defendant's act which plaintiff alleges to have been responsible for that injury." *Battista v. Chrysler Corp.*, 454 A.2d 286, 288-89 (Del. Super. 1982) (citations omitted). Accordingly, the Delaware Supreme Court observed that "mental injury is included among the personal injuries compensable under the Act." *Konstantopoulos v. Westvaco Corp.*, 690 A.2d 936, 939 (Del. 1996) [*13] The Delaware Supreme Court further ruled that intentional infliction of emotional distress caused by sexual harassment arising from and in the course of employment is barred by the Act. See id. at 938. This court also held that intentional infliction of

emotional distress stemming from on-the-job discrimination is barred by the Act. See *Brodsky v. Hercules, Inc., 966 F. Supp. 1337, 1353 (D. Del. 1997).*

Avecia argues that Stepler's intentional infliction of emotional distress claim is barred by the exclusivity provision of the Act because her alleged injury resulted from conditions related to or involving her employment, not conditions intentionally designed to injure her. Avecia points out that Stepler alleges that she suffered emotional distress because her work was criticized, her vacation requests were scrutinized, and she was forced to take work breaks at her work station. Avecia notes that this conduct all occurred in the context of her employment duties. Moreover, Avecia points out that Stepler fails to show that Avecia deliberately acted to harm her. Rather, Avecia maintains that Stepler offers conclusory allegations which merely track the **[\*14]** elements of an intentional infliction of emotional distress claim.

Stepler counters Avecia's argument by stressing that Avecia retaliated against her personally for complaining about being sexually harassed and, in doing so, intentionally sought to emotionally harm her. As such, Stepler asserts that Avecia's conduct is excepted from the Act's exclusivity provision.

Accepting as true the allegations in Stepler's complaint regarding Avecia's conduct following her sexual harassment complaints, the court finds that Avecia did not deliberately set out to personally harm Stepler. For

this reason, the court concludes that Stepler may not avail the single statutory exception to the Act. Instead, the court finds that: (1) Stepler was employed by Avecia; (2) her intentional infliction of emotional distress claim fits within the meaning of the statute as recognized by the case precedent; and (3) her alleged emotional distress arose in the course of her employment. Therefore, the court finds that Stepler's intentional infliction of emotion distress claim is barred by the exclusivity provision of the Act and, as a consequence, grants Avecia's motion to dismiss this claim.

## V. CONCLUSION [\*15]

For the reasons stated above, the court grants Avecia's motion to dismiss Stepler's state law tort claim for intentional infliction of emotional distress. An order will issue.

### ORDER

At Wilmington this 23rd day of October, 2003, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that Avecia's motion to dismiss (**D.I. 27**) is **granted.**

Sue L. Robinson

United States District Judge

LEXSEE 2001 U.S. DIST LEXIS 2668

**ELLIOT R. EISENBERG, Plaintiff v. THE PENNSYLVANIA STATE UNIVERSITY, Defendant**

**No. 3:00CV301**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

*2001 U.S. Dist. LEXIS 2668*

**February 28, 2001, Decided
February 28, 2001, Filed**

**DISPOSITION:** [*1] Defendant's motion for partial summary judgment [13-1] GRANTED in part. In all other respects, motion DENIED.

**COUNSEL:** For ELLIOT R. EISENBERG, plaintiff: Joseph T. Wright, Jr., Wright & Associates, Scranton, PA.

For PA STATE UNIVERSITY, defendant: Janine C. Gismondi, McQuaide, Blasko, Schwartz Fleming et al, State College, PA.

For MEDIATOR, mediator: Raymond P. Wendolowski, Koff, Wendolowski, Ferguson & Mangan, Wilkes-Barre, Pa.

**JUDGES:** JUDGE JAMES M. MUNLEY, United States District Court.

**OPINIONBY:** JAMES M. MUNLEY

**OPINION:**

**MEMORANDUM**

Before the court for disposition is the defendant's motion for partial summary judgment in the instant employment discrimination case. The plaintiff is Elliot R. Eisenberg, and the defendant is the Pennsylvania State University (hereinafter "Penn State" or "defendant.") The matter is ripe for disposition having been fully briefed and argued.

**Background**

Defendant Penn State University is an institution of higher learning with twenty-four campuses. Plaintiff commenced employment with the defendant in 1972 as an engineering instructor at its Hazleton campus and has worked there since. Plaintiff's initial annual salary was $ 9,288.00. Plaintiff [*2] has received annual salary increases every year of his employment with the defendant. However, he claims that his salary has always been less than the average salary of his peers, and the salary increments did not always reflect actual contributions he has made to the university for a given year.

Plaintiff filed a two count complaint alleging that the disparity in pay between him and his peers is based upon religious discrimination. The complaint avers violations of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e*, et seq. (hereinafter "Title VII") and the Pennsylvania Human Relations Act, *43 P.S. § 951* et seq. (hereinafter "PHRA"). Subsequent to the close of discovery, defendant filed the instant motion for summary judgment alleging that much of plaintiff's claim is time barred, which brings the action to its present posture.

**Standard of review**

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter [*3] of law. See *Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997)* (citing *Fed.R.Civ.P. 56(c)*). "This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)* (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable

to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990)*. The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving [*4] for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265*. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. *Id. at 324*.

### Discussion

Defendant raises two arguments in its motion for summary judgment. The first issue is whether the complaint is untimely as to any acts that are alleged to have occurred prior to May 15, 1998. The second issue is whether plaintiff is statutorily barred from recovering back pay prior to March 11, 1996. We shall address each issue separately.

### 1. Is the complaint timely as to any acts that are alleged to have occurred prior to May 15, 1998?

The filing of a timely administrative complaint with the Equal Employment Opportunity Commission (hereinafter "EEOC") is a prerequisite to commencing a civil suit [*5] pursuant to Title VII. According to *42 U.S.C. § 2000e-5*(e), a charge of employment discrimination under Title VII must be filed with the appropriate administrative agency within 300 days after the alleged unlawful employment practice occurred in order to be timely. Plaintiff filed charges with the EEOC on March 11, 1999. Therefore, his 300-day period reaches back to May 15, 1998, and defendant avers that any actions that occurred before May 15, 1998 are time barred.

Plaintiff's position is that the general rule is that charges must be filed within 300 days. Exceptions to the general rule exist, however, and two of the exceptions are relevant here. Those exceptions are the continuing violation theory and equitable tolling. We address these issues *seriatim* below.

### A. Continuing violation theory

First the plaintiff advances the continuing violation theory. Under this theory, a plaintiff may pursue claims for discriminatory conduct that occurred prior to the 300-day filing period where that conduct is part of an ongoing or continuing pattern or practice of discrimination. See *Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 481 (3d Cir. 1997)*. [*6] The law provides as follows:

> To demonstrate a continuing violation, the plaintiff first must show that at least one discriminatory act occurred within the 300-day period. Second, the plaintiff must show that the harassment is more than the occurrence of isolated or sporadic acts of intentional discrimination, and instead must demonstrate a continuing pattern of discrimination. A plaintiff satisfying these requirements may present evidence and recover damages for the entire continuing violation and the 300-day filing period will not act as a bar. (internal quotations and citations omitted).

Id.

However, the court also stated that "to allow a stale claim to proceed would be inconsistent with the administrative procedure established by Title VII which contemplates prompt filing of charges so that discrimination controversies may be resolved promptly." *Id. at 485*.

Courts examine the following factors to determine whether a plaintiff has demonstrated a continuing violation:

1) Subject matter. Do the alleged discriminatory acts involve the same type of discrimination tending to connect them in a continuing violation?

2) Frequency. Are the alleged acts [*7] recurring or more in the nature of an isolated work assignment or employment decision?

3) Degree of permanence. Does the discriminatory act have the degree of permanence which should trigger an employee's awareness of, and duty to assert, his or her rights or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate? *Id. at 481-82*.

The third factor, permanence, is perhaps the most important. *Id. at 482*. The permanence factor basically refers to what the plaintiff knew or should have known at the time of the discriminatory act. *Sabree v. United Brothers of Carpenters and Joiners Local 33, 921 F.2d 396, 402 (1st Cir. 1990)*. Defendants' argument is that the plaintiff suspected religious discrimination long be-

fore he took any formal action. Therefore, the permanence factor weighs in Penn State's favor and is dispositive of the plaintiff's claim with respect to any alleged discrimination prior to May 15, 1998.

Plaintiff's position is that it is not unusual for the continuing violation theory to be applied to [*8] equal pay cases and that the Third Circuit Court of Appeals has noted that "most courts appear to treat pay discrimination claims as continuing violations " *Miller v. Beneficial Management Corp., 977 F.2d 834, 843 (3d Cir. 1992)*. After a careful review of the Miller decision, we find that neither party is completely accurate in its arguments.

The Miller case dealt with two separate issues that are involved in employment discrimination cases such as the instant case. The first issue is accrual of the action, and the second is the continuing violation theory. The plaintiff's cause of action does not accrue until he discovers he has been the victim of discrimination. Id. The relevant question is when did the plaintiff know or when should he have known that he was being discriminated against. Id. Accordingly, the statute of limitations for filing the initial complaint with the EEOC does not begin to run until the plaintiff discovers discrimination.

In Miller, the court found that the jury could believe that the plaintiff did not know, and should not have known of the disparity in compensation until September 30, 1988. Id. She filed her complaint [*9] with the EEOC in February 1989 which was within the 300-day limit. *Id. at 841.* The court found that as a material issue of fact existed as to when the employee knew or should have known about the discrimination, the case could not be dismissed as untimely. Id.

Only after finding that the plaintiff may have filed her complaint timely did the court proceed to discuss the continuing violation theory. The Miller court held that pay discrimination claims should be treated as continuing violations. The court stated that to hold otherwise, would allow perpetual wage discrimination by an employer whose violation has lasted without attack for the statute of limitations period. *Id. at 843.*

Therefore, the Miller court instructs us to first determine when the plaintiff's claim accrued. If the plaintiff knew or should have known of the discrimination outside of the limitations period, the claim will be time barred. This conclusion is in accord with the following explanation from the United States Supreme Court regarding the statute of limitations: "The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly [*10] assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks, 449 U.S. 250, 256-57, 66 L.*

Ed. 2d 431, 101 S. Ct. 498 (1980). However, if the action is timely filed, the continuing violation theory will apply.

The Eastern District of Pennsylvania has recognized the Miller holding. In *Battaglio v. General Electric Corp., 1995 U.S. Dist. LEXIS 41, 1995 WL 11980 (E.D. Pa.)*, the court held that the plaintiff's claim accrues when he learns of the discrimination, and the continuing violation theory does not apply where the employee learns of wage discrimination and does not file a claim within the appropriate time limit. Id. at *2. Likewise, the First Circuit Court of Appeals has held that no continuing violation can be found where the plaintiff was aware of the alleged discrimination outside of the time for filing a charge. *Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 612 (1st Cir. 2000)*.

Accordingly, to determine if the continuing violation theory is applicable, the time at which the plaintiff knew or should have known of the alleged [*11] discrimination must be ascertained. We cannot decide on the record before us when the plaintiff knew or should have known of the alleged discrimination as it is a question of fact.

Evidence has been presented that plaintiff knew of the disparity in pay for years before filing his complaint, but that he suspected discrimination was the reason for the disparity only in 1997. n1 Plaintiff testified at his deposition, however, that he formed the belief that his salary was negatively affected by religious discrimination in the late spring of 1998 when he had collected certain data regarding salary. Plaintiff's Deposition at 21-22. Therefore, it will be the task of the fact finder to determine when he knew or should have known of the discrimination. If he first knew or should have known about the discrimination within the 300-day period for filing with the EEOC then the continuing violation theory will apply.

n1 The following exchange between defense counsel and the plaintiff occurred at the plaintiff's deposition:

Q. As of February 25, 1997, you had at least some thought that the low salary that you had experienced at Penn State was a result of anti-Semitism; is that a fair statement?

A. (Plaintiff) It was a possible thought. It was a possible conclusion. Plaintiff's Deposition at 101.

Moreover, in a correspondence to Wayne R. Hager of the Pennsylvania State University, dated February 25, 1997, plaintiff noted with regard to the pay situation "I would not want to think that it

has been the result of some form of intended discrimination." Def. Ex. D.

[*12]

## B. Equitable Tolling

Plaintiff also claims that the statute of limitations should be equitably tolled. Equitable tolling is appropriate where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his rights. *Meyer v. Riegel Products Corp., 720 F.2d 303, 309 (3d Cir. 1983)* cert. denied *465 U.S. 1091, 79 L. Ed. 2d 910, 104 S. Ct. 2144.* Plaintiff alleges that the defendant lulled him into a state of trust and belief that it would rectify the wrong that had been done to him and compensate him accordingly. Defendant, on the other hand, claims that plaintiff has not presented the type of proof necessary to establish that equitable tolling is appropriate. After a careful review, we are in agreement with the defendant.

Under the law:

> Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed. ... There are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in [*13] some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. (internal citations omitted).

*Oshiver v. Levin, 38 F.3d 1380, 1387 (3d Cir. 1994).*

In other words, equitable tolling is appropriate when the principles of equity would make a rigid application of the statute of limitations unfair. *Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618 (3d Cir. 1998).* The United States Supreme Court has repeatedly recognized the equitable tolling doctrine, but it has also cautioned that "procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by the courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151, 80 L. Ed. 2d 196, 104 S. Ct. 1723 (1984)* quoted in *Seitzinger v. Reading Hospital and Medical Ctr., 165 F.3d 236 (3d Cir. 1999).*

Plaintiff has the burden of establishing by clear and convincing evidence that there has been fraud or concealment, and the fraud need not be intentional. [*14] The Third Circuit Court of Appeals has explained as follows:

> Under Pennsylvania law governing the doctrine of equitable tolling, it is clear that "the courts have not required fraud in the strictest sense, encompassing an intent to deceive, but rather have defined fraud in the broadest sense to include an unintentional deception." *Nesbitt v. Erie Coach Co., 416 Pa. 89, 96, 204 A.2d 473, 476 (1964).* Even under this broad interpretation of fraud, however, it is clear that, in order for the doctrine of equitable tolling to apply, the defendants' actions must have a mounted "to an affirmative inducement to plaintiff to delay bringing the action." *Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 556 (3d Cir.1985).* The intent of the defendant in making this affirmative inducement is irrelevant; "it is the effect upon the plaintiff, not the intention of the defendant, that is pertinent." *Swietlowich v. County of Bucks, 610 F.2d 1157, 1162 (3d Cir.1979).* The burden of proving fraud or concealment, whether intentional or not, rests upon the party making the claim. The evidence presented must be clear, precise and convincing. "Mere [*15] mistake, misunderstanding, or lack of knowledge is not sufficient to toll the statute of limitations." *Molineux v. Reed, 516 Pa. 398, 403, 532 A.2d 792, 794 (1987).*

*Connors v. Beth Energy Mines, Inc., 920 F.2d 205, 211 (3d Cir. 1990).*

After a careful review of the record, we find the plaintiff has not met his burden of establishing any "lulling", fraud or concealment on the part of the defendant. Thus, the equitable tolling argument lacks merit. Plaintiff cites his own deposition to establish that Penn State lulled him into inaction. A summary of this evidence follows:

Plaintiff states that he discussed his salary concerns with his supervisors in 1980. Plaintiff's supervisors did not deny that his salary was low and said that they would try to do something. Plaintiff's Deposition at 24. In approximately 1995, plaintiff met with Associate Dean of the College of Engineering George McMurtry, who was not formally involved with salaries of the engineering faculty on the campuses. However, he looked into the

2001 U.S. Dist. LEXIS 2668, *

salary matter and informed the plaintiff that when compared to his peers his salary was a few thousand dollars low. Id. at 105-106.

In a [*16] correspondence to Wayne R. Hager of the Pennsylvania State University, dated February 25, 1997, plaintiff noted with regard to the alleged salary inequity: "I would not want to think that it has been the result of some form of intended discrimination." Def. Ex. D. In 1997, plaintiff met with Dr. John Leathers, an interim CEO of the campus. He discussed the substance of the letter with Dr. Leathers. Id. at 105. Leathers subsequently met with other Penn State officials to discuss plaintiff's concerns of a history of salary inequity. After the meeting, Dr. Leathers informed plaintiff that the committee had concluded that there was no history of salary inequity and that no action would be taken. Id. at 107-108. Plaintiff was very upset by the finding of the committee and told Dr. Leathers that he did not accept their finding and that he would pursue obtaining more information. Id. at 109. Dean McMurtry wrote a letter of request for plaintiff to obtain salary information for some past years. Id. at 110. Plaintiff stated in his deposition that "nothing was hidden. The goal was to simply secure the data." Id. at 111. Further plaintiff explained: "I would go to the local [*17] ... administration and bring up the question of salary, equity and there was never a denial that I was low. And I was assured at first that they would do something, then it go to the point where, as I referred to, it was kind of, well, if you don't like it leave." Id. at 122.

This evidence presented by the plaintiff simply does not rise to the level of conduct needed to justify equitable estoppel. No indication is present that the school attempted to hide information from him. On the contrary, it appears that the defendant aided plaintiff in his search to determine if a salary disparity existed. Accordingly, the plaintiff's argument is rejected, and we will not apply equitable tolling.

## 2. Is Plaintiff barred from recovering back pay prior to March 11, 1996?

Defendant next claims that even if plaintiff's complaint was timely filed, he is nonetheless limited in the amount of back pay he can be awarded. Although plaintiff seeks to be compensated for discrimination since 1972, defendant claims he is limited to only two years of back pay under Title VII and three years under PHRA. After a careful review, we agree.

Title VII provides that a plaintiff may only recover for [*18] back pay for up to two years from when charges were filed with the EEOC. 42 U.S.C. § 2000e-5(g). The PHRA prevents an award of back pay for

greater than three years prior to the filing of a complaint. 43 Pa.C.S.A. § 962(c).

Plaintiff claims that the defendant misconstrues his claim for back pay and that he does not seek back pay for a period before March 11, 1996. However, he claims that he has a "current claim" for back pay exceeding $100,000.00. Plaintiff concludes his brief with the following: "In the instant case, the issue that will be presented to the jury is the amount and method of calculation of the back pay. Consequently, the argument raised by Penn State regarding the time limitation on the award of back pay is moot." Plaintiff's opposition brief at 13. While plaintiff contends that he agrees that the limitations on back pay should apply, we want to make clear that regardless of his "current claim" for back pay, the limitation is applicable.

Even the principle case cited by the plaintiff, which is from the United States Supreme Court recognizes the limitations period. Plaintiff cites Albemarle Paper Co. v. Moody, which acknowledges in [*19] footnotes that the statute of limitations exists. Albemarle Paper Co. v. Moody, 422 U.S. 405, 410 n. 3, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975)("Under Title VII back pay liability exists only for practices occurring after the effective date of the Act, July 2, 1965, and accrues only from a date two years prior to the filing of a charge with the EEOC") see also Id. at 421, n. 13.

None of the other cases cited by the plaintiff deal with the issue of the limitation on back pay as it is presented in the instant case. Cases do exist, however, that address it. The District Court for the Western District of Pennsylvania has held that "the court is constrained...from awarding relief under Title VII which goes back more than two years from the date of filing of a charge of discrimination with the EEOC, even where there is a continuing violation." Garland v. USAir, Inc., 767 F. Supp. 715, 727 (W.D. Pa. 1991).

Accordingly, we find that the plaintiff can be awarded back pay under Title VII for a period of no more than two years and no more than three years under the PHRA. Our conclusion is based on the plain language of the statute and the case law, including the United States [*20] Supreme Court precedent acknowledging the statute of limitations. See Albemarle, supra.

### Conclusion

In conclusion, we find that the continuing violation theory may apply in the instant case depending on how the jury determines the question of fact regarding when plaintiff knew or should have known of the alleged discrimination. The doctrine of equitable estoppel, however, is not applicable. In addition, the provisions of Title VII

and the PHRA will limit the amount of back pay that the plaintiff will be able to recover.

### ORDER

**AND NOW**, to wit, this 28th day of February 2001, the defendant's motion for partial summary judgment [13-1] is hereby **GRANTED in part** as we find that equitable tolling is not applicable and the fact finder will have to determine whether the continuing violation the-ory applies. Further, the limitations on back pay as set forth in Title VII and the PHRA will be enforced as set forth in the accompanying memorandum. In all other respects, the motion is **DENIED.**

**BY THE COURT:**

**JUDGE JAMES M. MUNLEY**

**United States District Court**

LEXSEE 2001 U.S. DIST. LEXIS 15754

**STEVEN R. MILLER, Plaintiff, v. CITY OF WILMINGTON; WILMINGTON POLICE DEPARTMENT; FRAY M. LYNCH, Individually and as Agent for the Wilmington Police Department; R. COLMERY, Individually and as Agent for the Wilmington Police Department; OFFICERS JOHN DOE # 1- # 4, Individually and as Agents for the Wilmington Police Department; THE MULTI-PURPOSE CRIMINAL JUSTICE FACILITY; DEPARTMENT OF CORRECTION and PRISON HEALTH SERVICES, Defendants.**

Civil Action No. 01-156-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2001 U.S. Dist. LEXIS 15754*

**September 27, 2001, Decided**

**DISPOSITION:** [*1] Defendant PHS's motion to dismiss (D.I. 13) granted. PHS dismissed as a defendant in this action. Plaintiff had not stated any claims for which defendants Multi-Purpose Criminal Justice Facility and Delaware Department of Correction held liable they also dismissed as defendants.

**COUNSEL:** For STEVEN R. MILLER, plaintiff: Caroline Patricia Ayres, Law Offices of Caroline P. Ayres, Wilmington, DE.

For CITY OF WILMINGTON, WILMINGTON POLICE DEPARTMENT, FRAY M. LYNCH, R COLMERY, JOHN DOE # 1, JOHN DOE # 2, JOHN DOE # 3, JOHN DOE # 4, defendants: David M. Lukoff, City of Wilmington Law Department, Wilmington, DE.

For PRISON HEALTH SERVICES, INC., defendant: Seth Jason Reidenberg, White & Williams, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

MEMORANDUM ORDER

**I. INTRODUCTION**

On March 8, 2001, plaintiff Steven R. Miller filed this action alleging assault, negligence, negligent training and supervision, intentional infliction of emotional dis-

tress, civil rights violations under *42 U.S.C. § § 1981* and 1983 and violations of his First, Eighth and Fourteenth Amendment rights. n1 (D.I. 1 at P 1)

> n1 Specifically, plaintiff alleges that he was deprived of the constitutional guarantees of due process of law, equal protection under the law, and the right to be free from cruel and unusual punishment. (D.I. 1 at P 23)

[*2]

Currently before the court is defendant Prison Health Services' ("PHS") motion to dismiss several counts of plaintiff's complaint for failure to state a claim. (D.I. 13) For the reasons stated, PHS's motion to dismiss is granted.

**II. BACKGROUND**

The following recitation of events is based upon the allegations set forth in plaintiff's complaint. Plaintiff was arrested on January 10, 2000 for attempted third-degree burglary and resisting arrest. (D.I. 1 at P 15) Plaintiff alleges that while effectuating the arrest, six Wilmington Police Department officers subjected him to excessive force in that he was "held and beaten." (D.I. 1 at P 19) During the incident, plaintiff was kicked in the face and ribs, resulting in a laceration of about one and one-quarter inch under his right eye and a broken rib which protrudes from his back. (Id. at PP 16, 17)

Plaintiff waited about one and one-half months to be examined by the physician at the Multi-Purpose Criminal Justice Facility, where he is currently incarcerated. (Id. at

P 18) The physician, an employee of PHS, took notice of the bone disfigurement in plaintiff's back, but did not conduct any x-rays because "there is nothing [*3] that can be done for a broken rib that has already healed." (Id.)

## III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). The moving party has the burden of persuasion. See *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991).

## IV. DISCUSSION

### A. Plaintiff's Assault Claim

Plaintiff's complaint alleges assault without legal right [*4] or justification by all defendants. (D.I. 1 at P 25) However, plaintiff asserts no facts from which a reasonable inference could be made that PHS was involved in any alleged assault on plaintiff. Thus, plaintiff's assault claim is dismissed as to PHS.

### B. Plaintiff's Constitutional Claims

Plaintiff alleges that his constitutional rights were violated when, due to an unlawful assault, he was deprived of due process, equal protection under the laws, and the right to be free from cruel and unusual punishment, which includes the right to adequate medical care. (D.I. 1 at P 23)

Reading plaintiff's complaint liberally, the only constitutional violation that could reasonably be attributed to PHS is the denial of adequate medical care. To state a violation of the Eighth Amendment right to adequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976); accord *White v. Napoleon,* 897 F.2d 103, 109 (3d Cir. 1990). Plaintiff must demonstrate: (1) that he had a serious medical need, and (2) that [*5] the defendant was aware of this need and was deliberately indifferent to it. See

*West v. Keve,* 571 F.2d 158, 161 (3d Cir. 1978); see also *Boring v. Kozakiewicz,* 833 F.2d 468, 473 (3d Cir. 1987).

The seriousness of a medical need may be demonstrated by showing that the need is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver,* 479 F. Supp. 456, 458 (D.N.J. 1979)). Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Id.

As to the second requirement, an official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects the inmate to undue suffering or a threat of tangible residual injury. See *834 F.2d at 346.* Deliberate indifference may also be present if necessary medical treatment is delayed for non-medical reasons, or if an official [*6] bars access to a physician capable of evaluating a prisoner's need for medical treatment. See *id. at 347.* However, an official's conduct does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Specifically, "the official [must] know . . . of and disregard . . . an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). While a plaintiff must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the official had knowledge of the risk through circumstantial evidence and "a fact finder may conclude that an . . . official knew of a substantial risk from the very fact that the risk was obvious." *Id. at 842.*

Plaintiff's "bone disfigurement" and complaints of pain are sufficient to demonstrate that he suffered a "serious injury." However, plaintiff does not allege any facts to suggest that PHS acted with deliberate indifference to plaintiff's [*7] needs. As stated in his complaint, plaintiff waited one and one-half months after his injury before being examined, and was informed by a PHS physician that there was no treatment for a broken rib that has healed. (D.I. 1 at P 18) Plaintiff fails to allege any constitutional violation by PHS, therefore, those claims are dismissed as to PHS.

### C. Plaintiff's Civil Rights Claims

It is an established principle that, as a basis for liability under *42 U.S.C. § 1983,* the doctrine of respondeat superior is not acceptable. See *Monell v. Dept. of*

2001 U.S. Dist. LEXIS 15754, *

*Social Servs., 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).* See also *Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976); Swan v. Daniels, 923 F. Supp. 626, 633 (1995)* (applying the principle to liability of private corporations that provide medical services for the state); *Heine v. Receiving Area Pers., 711 F. Supp. 178, 185 (D. Del. 1989).* Personal involvement by a defendant is essential in a civil rights action. n2 See *Rode, 845 F.2d at 1207.* [*8]

> n2 "Allegations of personal direction or of actual knowledge and acquiescence" are adequate to demonstrate personal involvement. *Rode, 845 F.2d at 1207.* Such allegations are required to be "made with appropriate particularity." Id.

Plaintiff relies on *Servino v. Med. Ctr., 1997 Del. Super. LEXIS 18,* No. 94 C-08-077-WTQ (Del. Super. Ct. Feb. 11, 1997) to support his argument that while no respondeat superior liability applies under Section 1983, a defendant may be held liable if he participated in, or had any knowledge of and acquiesced in, an allegedly unconstitutional act. In Servino, a State Police officer was held liable for a constitutional violation that occurred during an arrest. While the officer claimed to have had no physical contact with the arrestee, he was found to be acting in a supervisory or controlling capacity. Id. at *13. However, "to demonstrate liability, a minimum of **personal, actual knowledge** is usually necessary." Id. at *13, n.4 (citing [*9] *Rode, 845 F.2d at 1208*) (emphasis in original). Plaintiff sets forth no facts that demonstrate personal or actual knowledge by PHS of any civil rights violations suffered by plaintiff at the hands of PHS employees. Thus, plaintiff's claims alleging civil rights violations under *42 U.S.C. § § 1981* and 1983 are dismissed. n3

> n3 Plaintiff agreed to voluntarily dismiss the Section 1981 claim against PHS. (D.I. 16 at P 12)

### D. Plaintiff's Negligent Supervision, Training and Maintenance of Personnel Claim

Plaintiff claims that PHS owed him a duty of reasonable care in the supervision, training and maintenance of its personnel. (D.I. 1 at P 57) The "inadequacy of . . . training may serve as the basis for Section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the [official] . . . come[s] into contact." *City of Canton v. Harris, 489 U.S. 378, 388, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989).* [*10] "To establish a Section 1983 claim

for failure to train and supervise employees, a plaintiff must (1) identify with particularity what the supervisory officials failed to do that demonstrates deliberate indifference and (2) demonstrate a close causal link between the alleged failure and the alleged injury." *Daniels v. Delaware, 120 F. Supp. 2d 411, 423 (D. Del. 2000)* (citing *Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)*).

Based on the allegations set forth in plaintiff's complaint, the court finds that plaintiff's claim of negligent supervision, training and maintenance by PHS is factually unsupported. Plaintiff makes no reference to any inadequate training or supervision of employees by PHS, deliberate indifference by PHS officials, nor a "close causal link" between a failure to train or supervise and plaintiff's alleged injury. Therefore, plaintiff's negligent supervision, training and maintenance of personnel claim is dismissed as to PHS.

### E. Plaintiff's Intentional Infliction of Emotional Distress Claim

Plaintiff contends that PHS intentionally inflicted emotional distress by failing to timely treat his broken rib. (D.I. 16 at P 13) [*11] A defendant is liable for intentional infliction of emotional distress "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Mattern v. Hudson, 532 A.2d 85, 86 (Del. Super. 1987).*

In his complaint, plaintiff alleges that he "waited approximately one and one-half months to be examined." (D.I. 1 at P 18) The complaint does not allege any facts to suggest that PHS intentionally delayed his medical examination. In fact, there is no indication that the delay between the alleged assault and plaintiff's examination was caused by anyone but plaintiff. Furthermore, when plaintiff was examined, he was not denied potential treatment; he was informed that there was no treatment available to him. (D.I. 1 at P 18) Clearly, according to plaintiff's complaint, PHS did not commit any extreme or outrageous conduct by delaying or denying plaintiff adequate medical care. Consequently, plaintiff's claim of intentional infliction of emotional distress is dismissed as to PHS.

## V. CONCLUSION

Therefore, at Wilmington this [*12] 27th day of September, 2001;

IT IS ORDERED that defendant PHS's motion to dismiss (D.I. 13) is granted. PHS is dismissed as a defendant in this action.

2001 U.S. Dist. LEXIS 15754, *

IT IS FURTHER ORDERED that, because plaintiff has not stated any claims for which defendants Multi-Purpose Criminal Justice Facility and Delaware Department of Correction can be held liable, they are also dismissed as defendants.

September 27, 2001

Sue L. Robinson

United States District Judge

LEXSEE 2005 U.S. DIST. LEXIS 13447

**RICHARD L. OBENG, Plaintiff, v. DELAWARE STATE POLICE, COMCAST CABLE, and FEDERAL BUREAU OF INVESTIGATION, Defendants.**

**Civil Action No. 04-1248 (GMS)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 13447*

**July 7, 2005, Decided**
**July 7, 2005, Filed**

**DISPOSITION:** [*1] Comcast's motion to dismiss granted.

**COUNSEL:** Richard Y. Obeng, Plaintiff, Pro se, Bear, DE.

For Comcast Cable, Defendant: Susan W. Waesco, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For Federal Bureau of Investigation, Defendant: Patricia C. Hannigan, U.S. Attorney's Office, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM**

**I. INTRODUCTION**

On September 9, 2004, Richard Y. Obeng ("Obeng") filed a *pro se* action against the Delaware State Police (the "DSP"), Comcast Cable ("Comcast"), and the Federal Bureau of Investigation (the "FBI") (collectively, the "defendants"). In his complaint, Obeng alleges that the defendants have, since 1999, "engaged in an elaborate and unlawful series of engagements to encroach on the plaintiff's privacy, civil rights, and other despicable and unlawful acts." (Compl. P3.) Obeng seeks both punitive and compensatory damages from the defendants, as well as an order requiring the defendants to hand over any information on "activities of harassment that have been perpetrated against [the] plaintiff." (*Id.* P17.)

Presently before the court are the FBI's motion to [*2] dismiss pursuant to *Federal Rule of Civil Proce-* *dure 12(b)(1)* for lack of subject matter jurisdiction and Comcast's motion to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim. For the following reasons, the court will grant both motions.

**II. BACKGROUND**

Obeng is a resident of Bear, Delaware. He initially filed his complaint in the New Castle County Court of Common Pleas on or about July 29, 2004. Comcast was served with the complaint on August 12, 2004, and timely filed a motion to dismiss on September 1, 2004. On September 9, 2004, prior to the hearing date set for Comcast's motion, the FBI removed the case to this court pursuant to *28 U.S.C. § § 1346* and *1446.* On September 16, 2004, the FBI filed a motion to dismiss. n1

> n1 It does not appear from either the docket or the notice of removal that the DSP was served with the complaint in this case. The court, therefore, will dismiss Obeng's claims against the DSP without prejudice for failure to prosecute.

[*3]

In his complaint, Obeng alleges that the defendants have, for the past five years, engaged in "cowardly, despicable and fiendish acts" against him that include sabotaging his business venture, hindering his job search, tampering with his prescription medication, tapping his phone, fax, and Internet access, possibly bugging his car and apartment, colluding with medical staff to reveal false and confidential medical information about him to the public, and monitoring him through his television so that "when [he] switches on his TV for any live telecast/broadcast, audiences in other studios and locations are able to see [him] in his room." (Compl. P3-15.) Obeng also "strongly suspects" that the defendants have

pressured local attorneys into declining to represent him. (*Id.* P14.)

## III. STANDARD OF REVIEW

### A. *Rule 12(b)(1)*

An attack pursuant to *Federal Rule of Civil Procedure 12 (b)(1)* challenges the jurisdiction of the court to address the merits of the complaint. *Lieberman v. Delaware, 2001 U.S. Dist. LEXIS 13624, No. CIV A. 96-523 GMS, 2001 WL 1000936, at *1 (D. Del. Aug. 30, 2001).* Such a motion may challenge the court's jurisdiction facially, [*4] based on the legal sufficiency of the claim, or factually, based on the sufficiency of jurisdictional fact. *Mortensen v. First Fed. Sav. & Loan, 549 F.2d 884, 891 (3d Cir.1977)* (distinguishing standard governing each type of challenge); *see Lieberman, 2001 U.S. Dist. LEXIS 13624, 2001 WL 1000936, at *1* (finding facial challenge where defendant did not dispute facts alleged in complaint that supported court's subject matter jurisdiction). The case at hand presents a facial challenge because the FBI does not attack the merits of Obeng's claims but, rather, alleges procedural defects. Accordingly, the court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Mortensen, 549 F.2d at 891.*

### B. *Rule 12 (b)(6)*

The purpose of a motion to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)* is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).* Thus, the court must accept the factual allegations of the complaint as true. *See Graves v. Lowery, 117 F.3d 723, 726 (3d Cir. 1997);* [*5] *Nami v. Fauver, 82 F.3d 63, 64 (3d Cir. 1996).* In particular, the court must look to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3d Cir. 1988).* The court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir 1997)* (quoting *Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996)).*

## IV. DISCUSSION

### A. The FBI's Motion to Dismiss

The FBI moves to dismiss for lack of subject matter jurisdiction, asserting that Obeng has failed to meet the requirements of the *Federal Tort Claims Act* ("FTCA"). The FTCA "is designed to ease court congestion, expedite fair settlement, and provide equitable treatment to

the injured individual." *Frantz v. United States, 791 F. Supp. 445, 447 (D. Del. 1992).* To further these goals, the FTCA requires a claimant to file an administrative claim with the federal agency "whose activities [*6] gave rise to the claim." *See Nickle v. U.S. Army Corps of Engineers, 2003 U.S. Dist. LEXIS 11740, No. Civ A. 03-322 GMS, 2003 WL 21640373, at *2 (D. Del. July 10, 2003)* (citing *28 C.F.R. § 14.2(b)(1) (2003)).* The claim must include: (1) an executed Standard Form 95 or other written notification of the incident; (2) a claim for a sum certain for injury to or loss of property or personal injury alleged to have resulted from the incident; and (3) if the claim is filed on behalf of the claimant, evidence of the authority to represent a claim on behalf of the claimant. *Id.; see 28 C.F.R. § 14.2(a) (2005); Frantz, 791 F. Supp. at 448.* Additionally, the claim must "have been finally denied by the agency in writing and sent by certified or registered mail" before the claimant may bring a suit in federal court. *28 U.S.C. § 2675(a) (2005).*

Fulfillment of the administrative claim requirement is an essential prerequisite to the court's subject matter jurisdiction over an FTCA claim. *Washington v. Curry, 2002 U.S. Dist. LEXIS 2825, No. Civ. A. 01-617-JJF, 2002 WL 233192, at *2 (D. Del. Feb. 14, 2002); Dondero v. United States, 775 F. Supp. 144, 147 (D. Del. 1991)* [*7] ("Tort claims against the United States shall be barred unless they are first presented in writing to the appropriate Federal agency."). Pursuant to the FTCA, "federal courts do not possess subject matter jurisdiction unless the [accused] agency has an opportunity to review the claims." *Dondero, 775 F. Supp. at 148 (D. Del. 1991).* Thus, failure to comply with the administrative exhaustion requirement must result in dismissal.

Obeng, as the plaintiff, bears the burden of proving that a proper administrative claim was filed with the FBI. *See Frantz, 791 F. Supp. at 450.* That is, Obeng must show that he supplied written notice of his claim to the FBI. The FBI contends that Obeng did not file an administrative claim regarding his allegations in the present case. The court agrees. Based on the record before it, there is no evidence that Obeng ever presented the FBI with a written statement of his claim prior to this action. Further, Obeng does not allege in his complaint or otherwise that any such communication occurred. Indeed, there is not even a suggestion in the complaint that Obeng filed an executed Standard for 95 or other written notice of the [*8] incidents which he complains. As such, the court is without jurisdiction and, therefore, will grant the FBI's motion to dismiss.

### B. Comcast's Motion to Dismiss.

Comcast has moved to dismiss Obeng's claims against it under *Rule 12(b)(6) of the Federal Rules of Civil Procedure* for failure to state a claim. Comcast as-

serts that dismissal is appropriate in the present case because Obeng's complaint does not meet the pleading requirements of *Rule 8 of the Federal Rules of Civil Procedure.* The court is persuaded by Comcast's argument. *Federal Rule of Civil Procedure 8(a)(2)* requires a pleading to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *FED. R. CIV. P. 8(a)(2)* (2005). In order to survive a motion to dismiss, Obeng's allegations must provide Comcast with "fair notice of what . . . [his] claim[s] [are] and the grounds upon which [they] rest[]." *Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).*

Here, even under the generous standard that *pro se* litigants [*9] are afforded for purposes of a motion to dismiss, Obeng has failed to provide Comcast with fair notice of his claims against it. Obeng does not allege any particular claim or tort. Rather, he states that the defendants "might" have "encroached on [his] privacy [and] civil rights" by engaging in "despicable and unlawful acts." (Compl. P3.) Moreover, of the ten specific claims that follow the initial paragraphs of his complaint, three are framed in the potential as either "may have" or "strongly suspect that" (*Id.* P5, 6, 14); two are statements of incidents that have allegedly happened to him without any attempt to link the defendants to those incidents (*Id.* P7, 12); and the remaining five allegations fail to specify whether Comcast was involved in the complained of conduct (*Id.* P4, 8, 10, 11, 13, 15). Further, it is unclear to the court what notice Comcast could possibly draw from Obeng's allegations that the defendants caused "undue emotional stress" n2 (*Id.* P13), and performed "cowardly acts of treachery." (*Id.* P15.)

n2 Even assuming the court construed Obeng's claim of "undue emotional stress" as a claim for intentional infliction of emotional distress, it would not survive Comcast's motion to dismiss. Under Delaware law, the requirements for a claim of intentional infliction of emotional distress are as follows: "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Mattern v. Hudson, 532 A.2d 85, 85 (Del. Super. 1987).* In *Mattern,* the Delaware Superior Court defined "extreme conduct" as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as . . . utterly intolerable in a civilized community." *Id. at 86* (citing *RESTATEMENT (SECOND) TORTS § 46, cmt.d*). In addition, "the distress requirement is met where the distress inflicted 'is so severe

that no reasonable man could be expected to endure it.'" *Mandelaka v. Boyd, 1993 Del. Super. LEXIS 188, 1993 WL 258798, at *1 (Del. Super. June 14, 1993)* (quoting *Mattern, 54 A.2d at 86*). In the present case, the court cannot say that Obeng's unsupported assertion of "undue emotional stress" caused by unidentified "defendants" rises to the level of distress required under Delaware law. Thus, Obeng has not sufficiently stated a claim for intentional infliction of emotional distress against Comcast.

**[*10]**

Obeng also fails to meet the second requirement of *Conley.* That is, Obeng's complaint does not present any grounds for his claims. For example, while Obeng claims that his e-commerce site "was consistently sabotaged" by the defendants, his complaint fails to point to any specific acts that constituted sabotage. (Compl. P9.) Nor does his response to Comcast's motion to dismiss provide the court with any additional information regarding the grounds for his claims. Instead, it just recites the unsupported assertions contained in his complaint. Accordingly, Obeng has not stated a claim against Comcast showing that he is entitled to relief. The court, therefore, will grant Comcast's motion to dismiss.

Dated: July 7, 2005

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The FBI's Motion to Dismiss Plaintiff's Complaint (D.I. 3) is GRANTED.

2. Comcast's Motion to Dismiss (D.I. 1 Ex. B) is GRANTED.

3. The plaintiff's claims against the FBI and Comcast are DISMISSED with prejudice.

4. The plaintiff's claims against the Delaware State Police are [*11] DISMISSED without prejudice for failure to prosecute.

5. The plaintiff's Motion to Separate Comcast Cable from Other Two (2) Defendants (D.I. 8) is DENIED as moot.

2005 U.S. Dist. LEXIS 13447, *

Dated: July 7, 2005

Gregory M. Sleet
UNITED STATES DISTRICT JUDGE

LEXSEE 2005 U.S. DIST. LEXIS 25822

ERICA SMITH, Plaintiff, v. AMERADA HESS CORPORATION, Defendant.

CIVIL ACTION NO. 05-560 (JAP)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*2005 U.S. Dist. LEXIS 25822*

**October 28, 2005, Decided
October 31, 2005, Docketed**

**NOTICE:** [*1] NOT FOR PUBLICATION

**COUNSEL:** Erica Smith, Plaintiff, Pro se, Plainfield, NJ.

Marvin M. Goldstein, Esq., Elana Gilaad, Esq., Proskauer Rose, LLP, Newark, NJ, for Defendant.

For ERICA SMITH, Plaintiff, Pro se, PLAINFIELD, NJ.

For AMERADA HESS CORPORATION, Defendant: MARVIN M GOLDSTEIN, ELANA GILAAD, PROSKAUER ROSE LLP, NEWARK, NJ.

**JUDGES:** PISANO, District Judge.

**OPINIONBY:** JOEL A. PISANO

**OPINION:**

**OPINION**

PISANO, District Judge.

Plaintiff, Erica Smith, brings this action pro se against her employer, Amerada Hess Corporation, alleging unlawful discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § § 2000e et seq. (2005)* ("Title VII"); *section 1981 of the Civil Rights Act of 1966, 42 U.S.C. § 1981 (2005)*; and the New Jersey Law Against Discrimination, *N.J.S.A. § § 10:5-1 et seq.* ("NJLAD") n1 Defendant has filed a motion to dismiss Plaintiff's complaint or in the alternative, a motion for summary judgment. For the following reasons, the Court grants Defendant's motion for summary judgment. n2

n1 The Court has jurisdiction over this matter pursuant to *28 U.S.C. § 1331* because Plaintiff asserts violations of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.* and *42 U.S.C. § 1981.* The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to *28 U.S.C. § 1367.* The Court resolves this motion without oral argument pursuant to *Federal Rule of Civil Procedure 78.*

[*2]

n2 Defendant has brought a motion to dismiss Plaintiff's claims or in the alternative, a motion for summary judgment. In deciding a motion to dismiss, the Court is permitted to consider the complaint, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. See *Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).* In this matter, the Court will consider Defendant's motion as a motion for summary judgment because extrinsic evidence submitted by Defendant, namely, the Certification of Lenora Santino, a Senior Team Lead in the Defendant's Human Resources Service Center, has been presented to and considered by the Court. See, e.g., *Hilfirty v. Shipman, 91 F.3d 573, 578 (3d Cir. 1996)* (finding that district court's treatment of motion as motion for summary judgment was appropriate where court considered affidavits presented by the defendants).

**I. Factual History**

Plaintiff is an African-American female employee of Defendant Amerada Hess Corporation. On August 13, 2004, Plaintiff [*3] filed a Charge of Discrimination with the Equal Employment Opportunity Commission

("EEOC") n3 claiming that Defendant discriminated against her on the basis of her race in violation of Title VII. The EEOC was unable to conclude that Defendant committed any statutory violations and thus, dismissed Plaintiff's charge. Plaintiff filed the instant action on January 27, 2005.

> n3 Although Plaintiff claims that she filed the Charge of Discrimination with the EEOC on May 26, 2004, the document itself, which was attached to Plaintiff's complaint, states that the charge was filed on August 13, 2004. Further, this charge was also filed with the New Jersey Division of Civil Rights. The New Jersey Division of Civil Rights has a "worksharing agreement" with the EEOC in which each agency has designated the other as its agent for receiving complaints. See *Khair v. Campbell Soup Co.*, 893 F. Supp. 316, 326 n.8 (D.N.J. 1995) (citing Rosemary Alito, New Jersey Employment Law § 106.6 at 245-46 (1992)).

Plaintiff [*4] alleges the following causes of action in her complaint: (1) discrimination in violation of Title VII; (2) retaliation in violation of Title VII; n4 (3) discrimination and harassment in violation of *section 1981*; (4) retaliation in violation of *section 1981*; n5 and (5) retaliation in violation of the NJLAD n6 Plaintiff's complaint is based on the following factual history.

> n4 Title VII makes it unlawful for an employer to discriminate against any individual on the basis of race, color, religion, or national origin. See, e.g., *42 U.S.C. § 2000e-2*; *Weston v. Pennsylvania*, 251 F.3d 420, 425 (3d Cir. 2001).

> n5 *Section 1981* provides a separate and independent basis from Title VII to allege discrimination in private employment because it prohibits racial discrimination in the performance of contracts, including employment contracts. See *42 U.S.C. § 1981*; *Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 372-73, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004).

> n6 The NJLAD provides redress for individuals who are the victims of various types of discrimination, including racial discrimination, by an employer. See *N.J.S.A. § § 10:5-3, 10:5-4*; *Chugh v. Western Inventory Services, Inc.*, 333 F. Supp. 2d 285, 289-90 (D.N.J. 2004).

[*5]

Defendant hired Plaintiff as a temporary employee in 1997 n7 for the position of Senior Staff Assistant in the Procurement Department. On July 13, 1998, Plaintiff was hired into a full-time position with the same title. Plaintiff alleges that Defendant discriminated against her on the basis of her race because it hired Plaintiff as a full-time employee one and one-half years after she began work as a temporary employee, while a white co-worker, Colleen Laffey, was hired into a full-time position as a Purchasing Associate in the summer of 1997, n8 after working only two months as a temporary employee.

> n7 The parties' submissions do not state the actual date that Plaintiff commenced employment with Defendant. Plaintiff alleges that she worked as a temporary employee for one year and three months before Defendant hired her full-time on July 13, 1998. If this is correct, she began working as a temporary employee for Defendant on or about April, 1997.

> n8 Plaintiff claims that Laffey was hired as a full-time employee in June, 1997 while Defendant claims that Laffey was hired as a full-time employee in August, 1997. The issue of whether Laffey was hired in June, 1997 or August, 1997 does not appear to be material to this case because it does not affect the timeliness or substance of Plaintiff's delay in hiring claim.

[*6]

Plaintiff also claims that Defendant discriminated against her beginning in December 1999 when it delayed promoting her from Senior Staff Assistant to Purchasing Associate. She alleges that from that time, she was performing the same duties as Laffey, a Purchasing Associate, but was "methodically passed over" for this promotion despite her qualifications. Instead, Plaintiff was employed as a Senior Staff Assistant, a position inferior in rank and salary to the Purchasing Associate position. Plaintiff fails to mention in her complaint that on October 9, 2000, she was in fact promoted to the position of Purchasing Associate and received an increase in salary. (Santino Cert. P 6).

Furthermore, Plaintiff claims that Defendant retaliated against her for accusing the Defendant of discriminatory practices. However, Plaintiff does not provide any concrete specifics to this charge, stating only that Defendant suspended her compensation and deprived her of earned compensation. Plaintiff also claims in her opposition papers that the Defendant retaliated against her by forcing her to perform more responsibilities than Laffey, and at the same time, restricting her duties

## II. Legal [*7]  Discussion

### A. Legal Standard

A court shall grant summary judgment under *Rule 56(c) of the Federal Rules of Civil Procedure* "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c).* The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).*

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).* The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. *Id. at 324.* In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).*

The Court must consider all facts and [*8] their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).* The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson, 477 U.S. at 249.* If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America., 974 F.2d 1358, 1363 (3d Cir. 1992).*

### B. Discrimination Claims

Plaintiff alleges that the Defendant discriminated against her in violation of both Title VII and section *1981.* These discriminatory acts allegedly occurred: (1) in 1997-1998 when Defendant allegedly delayed hiring Plaintiff as a full-time employee; and (2) beginning in December, 1999, when Plaintiff was allegedly performing the duties of a Purchasing Associate but was not given a promotion to that position or full salary and benefits of that position.

#### 1. Title VII Discrimination Claims are Time-Barred

Plaintiff's [*9] discrimination claims under Title VII are time-barred. Under Title VII, a plaintiff must file an EEOC charge within 300 days after her claims of dis-crimination accrued. See, e.g., *42 U.S.C. 2000e-5(e)(1)*; *Burgh v. Borough Council of the Borough of Montrose, 251 F.3d 465, 469-70 (3d Cir. 2001).* n9 A cause of action under Title VII accrues when the employee receives notice of the unlawful practice. See *Coleman v. Albertson's, Inc., 2005 U.S. Dist. LEXIS 7943, No. 04-CV-4090, 2005 WL 1041190, at *1 (E.D. Pa. May 4, 2005)* (citing *Delaware State College v. Ricks, 449 U.S. 250, 257, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980)).* Thus, absent a continuing violation, all discriminatory acts that are alleged to have occurred more than 300 days prior to the filing of the EEOC charge on August 13, 2004 are time-barred. See *Verdin v. Weeks Marine Inc., 124 Fed. Appx. 92, 95 (3d Cir. 2005).*

n9 There are technically two limitations periods applicable under Title VII. If the complainant solely files an EEOC charge, such must be filed within 180 days of the occurrence of the alleged unlawful employment practice. *Burgh, 251 F.3d at 469-70.* However, if the complainant also initiates a complaint with a parallel state agency, the period for filing a charge with the EEOC is 300 days from the date of the alleged unlawful employment practice. See, e.g., *42 U.S.C. 2000e-5(e)(1)*; *Burgh, 251 F.3d at 469-70.* In this case, Plaintiff filed her discrimination charge with both the New Jersey Division of Civil Rights and the EEOC and accordingly, the 300 day statute of limitations period applies.

[*10]

Plaintiff's claim of discrimination due to delay in hiring arose when she became aware of the fact that Defendant engaged in an unlawful delay in hiring. This likely occurred in the summer of 1997, when Laffey was hired as a full-time employee, while Plaintiff was not hired into a full-time position until July 13, 1998. Her cause of action certainly arose prior to July 13, 1998, when she was in fact hired into a full-time position. Thus, these alleged discriminatory acts are time-barred because they occurred at least six years prior to the filing of her EEOC charge on August 13, 2004. Similarly, Plaintiff's claim of discrimination due to failure to pay Plaintiff as a Purchasing Associate and promote her to that position arose, if at all, in December 1999, when Plaintiff first claimed of discriminatory treatment in this regard. Certainly, those claims arose prior to October 9, 2000 when she was in fact promoted to the position of Purchasing Associate. Thus, this cause of action arose, if at all, almost four-years prior to the filing or her EEOC charge. Accordingly, Plaintiff's claims of discrimination in violation of Title VII are dismissed as time-barred.

## 2. *Section 1981* Discrimination [\*11] Claims are Time-Barred

Similarly, Plaintiff's *section 1981* discrimination claims are time-barred. Although *section 1981* previously prohibited discrimination in the "making and enforcing" of contracts, it was expanded in 1990 to prohibit discrimination that occurred after the formation of the contract at issue. See *Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 372-73, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004)*; see also *Chugh v. Western Inventory Services, Inc., 333 F. Supp. 2d 285, 294-95 (D.N.J. 2004)* (stating that the 1990 amendments to *section 1981* relate to injuries that occur after the formation of the employment agreement).

Claims brought pursuant to the original version of *section 1981* are subject to the applicable state statute of limitations for the underlying injury. See *Jones, 541 U.S. at 380-82*. The applicable New Jersey statute of limitations is two years. See *Stewart v. Rutgers, 930 F. Supp. 1034, 1047 (D.N.J. 1995)* (stating that a state's personal injury statute of limitations, which is two years in New Jersey, applies under *section 1981*), rev'd on other grounds, *120 F.3d 426 (3d Cir. 1997)*. On the other hand, [\*12] claims brought pursuant to the 1990 amendments to *section 1981* are subject to a four-year statute of limitations. See *Jones, 541 U.S. at 380-85*; see also *Chugh, 333 F. Supp. 2d at 294-95*.

The issue of which statute of limitations applies to Plaintiff's claims was not briefed by the parties, although Defendant states that a four-year statute of limitations applies to *section 1981* claims. The Court declines to adjudicate the issue of which statute of limitations applies to Plaintiff's various claims. The Court will apply the four-year statute of limitations because, as discussed below, Plaintiff's claims do not survive the four-year statute of limitations, and thus, certainly cannot survive the two-year statute of limitations.

A cause of action under *section 1981* accrues when the Plaintiff "knows or has reason to know of the injury which is the basis of the action." *Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998)*. Plaintiff's claim of discrimination based on a delay in hiring her to a full-time position arose, at the latest, on July 12, 1998, the day before she was actually hired into a full-time position. This claim should [\*13] have been brought by approximately July 12, 2002 and thus, is time-barred. Further, Plaintiff's claim of a delay in promotion arose, at the latest, on October 8, 2000, the day before she was actually promoted to the Purchasing Associate position. This claim should have been brought by approximately October 8, 2004 and thus, is time-barred.

## 3. Continuing Violation Theory Does Not Revive Time-Barred Claims

Plaintiff cannot revive her time-barred delay in hiring or delay in promotion claims under the "continuing violation" theory. Under the continuing violation theory, " 'an action is timely so long as the last act evidencing the continuing practice falls within the limitations period, in such an instance, the court will grant relief for the earlier related acts that would otherwise be time-barred ' " See *Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001)* (quoting *Brenner v. Local 514, United Bd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991))*. Therefore, to revive the otherwise time-barred claims from 1997 through October 9, 2000, Plaintiff must allege that there was actual discrimination within the limitations [\*14] periods for Title VII and *section 1981*. See *Baker v. Office Depot, Inc., 115 Fed. Appx. 574, 577 (3d Cir. 2004)* (citing *Cardenas v. Massey, 269 F.3d 251, 256 (3d Cir. 2001))*.

The only claim in Plaintiff's submissions that could arguably revive Plaintiff's delay in hiring and delay in promotion claims is her assertion in her EEOC charge and opposition brief that Defendant currently pays Laffey a higher salary than Plaintiff even though they both hold the position of Purchasing Associate. n10 This argument is without merit.

> N10 This allegation does not derive from a fair reading of Plaintiff's complaint; however, Plaintiff is proceeding pro se and the Court will construe her pleadings liberally. See, e.g., *Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)*; see also *Robinson v. Fauver, 932 F. Supp. 639, 643 (D.N.J. 1996)* (finding that pro se plaintiff's complaint and opposition brief should be read together to determine if plaintiff pled the requisite injury to survive a motion to dismiss). The record indicates that as of October, 2004, Plaintiff was paid $ 37,500.00 per year and Laffey was paid $ 40,400.00 per year. (Santino Cert. PP 4-5).

[\*15]

Plaintiff's alleged discrepancy in pay now that both she and Laffey are Purchasing Associates is merely the effect of discrimination that occurred outside the limitations period and thus does not revive her time-barred claims. See *id*; *Bermingham v. Sony Corp. of Am., 820 F. Supp. 834, 850 (D.N.J. 1992)*; *DiBartolo v. City of Philadelphia, 2001 U.S. Dist. LEXIS 24075, No. 99-CV-1734, 2001 WL 34077879, at \*4 (E.D. Pa. Dec. 13, 2001)*. Both the delay in hiring an employee and delay in promoting an employee are discrete events and thus, do not constitute continuing violations of that employee's rights. See *Nat'l R.R. Passenger Corp. v. Morgan, 536*

U.S. 101, 114-15, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); *Williams v. Rohm & Haas Co.*, 2003 U.S. Dist. LEXIS 26559, No. 99-CV-5203, 2003 U.S. Dist. LEXIS 26559, at *17-23 (E.D. Pa. May 2, 2003) (holding that plaintiff's denial of promotion claims were discrete acts that were time-barred and could not be revived under the continuing violation doctrine). Discrete acts are time-barred even if they are related to acts that would be timely. See *Morgan*, 536 U.S. at 113; *Williams*, 2003 U.S. Dist. LEXIS 26559, at *17-18. If Defendant violated [*16] Plaintiff's rights by delaying in hiring or promoting her, such violations ended on July 13, 1998 and October 9, 2000, when she was respectfully hired into a full-time position and promoted to Purchasing Associate. Accordingly, any disparity in salary that resulted from these actions does not revive Plaintiff's time-barred claims because it does not represent an instance of actual discrimination within the limitations periods for Title VII or *section 1981* but an effect of Defendant's prior actions. n11

n11 The Court is aware of the holdings of Miller v. Beneficial Mgmt. Corp., and Cardenas v. Massey, in which the Third Circuit held that the receipt of a discriminatory paycheck during the applicable limitations period acts as a continuing violation to revive an employee's otherwise untimely pay discrimination claims. See *Cardenas v. Massey*, 269 F.3d 251, 255-58 (3d Cir. 2001); *Miller v. Beneficial Management Corp.*, 977 F.2d 834, 843-44 (3d Cir. 1992). However, the holdings of these cases are distinguishable from the facts of this matter. The plaintiffs in Miller and Cardenas were able to save their untimely *discriminatory* or *equal pay* claims by pleading that they received a discriminatory paycheck during the applicable limitations period. See *Cardenas*, 269 F.3d at 255-58; *Miller*, 977 F.2d at 844. In this case, Plaintiff's untimely claims allege delay in hiring and delay in promotion, not discriminatory or lack of equal pay. Further, after both Miller and Cardenas were decided, the Supreme Court clarified the breadth of the continuing violation doctrine in Nat'l R.R. Passenger Corp. v. Morgan by holding that the continuing violation doctrine does not apply to revive untimely discrete acts of discrimination such as "termination, *failure to promote,* denial of transfer, or *refusal to hire.*" 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) (emphasis added).

[*17]

### 4. Equitable Tolling Theory Does Not Revive Time-Barred Claims

The doctrine of equitable tolling does not revive Plaintiff's time-barred claims. In order for Plaintiff to equitably toll the applicable limitations periods, she would have to show that (1) the Defendant actively misled her respecting her cause of action; (2) she in some extraordinary way was prevented from asserting her rights; or (3) she has timely asserted her rights mistakenly in the wrong forum. See *Parker v. Royal Oak Enterprises, Inc.*, 85 Fed. Appx. 292, 295 (3d Cir. 2003) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994)). There is no such allegation in this case. In fact, Plaintiff admits that she was aware of the alleged inequities when she and Laffey were first hired in 1997. Accordingly, the doctrine of equitable tolling does not apply. n12

n12 To the extent that Plaintiff's complaint and supporting papers can be read to include a separate timely claim for disparate pay based on the current discrepancy of salary between Plaintiff and Laffey now that both are Purchasing Associates, such a claim lacks substantive merit. As of October, 2004, Plaintiff received $ 37,500.00 per year and Laffey's salary was $ 40,400.00 per year. (Santino Cert. PP 4-5). Plaintiff has not shown that this discrepancy results from intentional discrimination, as opposed to the mere fact that Laffey was hired and promoted before Plaintiff. See *McDuffy v. Koval*, 226 F. Supp. 2d 541, 550 (D. Del. 2002) (granting summary judgment on plaintiff's *section 1981* claim because the court found "no evidence indicating that defendants' conduct suggests a purposeful, race-based discrimination" towards the plaintiff); *Figueroa v. Ortho-McNeil Pharm., Inc.*, 2001 U.S. Dist. LEXIS 24174, No. Civ.A. 00-3978, 2001 WL 34371698, at *2 n.1 (E.D. Pa. Oct. 29, 2001) (finding that Plaintiff's Title VII and *section 1981* claims lacked substantive merit because plaintiff failed to provide evidence that the defendant's acts were based in racial discrimination).

[*18]

### C. Retaliation Claims

Plaintiff alleges that the Defendant retaliated against her for accusing it of discriminatory practices in violation of Title VII, *section 1981*, and the NJLAD. For the following reasons, Plaintiff's retaliation claims are dismissed.

## 1. Title VII Retaliation Claim is Dismissed for Lack of Jurisdiction

First, the Court grants summary judgment on Plaintiff's claim of retaliation in violation of Title VII because the Plaintiff did not include this claim in her EEOC charge. The filing of a charge with the EEOC is a jurisdictional prerequisite to a private civil action under Title VII. See *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*; see also *Longoria v. State of New Jersey, 168 F. Supp. 2d 308, 314 (D.N.J. 2001)* ("Title VII plaintiffs may not seek relief or redress in federal court for any claim that has not first been presented to the United States Equal Employment Commission."). The purpose of this requirement is to put the employer on notice that a complaint has been lodged against him and more specifically, give notice of the alleged violation so that employer has the opportunity to correct [*19] any unlawful practices. See *Antol v. Perry, 82 F.3d 1291, 1295-96 (3d Cir. 1996)*. Therefore, the Court must dismiss a Title VII claims that was not "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." See *id. at 1295.*

The allegation of retaliation is not fairly within the scope of the prior EEOC charge because Plaintiff makes no reference to retaliation or facts that could encompass retaliation in her EEOC charge. See, e.g., *Coleman, 2005 WL 1041190, at *2* (dismissing plaintiff's claim of retaliation where plaintiff made no reference to facts that could encompass retaliation in his EEOC charge). In fact, Plaintiff's EEOC charge, which is attached to her complaint, reveals that the box marked "retaliation" in the section marked "Discrimination Based Upon" is left blank. Accordingly, Plaintiff's retaliation claim is dismissed. n13

> n13 Plaintiffs first official claim of retaliation was made in a July 11, 2005 charge of discrimination that she filed with the New Jersey Division on Civil Rights and the EEOC. In this charge, Plaintiff claims that Defendant retaliated against her for filing an EEOC complaint against Defendant on August 13, 2004. Because the filing of an EEOC charge is a jurisdictional prerequisite to a private civil action under Title VII, Plaintiff must await a right to sue letter from the EEOC before bringing her retaliation claim in federal court. See, e.g., *Burgh, 251 F.3d at 470.*

[*20]

## 2. Remaining Retaliation Claims are Dismissed on the Merits

The Court holds that Plaintiff's retaliation claims under *section 1981*, the NJLAD, and Title VII to the extent that Plaintiff's retaliation claims are fairly within the scope of her EEOC, are dismissed because Plaintiff fails to specify any information about the alleged retaliatory acts. To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a statutorily protected activity; (2) the employer took adverse action against her; and (3) that there is a causal connection between the two events. See *Aguiar v. Morgan Corp., 27 Fed. Appx. 110, 112 (3d Cir. 2002)* (setting forth elements of retaliation claim under *section 1981*); *Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 286 (3d Cir. 2001)* (setting forth elements of retaliation claim under Title VII and NJLAD). An adverse action is one that "alters the employee's compensation, terms, conditions, or privileges of employment." *Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)*.

Plaintiff's claim of retaliation rests on three allegations: (1) in her complaint, [*21] she claims her compensation was "suspended" at some unspecified time in some unspecified manner; (2) in her complaint, she claims that her compensation was "deprived" at some unspecified time and in some unspecified manner; and (3) in her opposition, she claims that after filing her EEOC charge on August 13, 2004, she was given additional responsibilities and forced to succumb to more restrictive duties than her "white counterpart" Laffey. Presumably, these are the "adverse actions" that Defendant allegedly took against Plaintiff for accusing it of racial discrimination.

However, Plaintiff's retaliation claims fail for a variety of reasons. First, with respect to her allegations of suspended compensation and deprivation of compensation, Plaintiff fails to specify when these alleged incidents occurred. Accordingly, she cannot meet her burden to establish that her claims occurred within applicable limitations periods, namely: (1) the 300 day statute of limitations applicable to Title VII claims; (2) four-year limitations period applicable to her *section 1981* retaliation claim; n14 and (3) the two-year statute of limitations applicable to her NJLAD retaliation claims, see *Montells v. Haynes, 133 N.J. 282, 292-93, 627 A.2d 654 (1993)*. [*22] See, e.g., *Sullivan v. Griffin Wheel Co., No. 89-C-7942, 1991 U.S. Dist. LEXIS 7385, at *9 n.4 (N.D. Ill. May 31, 1991)* (dismissing plaintiff's Title VII claim where it was "impossible to discern if any of the allegations occurred within" the applicable limitations period).

> n14 The Court applies the four-year statute of limitations to Plaintiff's retaliation claim under *section 1981* because it necessarily arose after she

was hired by Defendant and thus, arose under the post-1990 amendments to *section 1981* reflected in *section 1981(b)*.

Second, Plaintiff fails to provide any evidence that such adverse actions occurred. With respect to her claim that her compensation was adversely affected in retaliation for her charges, Plaintiff fails to specify how her compensation was injured. Instead, the record indicates that since she has been employed by Defendant, Plaintiff's salary has increased over 40%. Her claim that she has been forced to both take on additional responsibilities and has been restricted [*23] in performing her duties since filing her EEOC charge is similarly without merit. First, Plaintiff fails to specify how her job duties or responsibilities have been negatively impacted. Also, an adverse employment action "must be more disruptive than a mere inconvenience of job responsibilities." *Langley v. Merck & Co., Inc., No 04-3796, 2005 U.S. Dist LEXIS 10220, at *7-10 & n.6 (E.D. Pa May 26, 2005)* (finding that change in job duties is insufficient to constitute an adverse employment action); see also *Haugerud v. Amery School Dist., 259 F.3d 678, 691-92 (7th Cir. 2001)* (finding that Plaintiff's allegations that employer gave her additional responsibilities and interfered with her job duties were insufficient to establish an adverse action) Nowhere in Plaintiff's complaint does she identify what duties she is being forced to perform or being prohibited from performing in violation of her rights. Without informing the Court as to how her job duties were negatively impacted, the Court cannot make a determination that her duties were disrupted in a manner sufficient to warrant relief.

Finally, Plaintiff fails to establish a causal connection [*24] between any of these alleged adverse employment actions and Plaintiff's charges of racial discrimination against Defendant. See *Cardenas v. Massey, 269 F.3d 251, 264 (3d Cir. 2001)*; see also *Verdin, 124*

*Fed. Appx. at 95* (granting summary judgment on Plaintiff's retaliation claim because Plaintiff did not produce evidence that there was a causal connection between the alleged adverse action and his engagement in any protected activity). Thus, the Court grants Defendant's motion for summary judgment on Plaintiff's Title VII, *section 1981*, and NJLAD retaliation claims.

### III. Conclusion

Accordingly, the Court grants summary judgment in favor of Defendant, Amerada Hess Corporation. Plaintiff's Title VII, *section 1981*, and NJLAD claims are dismissed. An appropriate order accompanies this opinion.

DATED: 28th of October, 2005

s/ Joel A. Pisano

JOEL A. PISANO, U.S.D.J.

**ORDER**

Before the Court is Defendant Amerada Hess Corporation's motion to dismiss Plaintiff's complaint pursuant to *Fed. R. Civ. P. 12(b)(6)* or in the alternative motion for summary judgment pursuant to *Fed. R. Civ. P. 56*. The Court having considered [*25] the written submissions by the parties and having found that no genuine issue of material fact exists to warrant a trial in this matter **IT IS**

**ON** this 28th day of October 2005,

**ORDERED** that Defendants' motion for summary judgment is **GRANTED;** and

**FURTHER ORDERED** that Plaintiff's complaint is dismissed with prejudice.

s/ Joel A. Pisano

JOEL A. PISANO, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RONALD S. RILEY,                          )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )     C.A. No. 05-746-KAJ
                                          )
THE DELAWARE RIVER AND BAY                )
AUTHORITY, JAMES JOHNSON,                 )     Related Case
Individually, JAMES WALLS, Individually,  )     C.A. No. 05-126-KAJ
TRUDY SPENCE-PARKER, Individually,        )
and CONSUELLA PETTY-JUDKINS,              )
Individually.                             )
                                          )
                    Defendants.           )

## CERTIFICATE OF SERVICE

I, Adria B. Martinelli, Esquire, hereby certify that on July 7, 2006, I electronically filed a true and correct copy of the foregoing **Defendants' Reply Brief in Support of Their Motion to Dismiss and Compendium of Unreported Decisions**, with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

James P. Hall, Esquire
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

YOUNG CONWAY STARGATT & TAYLOR LLP

/s/ Adria B. Martinelli
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6623
Facsimile: (302) 576-3282, 3314
Email: wbowser@ycst.com; amartinelli@ycst.com
Attorneys for Defendants