IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RONALD S. RILEY, )
)
    Plaintiff, )
)
v. ) C.A. No. 05-746 (KAJ)
)
THE DELAWARE RIVER AND BAY )
AUTHORITY, ET AL., )
)
    Defendants. )

**MEMORANDUM OPINION**

---

James P. Hall, Esq., Phillips, Goldman & Spence, P.A., 1200 North Broom Street, Wilmington, Delaware 19806; Counsel for Plaintiff.

William W. Bowser, Esq., Adria B. Martinelli, Esq., Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19801; Counsel for Defendants.

---

October 25, 2006
Wilmington, Delaware



JORDAN, District Judge

I. **INTRODUCTION**

Before me is a Motion to Dismiss filed by The Delaware River and Bay Authority ("DRBA"), as well as James Johnson, James Walls, Trudy Spence-Parker, and Consuella Petty-Judkins (collectively "Defendants"), all of whom are employees of the DRBA.[1] (Docket Item ["D.I."] 7; the "Motion".) The plaintiff, Ronald S. Riley ("Riley"), alleges that the Defendants have discriminated against him on the basis of his race. (D.I. 1 at ¶ 13.) More particularly, Riley alleges that the Defendants have failed to compensate him adequately for work he has done; that the Defendants have failed to promote him despite his performing duties beyond the Defendants' expectations; and that the Defendants have created a hostile work environment because Riley is an African American. *Id.* Riley cites 42 U.S.C. §§ 1981, 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, in support of his claims. *Id.* at ¶¶ 7, 13. He also alleges that the Defendants intentionally inflicted severe emotional distress on him by their intentional discrimination. *Id.* at ¶ 23. Jurisdiction is appropriate under 28 U.S.C. §§1331 and 1343(a)(3) and (4), and supplemental jurisdiction is appropriate under 28 U.S.C. § 1367. For the reasons that follow, I will grant in part and deny in part the Defendants' Motion.

---

[1] These employees are being sued in their individual and official capacities. (D.I. at ¶¶ 3-6.)

## II.  BACKGROUND[2]

Riley is an African-American male employed by DRBA as an Airport Operations Clerk. (D.I. 1 at ¶ 9.) He contends that at all relevant times his job performance and duties have exceeded the job requirements of an operations clerk. (*Id.* at ¶ 11.) Riley alleges that the Defendants have failed to provide him with an equal paygrade for the work he performs and have failed to promote him, despite his efforts to apply for promotions. (*Id.* at ¶¶ 11, 13.) He also contends that no action has been taken by the Defendants to remedy the alleged inadequacy of his compensation. (*Id.* at ¶ 12.) In sum, Riley alleges that the Defendants have discriminated against him on the basis of his race by failing to adequately compensate him, failing to promote him, and by creating a hostile work environment. (*Id.* at ¶ 13.) Riley also alleges that Defendants intentionally inflicted emotional distress as a result of their discrimination. (*Id.* at ¶ 23.)

## III.  STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and must construe the complaint in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* The moving party has the

---

[2] The following rendition of background information does not constitute findings of fact and is cast in the light most favorable to the plaintiff.

2

burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.), *cert. denied*, 501 U.S. 1222 (1991).

## IV.   DISCUSSION

### A.   Title VII Claims

#### 1.   Jurisdiction

The jurisdictional prerequisites to file a suit under Title VII require plaintiffs to file a charge with the Equal Employment Opportunity Commission ("EEOC"), and receive notification from EEOC of the right to sue. *See* 42 U.S.C. §§ 2000e-5(e), 2000(e)-5(f); *Paci v. Rollins Leasing Corp.*, No. 96-295-SLR, 1997 WL 811553, at *5 (D. Del. Dec. 18, 1997). The United States Court of Appeals for the Third Circuit stated in *Robinson v. Dalton*, "[a] complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC. . . for conciliation or resolution." 107 F.3d 1018, 1022 (3d Cir. 1997) (quoting *Hornsby v. U.S. Postal Serv.*, 787 F.2d 87, 90 (3d Cir. 1986)).

Riley's complaint does not state that he satisfied the preconditions to file suit under Title VII. Nevertheless, Riley has submitted evidence that he did comply with those preconditions (D.I. 14 at Ex. A), and there is a "sound and established policy that procedural technicalities should not be used to prevent Title VII claims from being decided on the merits." *Paci v. Rollins Leasing Corp.*, 1997 WL 811553 (D. Del. Dec. 18, 1997) (quoting *Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358-59 (3d Cir. 1984)). Other courts have held that failure to obtain a right-to-sue letter prior to the commencement of a suit is a curable defect. *See, e.g., Jones v. Am. State Bank*, 857

3

F.2d 494 (8th Cir. 1998) (holding that "receipt of a right-to-sue notice is a condition precedent to a filing of a Title VII claim, curable after the action has commenced").

In *Gooding v. Warner-Lambert Co., supra*, the plaintiff filed a complaint with the EEOC alleging a racial discrimination violation under Title VII. 744 F.2d at 356. She received a right-to-sue letter from the EEOC, then filed suit in federal court. The complaint stated that the plaintiff had received the right-to-sue letter and set out in detail the basis for her discrimination claim. *Id.* The complaint also detailed the factual basis for a retaliatory discrimination claim, even though the EEOC had not yet issued a right-to-sue letter for that claim. *Id.* The EEOC later issued a right-to-sue letter on the plaintiff's retaliatory discrimination claim. *Id.* The defendant argued that the issuance of a right-to-sue letter was a jurisdictional prerequisite to a Title VII lawsuit and that Rule 8 of the Federal Rules of Civil Procedure required the plaintiff to allege that jurisdictional fact in her complaint. *Id.* at 356. The Third Circuit held that the district court erred as a matter of law in dismissing the plaintiff's retaliatory claim on jurisdictional grounds. *Id.* at 355. It reasoned that the letter was not a jurisdictional requirement in the constitutional sense, but rather a statutory requirement that allowed the administrative process an opportunity to move forward before a lawsuit was filed. *Id.* at 358. The court stated that the statutory requirement was fulfilled when the second right-to-sue letter was issued. *Id.* Therefore, the plaintiff's failure to state the issuance of that second letter did not render the complaint deficient under Rule 8, and the court at no time lacked jurisdiction over the retaliatory discrimination claim. *Id.*

Here, Defendants argue that the court "has no jurisdiction over Plaintiff's Title VII claim, or alternatively, Plaintiff has failed to state a claim" because Riley did not allege

4

in his complaint that he received a right-to-sue letter before filing suit in federal court. (D.I. 8 at 5.) Because Riley now says that he received a right-to-sue letter to satisfy the preconditions for filing suit in federal court, I conclude that there is no jurisdictional defect in Riley's claim, nor does Riley's belated submission of the right-to-sue letter constitute a failure to state a Title VII claim. Accordingly, I will deny Defendants' motion to dismiss on that ground.

### 2. Individual Employees

Title VII claims brought against the individual employees must be dismissed. Individual employees cannot be held liable for discrimination under Title VII. *Sheridan v. E.I. DuPont de Nemours and Co*, 100 F.3d 1061,1077-78 (3d Cir. 1996), *cert denied*, 521 U.S. 1129 (1997). Accordingly, I will grant the Defendants' motion to dismiss the Title VII claims brought against the individual employees of the DRBA.

### 3. Statute of Limitations

A claimant bringing a charge of discrimination under Title VII in Delaware has 300 days from the time of the alleged discriminatory act to file a complaint with the EEOC. *Arasteh v. MBNA Am. Bank, N.A.*, 146 F. Supp.2d 476, 490 (D. Del. 2001).[3] Dismissal of a Title VII complaint is warranted when the claimant fails to file the charge

---

[3] The language of the Title VII statute specifies that a charge must be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). However, the 180 day time period does not apply in all states. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). "In a state that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must filed within 180 days." *Id.* Delaware's procedures are such that claimants have the benefit of a 300-day statute of limitations period. *Arasteh*, 146 F. Supp. at 490.

5

within this 300-day statute of limitations period. *Andrews v. Abbott Lab.*, No. 00-901, 2002 WL 598458, at *6 (D. Del. April 12, 2002). Riley filed his charge with the EEOC on May 24, 2005. (D.I. 10 at A-8.) Thus, any incidents that occurred before July 29, 2004 may be barred by the 300-day statute of limitations.

In *National R.R. Passenger Corp. v. Morgan, supra*, the Supreme Court addressed the statute of limitations under Title VII with regard to both allegations of discrete acts of discrimination and allegations of a hostile work environment. 536 U.S. at 110-122. The Court held that "the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Id.* at 105. In contrast, the Court also held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* Therefore, an alleged discrete act of discrimination must have occurred within the 300-day statute of limitations period to be considered, while the actions that comprise a hostile environment claim do not have to fall entirely within the 300 days.

      a.    *Discrete Acts of Discrimination*

The Court in *Morgan* explained that, in the context of discrete acts, the term "unlawful employment practice"[4] under Title VII does not mean a string of related events. Rather a discrete act is exactly what the word "discrete" connotes: a single act

---

[4] As explained earlier, in Delaware, Title VII requires a charge to be filed with the EEOC 300 days after the "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).

6

or occurrence. *Id.* at 111-15. Furthermore, the Court reasoned that discrete acts within the statutory period do not make timely a discrimination charge regarding acts that fall outside the statutory period. Each discrete act starts a new statute of limitations clock. *Id.* at 112-13. In light of this reasoning, the Court struck down the "continuing violation" doctrine, which stood for the proposition that, as long as one discriminatory act falls within the statute of limitations period, all other related acts constituting a discriminatory pattern may be considered as well. *Id.* at 114. The Court identified termination, failure to promote, denial of transfer, refusal to hire, and inadequate pay as examples of discrete acts. *Id.* at 112, 114.

Here, the discrete acts alleged by Riley are inadequate pay and failure to promote. (D.I. 1 at ¶ 11, 13.) Defendants argue that Riley's Title VII claim should be dismissed because the alleged discrete acts of discrimination occurred between 2001 and 2003.[5] Defendants fail to address, however, Riley's allegations that the failure to adequately pay and promote him continues to this day. (D.I. 1 at ¶ 13.) In a motion to dismiss, I am required to accept the facts in the complaint as true, and nothing in the complaint indicates that Riley is complaining only of the time period between 2001 and 2003. In Riley's opposition brief he writes, "to this day [Riley] continues to receive

---

[5] Defendants explain in their opening brief their rendition of the facts. In 2001, Riley began working in his current position, although a specific job description for the position had not yet been developed. (D.I. 8 at 2; D.I. 10 at A-5.) In January of 2002, Defendants asked him to create a job description for his position. *Id.* In April of 2003, Riley's job description was approved. *Id.* Riley's title became Airport Operations Clerk, he was designated to paygrade P, and he received retroactive pay for two months. *Id.* Defendants contend that the crux of Riley's complaint is that he is entitled to retroactive pay not only for two months, but rather for the entire time period between the winter of 2002, when he was asked to create a job description for his position, and April 2003. *Id.*

7

compensation less than that of similarly situated white employees who perform the same or similar duties." (D.I. 14 at 5; *see also* D.I. 1 at ¶ 11.) Under *Morgan*, Riley's allegations of inadequate pay and failure to promote in violation of Title VII may be considered, but only those acts that occurred on or after July 29, 2004, which is the beginning of the 300-day statute of limitations period. Any claim under Title VII based upon discrete acts of discrimination that occurred before that period is time barred and must be dismissed.[6]

### b.   Hostile Environment Claim

The Supreme Court in *Morgan* wrote that hostile environment claims "are based on the cumulative effect of individual acts." *Morgan*, 536 U.S. at 115. And, as noted above, as long as one of the acts contributing to the hostile environment claim occurred within the statute of limitations period, all of the acts comprising the claim may be considered. *Id.* at 117. Riley appears to be alleging an ongoing hostile work environment. (D.I. 1 at ¶¶ 9-13.) However, his complaint does not specify that any of the acts contributing to the alleged hostile environment occurred within the 300-day statute of limitations period. *Cf. Tate v. Main Line Hospital, Inc.*, No. 03-6081, 2005 WL 300068, at *13-14 (E.D. Pa. Feb. 8, 2005) (allowing a plaintiff to recover on a hostile work environment claim because she alleged that she was continually harassed up until a point that was within the statute of limitations time period). Therefore, I will dismiss without prejudice Riley's Title VII hostile environment claim.

---

[6]*Morgan*, indicates that, although related discrete acts may be time-barred, such acts may be viewed as background evidence when considering acts of discrimination that have been timely alleged. 536 U.S. at 113.

B.   Section 1981 Claims

1.   State Actors

Riley also claims that Defendants violated his rights under 42 U.S.C. § 1981, when they failed to provide adequate compensation, failed to promote him, and created a hostile work environment because of his race.[7] (D.I. 1 at ¶ 13.) In response, Defendants urge that the Section 1981 claim should be dismissed because Riley should have brought his claim under Section 1983 of Title 42, not Section 1981. The Defendants cite a recent Delaware Supreme Court decision and decisions of the Fourth, Fifth and Eleventh United States Circuit Courts of Appeals in support of their argument that a state actor must be sued under Section 1983, not Section 1981. (*See* D.I. 16 at 7, citing *Parker v. Gadow*, 893 A.2d 964, 968 (Del. 2006); *Dennis v. County of Fairfax*, 55 F.3d 151,156 (4th Cir. 1995); *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 463-64 (5th Cir. 1995), *cert. denied*, 534 U.S. 948 (2001); *Butts v. County of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2006).)

In *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001), the Third Circuit observed that federal courts have differed over whether Section 1981 was available for claims against state actors. After noting this split, the Third Circuit continued to analyze whether two state actors named in the suit could be held liable under Section 1981, signaling that, in the Third Circuit, relief is available under Section 1981. *Id.* at 268-69. Although district courts within this Circuit have reached different conclusions on this

---

[7] Riley also asserts these claims under 42 U.S.C. § 1983. Because Defendants have not included Riley's Section 1983 claims in their Motion to Dismiss, I do not address them at this time.

9

point, I conclude that a Section 1981 claim can proceed, in light of *Cardenas*. Cf. *Miller v. Milton*, No. Civ. 03-876, 2005 WL 549531, at *4 (D. Del. March 8, 2005) (assuming, without deciding, that state actors can be held liable under Section 1981).

### 2. Statute of Limitations

Defendants next argue that, if Section 1981 applies, Riley's claims should be barred by a two-year statute of limitations. (D.I. 16 at 7.) The Supreme Court in *Jones v. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004), concluded that a four-year statute of limitations applied to Section 1981 claims if those claims were made possible from amendments to Section 1981 by the Civil Rights Act of 1991, 105 Stat. 1071.[8] *Id.* at 383. Because plaintiffs could not bring racial discrimination claims under Section 1981 prior to the amendments under the Civil Rights Act of 1991, the Supreme Court concluded that the plaintiff's racial discrimination claims alleged violations of the amended statute and were thus subject to a four-year statute of limitations. *Jones*, 541 U.S. at 383. Here, the same reasoning applies. Riley was not able to bring his racial discrimination claims under Section 1981 prior to the 1991 amendments. Consequently, Riley's Section 1981 claims are subject to a four-year statute of

---

[8] Section 1981 does not contain a statute of limitations. Before 1990, the Supreme Court instructed federal courts to apply analogous state statute of limitations to Section 1981 claims. *Jones*, 541 U.S. at 371. In Delaware, courts applied a two-year statute of limitations period to Section 1981 claims. *See, e.g., Phillips v. Daimlerchrysler Co.*, No. 01-247, 2003 WL 22939481, at *3 (D. Del. March 27, 2003), aff'd., 112 F.App'x 867 (3d Cir. 2004). In 1990 Congress passed 28 U.S.C. § 1658, which provided that all civil actions arising under federal statutes enacted after December 1, 1990 had four-year statute of limitations. 28 U.S.C. § 1658. Because Section 1981 was amended in 1991 by the Civil Rights Act of 1991, 105 Stat. 1071, the Supreme Court, in 2004, concluded that causes of actions under the 1991 amendments were subject to a four-year statute of limitations. *Jones*, 541 U.S. at 383.

limitations. *See Bates v. Tandy Corp.*, No. 05-3851, 2006 WL 1749541, at *3 (3d Cir. June 27, 2006) (stating that "an action for race discrimination must be brought with four years of the treatment alleged to be discriminatory"); *Wimberly v. Severn Trent Servs.*, No. 05-2713, 2006 WL 2468641, at *7 (E.D. Pa. Aug. 22, 2006) (finding that the plaintiff's racial discrimination claim under Section 1981 had a four-year statute of limitations). Because a four-year statute of limitations applies, I will consider Riley's racial discrimination claims under Section 1981 insofar as they address discrete acts that occurred on or after October 18, 2001, four years before his complaint was filed. (D.I. 1.) These claims include Riley's allegations that he has received inadequate pay for work he has performed "to date" and that he wrongly has been denied promotion. (*Id.* at 11, 13.)

I will not, however, consider Riley's hostile environment claim under Section 1981. Defendants argue that, in light of *Morgan*, the "continuing violation" doctrine is no longer applicable under Section 1981. A recent district court decision within the Third Circuit observed that, "some doubt has been cast on whether the continuing violation doctrine actually applies to § 1981. Nevertheless, the court has not found a case in which the Third Circuit has retreated from its holding...that the continuing violation doctrine applies equally with respect to both Title VII and § 1981." *Grigsby v. Kane*, No. 99-2083, 2005 WL 348303, at *7, n.5 (M.D. Pa. Feb. 2, 2005) (citations omitted). Although Riley has a strong argument that the "continuing violation" doctrine is applicable under Section 1981, I need not decide the issue at this time, since Riley has not specified that any of the acts contributing to the alleged hostile environment occurred within the four-year statute of limitations period. Therefore, I will dismiss without prejudice Riley's hostile environment claim under Section 1981.

3.  *DRBA Immunity*

The DRBA argues that it is immune from Riley's Section 1981 claim because of sovereign immunity. (D.I. 8 at 8.) The Delaware-New Jersey compact which created the DRBA states that the DRBA is an agency of both Delaware and New Jersey. 17 DEL. C. § 1701, Art. IV. "A state agency is entitled to immunity from suit in a federal court under the eleventh amendment when a judgment against it 'would have had essentially the same practical consequences as a judgment against the state itself.'" *Fitchik v. New Jersey Transit Rail Operators*, 873 F.2d 655, 658 (3d Cir. 1989) (citing *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979)), *cert. denied*, 493 U.S. 850 (1989). Thus, the inquiry must focus on whether the agency is in effect the alter ego of the state. *Id.* The Third Circuit in *Fitchik* developed three factors to guide a court in determining whether an agency is entitled to state immunity. *Id.* at 659. The three factors are: (1) whether the money that would pay the judgment would come from the state, (2) the status of the agency under state law, and (3) what degree of autonomy the agency has. *Id.* at 659. The first factor is the most important one and includes considerations such as: "whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from the responsibility of the agency's debts." *Id.* at 659-60.

In applying the factors articulated by the Third Circuit, I conclude that the DRBA is not entitled to sovereign immunity. First, it appears that the DRBA, and not the states of New Jersey or Delaware, would be responsible for any judgment. The compact explicitly reads, "The Authority shall have no power...to create any debt or liability of the State of Delaware, of the State of New Jersey or of any other agency." 17 DEL. C.

§1701, Art. XVI.  Moreover, the DRBA generates revenue through the collection of tolls to cover its operations costs, *id.* at Art. X, and the compact is silent in terms of state financial contributions to the agency.  Thus, it appears that payment for a judgment would not come from either of the states' treasuries, that the DRBA generates its own revenue, and that, in effect, both states have immunized themselves from the DRBA's liability and debts.

The agency's status under the second and third factors is less clear.  The second factor requires courts to inquire into the status of the agency under state law -- i.e., "whether state law treats an agency as independent, or as a surrogate for the state." *Fitchik*, 873 F.2d at 662.  There are competing facts under this inquiry.  Weighing in favor of granting immunity is that the DRBA cannot undertake a major project without the approval of the two states, the DRBA cannot undertake additional duties without authorization of the state, the DRBA has the power of eminent domain, and the DRBA is not required to pay state taxes.  17 DEL. C. §1701, Art. IV(d), VIII, IX, IX.  On the other hand, the DRBA has the authority to purchase and lease property, enter into contracts, and borrow money without the approval of New Jersey or Delaware.  *Id.* at Art. VII.  On balance, I conclude that the DRBA cannot be said to be the creature of either state.  It arises from a compact between two sovereigns and is synonymous with neither.

Under the third factor, it appears that the DRBA has significant autonomy.  The DRBA is governed by twelve commissioners who have the power to enter into contracts, accept government grants, acquire property, borrow money and procure insurance.  *Id.* at Art. V,VII.  Nevertheless, any commissioner may be removed or

13

suspended from office according to the law of the state from which the commissioner is appointed. *Id.* at Art. V.

The Third Circuit in *Fitchik* decided whether New Jersey Transit Corporation was entitled to sovereign immunity. It ultimately denied immunity to the agency because the agency was responsible for its own liability. *Fitchik*, 873 F.2d at 664. The court wrote, "In this case, the most important ... factor – whether the judgment would be paid by state funds–provides extremely strong indication that NJT is not the alter ego of New Jersey." *Id.* The court explained that finding an agency is responsible for its own liability weighs strongly against granting immunity because the purpose of the Eleventh Amendment is to prevent states from paying judgments out of their treasuries. *Id.* at 659-60.

Here, the DRBA is responsible for its own liability and it appears that the agency is sufficiently independent of both states that application of sovereign immunity would be inappropriate. Therefore, I deny Defendant DRBA's request for immunity from liability associated with Plaintiff's §1981 claim.

4.   *Individual Employees*

Riley brings his Section 1981 causes of action against three DRBA officers and one DRBA manager in their individual capacities. (D.I. 1 at ¶¶ 3-6, 13.) The Third Circuit has found "individual liability under Section 1981 'when [the defendants] intentionally cause an infringement of rights protected by Section 1981, regardless of whether the [employer] may also be held liable.'" *Cardenas v. Massey*, 269 F.3d 251, 269 (3d. Cir. 2001) (quoting *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986). Riley has alleged that the individual defendants deliberately and intentionally "participated in" and "authorized" racially discriminatory acts in violation of

Section 1981. (D.I. 1 at 13, 16, 17.) Therefore, I deny Defendants' motion to dismiss Riley's Section 1981 claims against the individual defendants.

C.  *Intentional Infliction of Emotional Distress Claim*

Riley has pleaded an intentional infliction of emotional distress claim based on events that occurred during his employment at the DRBA. (D.I. 1 at ¶ 23.) Common law actions against an employer for intentional infliction of emotional distress "arising from and in the course of employment" are barred by the Delaware Worker's Compensation Act. *Brodsky v. Hercules, Inc.*, 966 F. Supp. 1337, 1353 (D. Del. 1997).[9] Therefore, I will grant Defendants' motion to dismiss the intentional infliction of emotional distress claim.

**V.   Conclusion**

Accordingly, I will grant Defendants' Motion to Dismiss as to Plaintiff's Title VII claims against the individual DRBA employees, his Title VII claims for discrete acts that occurred before July 29, 2004, his Title VII hostile environment claim, his Section 1981 claims for discrete acts that occurred before October 18, 2001, his Section 1981 hostile environment claim, and his intentional infliction of emotional distress claim. I will deny the Motion in all other respects. An appropriate order will follow.

---

[9] Because Riley is a resident of Delaware, it appears that he is bringing his claim under Delaware law.

15