## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RONALD S. RILEY,                          :
                                          :
                    Plaintiff,            :
                                          :
        v.                                :        C.A. No.: 05-746 (MPT)
                                          :        (Consolidated)
THE DELAWARE RIVER AND BAY                :
AUTHORITY, JAMES JOHNSON, Individually,   :
JAMES WALLS, Individually, TRUDY          :
SPENCE-PARKER, Individually, and CONSUELA :
PETTY-JUDKINS, Individually,              :
                                          :
                    Defendants.           :

---

### UNREPORTED DECISIONS TO PLAINTIFF RONALD S. RILEY'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

JAMES P. HALL, ESQUIRE (#3293)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
Attorney for Plaintiff,
Ronald S. Riley

DATE: June 9, 2008

Westlaw.

Not Reported in F.Supp.2d                                                        Page 1
Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.))**

**H**
Nunez, MD v. Temple Professional Associates
E.D.Pa.,2005.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Luis E. NUNEZ, MD, Plaintiff,
v.
TEMPLE PROFESSIONAL ASSOCIATES, et al.,
Defendants.
**No. Civ.A.03-CV-6226.**

Feb. 22, 2005.

Keith S. Erbstein, The Beasley Firm, Philadelphia, PA, for Plaintiff.
Lisa Marie Scidurlo, Larry J. Rappoport, Stevens & Lee, King of Prussia, PA, for Defendants.

*MEMORANDUM*

DAVIS, J.
**\*1** Presently before the Court is the Motion for Summary Judgment filed by Defendants Temple Professional Associates, Temple Physicians, Inc., and Temple University Health System Inc. on August 2, 2004 (Defs.' Mot., Doc. No. 7), the Cross-Motion for Summary Judgment filed by Plaintiff Luis E. Nunez on August 23, 2004 (Pl.'s Cross-Mot., Doc. No. 8), and the Brief in Opposition to Plaintiff's Cross-Motion for Summary Judgment on All Claims in Plaintiff's Complaint filed by the Defendants on September 17, 2004 (Defs.' Opp'n, Doc. No. 12).

For the reasons that follow, it is hereby ORDERED that Defendants' Motion is GRANTED with respect to Counts III and IV and DENIED with respect to Counts I and II. Plaintiff's Cross-Motion is therefore DISMISSED as moot with respect to Counts III and IV. Plaintiff's Cross-Motion is DENIED with respect to Counts I and II.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are uncontroverted. Plaintiff Luis E. Nunez, M.D. is currently 67 years old. Pl. Depo. at 7. His employment relationship with the Defendants began in October 2001, at which time he was hired to provide services at the Comprehensive Health Center ("CHC") at the Episcopal Campus of Temple University Hospital. Specifically, Defendants hired Plaintiff to cover for David Stricklan, M.D. when Dr. Stricklan was absent from CHC. Defs.' Mot. at 4-5; Pl.'s Cross-Mot. at 5. On December 6, 2001, Plaintiff and Defendant entered into a part-time employment agreement, which provided that Plaintiff would work thirty-two (32) to forty (40) hours per week for Defendant Temple Professional Associates ("TPA"),[FN1] performing "the full range of professional services customarily performed by physicians engaged in the practice of general and family medicine."Pl.'s Cross-Mot at Ex. A. The contract was printed on letterhead bearing the names of both Defendant Temple University Health System ("TUHS") and Defendant TPA. *Id.* The contract stated that Plaintiff would be employed by Defendant TPA. *Id.* The impetus for this formal contractual arrangement was the permanent departure of Dr. Stricklan from CHC and the immediate need for a bilingual physician to take over Dr. Stricklan's patient schedule. Defs.' Mot. at 5.

> FN1. As of July 2003, TPA no longer exists as a separate entity. During the course of Plaintiff's employment, Defendants maintain that he became an employee of Temple Physicians, Inc. ("TPI"). Defs.' Mot. at 3, n.3.

Plaintiff provided services at CHC pursuant to this contract until March 2002, when Defendants hired Gladys Fion, M.D. who is approximately 30 years old, to fill Dr. Stricklan's former position at CHC on a full-time basis. Def.'s Mot. at 6; Pl.'s Cross-Mot. at 7, n.10. That same month, Defendants transferred Plaintiff to another practice, Temple Community Medical Center ("TCMC"), where a family practice position had opened up due to the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.))**

Page 2

retirement of Martin Munoz, M.D. Def.'s Mot. at 7; Pl.'s Cross-Mot. at 7-8. Plaintiff filled this position pursuant to his December 2001 contract until July 1, 2002, at which time Defendants notified Plaintiff that his last day would be July 2, 2002. In his termination notice, Defendants communicated to Plaintiff that he would be paid until August 24, 2002, as Defendants interpreted his contract to require 30 days notice before cessation of pay. Def.'s Mot. at 8; Pl.'s Cross-Mot. at 8-9. Plaintiff's termination was precipitated by Defendants' hiring of Daniel Hernandez, M.D., who had recently completed a residency in family practice, to fill the position vacated by Dr. Munoz on a full-time basis. Def.'s Mot. at 8. At the time of his termination, Plaintiff was 66 years old.

*2 On or about September 22, 2002, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission. On or about August 27, 2003, the EEOC issued a Notice of Right to Sue. Plaintiff timely filed suit in this Court on October 28, 2003, alleging age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"). In addition, Plaintiff also alleges that Defendants' actions constituted a breach of contract under Pennsylvania common law and a violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA").

II. STANDARD OF REVIEW

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Arnold Pontiac-GMC, Inc. v. General Motors Corp.,* 786 F.2d 564,

568 (3d Cir.1986). Only facts that may affect the outcome of a case are "material," and a fact is considered to be material if "its existence or nonexistence might affect the outcome of the suit under the applicable law."*Anderson,* 477 U.S. at 248. All reasonable inferences from the record are drawn in favor of the non-movant. *Seeid.* at 256.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. *SeeJ.F. Feeser, Inc. v. Serv-A-Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert.denied,*499 U.S. 921 (1991). A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. *Anderson,* 477 U.S. at 248;*Ridgewood Bd. of Educ. v. N.E. for M.E.,* 172 F.3d 238, 252 (3d Cir.1999); *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989); *Woods v. Bentsen,* 889 F.Supp. 179, 184 (E.D.Pa.1995).

III. CLAIMS AGAINST TEMPLE UNIVERSITY HOSPITAL SYSTEM

Defendants argue that TUHS is entitled to summary judgment on all claims against it, as Plaintiff has not established an employment relationship with that entity. Defs.' Mot. at 3. n.3. Defs.' Opp'n at 16. Plaintiff answers that TUHS is a proper defendant in this case pursuant to Pennsylvania agency law and the "integrated enterprise" test articulated by federal courts in dealing with cases where both a parent and a subsidiary are named defendants in an ADEA case. Pl.'s Cross-Mot. at 36-37.

*3 The "integrated enterprise" test was developed by courts to help resolve cases in which a plaintiff attempts to hold two corporations liable as a single employer for violations of a statute prohibiting dis-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.))

crimination in employment. *See Gorman v. Imperial Metal & Chemical Co.,* 1999 WL 124463, *3 (E.D.Pa.1999). Under this test, a court considers the following characteristics of the parent and subsidiary corporations: (1) the interrelation of operations, (2) common management, (3) common control of labor relations, and (4) common ownership or financial control. *Id.* (citing *Kames v. Summit Stainless, Inc.,* 586 F.Supp. 324, 327 (E.D.Pa.1984)). No singular factor is controlling. *Id.*

The Court finds that, as a matter of law, TUHS was Plaintiff's employer for purposes of the ADEA and PHRA. The employment contract entered into by Plaintiff and TPA, as well as the letter informing him of his termination, at which time Defendant claims Plaintiff was an employee of TPI, was printed on TUHS stationary. Pl.'s Cross-Mot. at Ex. A; Ex. D. The employment contracts signed by Drs. Fion and Hernandez were entered into between those doctors and TPA, which is defined in those contracts as "a Pennsylvania nonprofit corporation formed for the purpose of providing physician services to patients and to provide services to the Temple University Health System, Inc. and its affiliated hospitals." *Id.* at Ex. E; Ex. F. In his deposition testimony, Mr. James Larson, the current Chief Operating Officer of TPI, testified that TUHS handles all human resource needs for TPI and TPA. Larson Depo. at 81-82; Mankin Depo. at 201 ("Personnel is a department that we don't staff. We buy that service from [TUHS]."). This is confirmed, in part, by a printout from "Temple University Hospital" detailing Plaintiff's work history with Defendants; the printout contains a weekly summary of the number of hours worked, the hourly rate at which he was paid, and his gross weekly pay. Pl.'s Cross-Mot. at Ex. Q. Moreover, Dr. Eric Mankin, the current CEO of TPI, testified at his deposition that he also served on the senior management of TUHS Leadership and that he spent a "fair amount of [his] time at the TUHS Center campus." Mankin Depo. at 6. Makin also testified that management of TPA and TPI reported to management of TUHS and that the TUHS Board over-

saw and continues to oversee the business operations of TPI. Mankin Depo. at 10. Given the inter-related operations, common management, and common control of labor relations that exist between TPA, TPI, and TUHS, the Court finds that TUHS is a proper defendant in this matter.

## IV. ADEA AND PHRA CLAIMS

Plaintiff alleges that Defendants impermissibly terminated his employment based on his age. The ADEA makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."29 U.S.C. § 623(a)(1). A plaintiff who alleges disparate treatment must show that "the protected trait (under the ADEA, age) actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). A plaintiff therefore bears the burden of proving by a preponderance of the evidence that age "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Id.*

*4 Where a plaintiff's case is based principally on circumstantial evidence of discrimination, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is the appropriate framework for analysis of both ADEA and PHRA claims: (1) Plaintiff must establish a *prima facie* case by a preponderance of the evidence; (2) Defendant then must produce a legitimate nondiscriminatory reason for the adverse employment decision; and (3) Plaintiff must demonstrate by a preponderance of the evidence that Defendant's stated reason is a mere pretext for illegal discrimination. *Id.* at 802 & n. 13; *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 410 (3d Cir.1999); *Allegheny Housing Authority v. Commonwealth of Pennsylvania PHRC,* 516

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.))

Pa. 124, 532 A.2d 315, 316-18 (Pa.1987) (adopting the *McDonnell Douglas Corp.* framework for analysis of PHRA claims). Though the burden of production shifts between the parties, the burden of persuasion as to whether the employer-defendant's actions were motivated by age rests with the plaintiff at all times. *Gray v. York Newspapers,* 957 F.2d 1070, 1078 (3d Cir.1992) (citation omitted).

*A. Prima Facie Case*

Plaintiff claims that Defendants impermissibly discriminated against him on the basis of his age by replacing him at CHC with Dr. Fion and by replacing him at TCMC with Dr. Hernandez. Pl. Compl. at ¶ 46a. Defendants claim that Plaintiff has not made out a prima facie case, as he has not shown that he was qualified to hold either the position at CHC or TCMC on a full-time basis. Defs.' Mot. at 13.

To make out a prima facie case of discrimination, Plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) despite his qualifications, he suffered some form of adverse employment action; and (4) the adverse employment action took place under circumstances that give rise to an inference of unlawful discrimination. *See Jones,* 198 F.3d at 411; *Waldron v. SL Indus., Inc.,* 56 F.3d 491, 494 (3d Cir.1995); *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 356-57 (3d Cir.1999). Defendants do not dispute that Plaintiff was in the protected class, that he suffered an adverse employment action, or that Drs. Fion and Hernandez are sufficiently younger than Plaintiff.[FN2] The crux of whether Plaintiff can make out a *prima facie* case in the instant ADEA claim is whether Plaintiff was qualified to fill the full-time positions that were ultimately given to Doctors Fion and Herndandez.

> FN2. Courts within the Third Circuit have consistently held that the satisfaction of the fourth element of a prima facie case requires proof of an age difference of at least

seven years. *See, e.g., Fakete v. Aetna, Inc.,* 152 F.Supp.2d 722, 735 (E.D.Pa.2001) ("For satisfaction of the fourth element, courts generally require proof that the plaintiff was replaced by a person who is younger than he by at least seven years."); *Gutknecht v. SmithKline Beecham Clinical Labs.,* 950 F.Supp. 667, 672 (E.D.Pa.1996) ("It is generally accepted that when the difference in age between the fired employee and his or her replacement is fewer than five or six years, the replacement is not considered 'sufficiently younger,' and thus no prima facie case is made."). In the instant case, Dr. Fion is approximately 30 years old and Dr. Hernandez has only recently completed his residency program, which indicates that he is much younger than a physician with the educational and practical experience of Plaintiff. Defendant has produced no evidence to the contrary.

As a threshold issue, Defendant's claim that Plaintiff was not qualified because he lacked board eligibility/certification is more properly considered during the pretext stage of the Court's analysis. In *EEOC v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184 (10th Cir.2000), the Tenth Circuit declined to allow a defendant to use its legitimate non-discriminatory reason as a barrier to a plaintiff's establishment of a *prima facie* case, as it found that "to hold otherwise would be tantamount to collapsing the first and second stages of the *McDonnell Douglas* analysis and would deny a plaintiff the opportunity to demonstrate that the defendant's explanation for the adverse employment action is pretextual." *Id.* at 1193. The Court finds this reasoning to be persuasive and will therefore not consider Defendant's lack of board eligibility/certification to be an impediment to his showing of a *prima facie* case of age discrimination.

*5 Plaintiff has produced evidence sufficient to make a *prima facie* case that he was qualified for full-time employment with Defendants. A plaintiff

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.))

can satisfy his burden at the prima facie stage by introducing some credible evidence that he possesses the objective qualifications necessary to perform the job sought. *See, e.g.,EEOC,* 220 F.3d at 1193-94 (citations omitted). Plaintiff has had significant medical training and practice as a surgeon and family practice physician. With respect to his formal educational training, Plaintiff has offered uncontroverted evidence that he (1) completed a residency in cardio-thorasic surgery at Hahnemann University from 1957 to 1961, which included a year specializing in the field of cardiology, (2) that he had an internship in medicine at Albert Einstein Medical Center in or about 1962, (3) that he completed a fellowship in pulmonary physiology in or about 1963, and that (4) he completed a residency in general surgery from 1966 to 1970, which included some pediatrics training.[FN3]

> FN3. In the interim years between his fellowship and general surgery residency, Plaintiff took graduate courses at Drexel University in Biomedical Engineering.

In addition, Plaintiff's practical work experience is substantial. Plaintiff was the Chief of Cardio-Thorasic Surgery at Dos de Mayo Hospital for approximately one year in or around 1961, a cardio-thorasic surgeon for one year at Einstein from 1965 to 1966, an emergency room physician at Frankfort Hospital from 1971 to 1973, and a general surgeon for almost twenty years from 1973 to 1992. Beginning in 1976, Plaintiff also maintained his own internal/family medicine practice; he practiced family medicine exclusively after he ceased his general surgery activities in 1992. In 1994, Plaintiff began to supplement his private practice by working as a family practice physician for Lehigh Physicians, Inc. at two of its clinics, including one at Episcopal Hospital. Plaintiff began to exclusively work at his private practice again in 1998 when Defendant Temple University Health System, Inc. acquired Episcopal Hospital, but not Lehigh Physicians, which subsequently dissolved. Defs.' Mot. at 3.

Beyond his educational and practical experience,

the record reflects that Plaintiff was also bilingual, a skill that Defendants considered essential to work in the community care facilities that Plaintiff staffed for them, as the communities those clinics serviced were largely Spanish-speaking. Mankin Depo. at 98. In addition, Defendants do not argue that Plaintiff was not a competent employee. Dr. Mankin, in his deposition testimony, stated that he could not recall receiving any complaints about Plaintiff's performance at any point during his tenure at Defendants' facilities. Mankin Depo. at 140.

Given Plaintiff's extensive *curriculum vitae* and his unblemished work record while in the employ of the Defendants, the Court finds that Plaintiff has sufficiently shown that he was qualified for a permanent physician position and therefore has carried his burden of establishing a *prima facie* case of age discrimination.

*B. Defendant's Legitimate, Nondiscriminatory Reason*

**\*6** Once Plaintiff establishes a prima facie case, " '[t]he burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the [adverse employment decision]." ' *Showalter v. University of Pittsburgh Medical Center,* 190 F.3d 231, 235 (3d Cir.1999) (quoting *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3rd Cir.1997); *seealsoSmith v. Borough of Wilkinsburg,* 147 F.3d 272, 278 (3rd.Cir.1998).

Defendants have stated that the reason they chose to exercise their option to terminate Plaintiff under their interpretation of his employment contract rather than retaining him on a full-time basis was his lack of Board eligibility and/or Board certification. Def.'s Mot. at 14. As such, the burden shifts to Plaintiff to show that this reasons was pretextual.

*C. Pretext*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.))

Page 6

Once a Defendant produces a non-discriminatory reason for the adverse employment decision, the burden shifts back to the Plaintiff, who must submit evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir.1997); *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994). Pretext is not demonstrated by showing simply that the employer was mistaken. *Sempier v. Johnson & Higgins,* 45 F.3d 724, 731 (3d Cir.1995) (citing *Ezold v. Wolf, Block, Schorr and Solis-Cohen,* 983 F.2d 509, 531 (3d Cir.1992), *cert.denied,* 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993)). Instead, the Court examines the record for "evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons."*Id.* (citing *Josey v. John R. Hollinsworth Corp.,* 996 F.2d 632, 638 (3d Cir.1993)).

Under the first prong of the disjunctive test articulated above, a plaintiff-employee can defeat a defendant-employer's motion for summary judgment by directly or circumstantially discrediting the employer's proffered reason. In *Fuentes v. Perskie,* the Third Circuit explained that

> to discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons.

*7 Fuentes,* 32 F.3d at 765.

The Court finds that a reasonable trier of fact could rationally disbelieve that Defendants terminated Plaintiff because he was not Board certified or Board eligible. A proper beginning for a discussion of the Defendants' alleged policy is the definition of the terms "Board certified" and "Board eligible." Board certification is a process by which a physician becomes credentialed as a specialist in his or her chosen field. Each medical specialty has its own Board that sets requirements for becoming certified; the American Board of Medical Specialties oversees these Member Boards in their awards of certification. *See* Pl.'s Cross-Mot. at Ex. J (American Board of Medical Specialties website); Ex. K (American Board of Family Practice website and certification requirements); Ex. L (American Board of Internal Medicine website and certification requirements). As opposed to the clear status of a physician who is Board certified, the status of a physician who is merely "board eligible" is more ambiguous. The American Board of Medical Specialities has published the following explanation of that term:

> The specific term "board eligible" has been given such diverse meanings by different agencies that it has lost its usefulness as an indicator of a physician's progress toward certification by a specialty board. Furthermore, because some candidates have used the term year after year while making no perceptible progress toward certification, it has sometimes been accepted improperly as a permanent alternative to certification. The requirements for admission to the certification process change from time to time, making the term "board eligible" equally susceptible to changes in meaning. For these reasons, the ABMS recommends to its Member Boards that the use of the term "board eligible" be dis- avowed.

Pl.'s Cross-Mot. at Ex. J. Dr. Mankin testified that he understood that a physician who is "Board eligible" is "a physician ... who qualifies to sit for Board certification ... [I]n every case that I am

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 7
Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.))**

aware of, [it] refers to physicians who have suc-cessfully completed an accredited residency in their specialty of choice, such that they're able to sit for the written or oral exam."Makin Depo. at 30-31.

Dr. Mankin is responsible for the hiring and firing of the physicians who staff the 32 sites managed by TPI. Defs.' Mot. at 3. Dr. Mankin testified that there was a requirement that any physician hired without a substantial practice of their own be Board eligible or Board certified "in an appropriate speci-ality conductive to the care of the patients [they] were expected to provide services for."Mankin Depo. at 19-20. Mankin testified that he had per-sonally employed his policy in requiring candidates to be Board certified or Board eligible in making physician personnel decisions since 1996. Mankin Depo. at 20. Dr. Mankin estimates that, in the past two years, Board eligible or Board certified physi-cians have made up approximately 91 percent of all physicians employed by TPI. Mankin Depo. at 22. He explained that his reason for implementing this policy was "to have the highest quality and best-trained group of physicians caring for [Defendants'] patients" that he could find. Mankin Depo. at 30.

**\*8** Plaintiff first argues that Defendants never actu-ally had any formal policy in place that required physicians to be Board certified or Board eligible. The testimony of high-ranking employees of De-fendants and a review of its internal documents does not conclusively disprove Plaintiff's assertion. Mr. Larson described the policy as "informal" and testified that Dr. Mankin had told the Board of Dir-ectors that it was his goal to have as close to 100 percent Board certified doctors as possible. Larson Depo. at 38. He further stated that he knew of "no written documents ... no written policies" that me-morialized this physician employment requirement, a statement that is uncontested by Dr. Mankin. Lar-son Depo. at 38; Mankin Depo. at 20-21. Moreover, the Temple University Hospital, Inc. Bylaws of the Professional Medical Staff detail the qualifications necessary to be a member of that organization's medical staff in some capacity. The qualifications

for physicians, podiatrists and dentists include be-ing professionally competent and licensed in the Commonwealth of Pennsylvania. Pl.'s Cross-Mot. at Ex. I, p.6. The very next sentence in the Bylaws states that "other health care practitioners must also be licensed in the Commonwealth of Pennsylvania *and/or certified by their speciality."Id.* (emphasis added). The absence of a certification requirement in the sentence describing physician qualifications, as opposed to those for other health care providers, lends credence to Plaintiff's contention that Board certification was not an objective qualification actu-ally required by Defendants.

Plaintiff's contention that the policy was an inform-al preference rather than an objective policy is bolstered by the inconsistency of Defendants' ap-plication of the Board certification/eligibility re-quirement. The record reveals that while some physicians were required to be Board certified or merely Board eligible, some were absolutely re-quired to be Board certified, while still others were apparently not required to be either. In their motion for summary judgment, Defendants state that Dr. Mankin did not require some physicians to be board certified/eligible, namely those that had an appro-priate amount of "training, experience, and the sub-stantial financial success of their private prac-tices."Defs.' Mot. at 11. One example of this prac-tice is Dr. Munoz, who remained with Defendants until his retirement in his mid-70s, and who was neither Board certified or eligible. Mankin Depo. at 26-27. In another case, Dr. Mankin communicated to Dr. Stricklan that he needed to become Board certified to remain in his position as a full-time physician, despite the fact that he was already Board eligible and therefore objectively qualified under Defendants' articulated policy.[FN4]*See* Mankin Depo. at 96. Moreover, a reasonable trier of fact could look beyond these two specific ex-amples to the fact that Defendants made exceptions to the alleged overall policy amounting to ten per-cent of their employed physicians and could ration-ally disbelieve that Defendants were even-handedly requiring that full-time physicians be Board certi-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 8
Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.))**

fied/eligible.

> FN4. It is worth noting here that Dr. Stricklan was, by Defendants' own admission, 44 years old at the time of his departure, which would place him in the protected class with Plaintiff. Defs.' Opp'n at 13.

**\*9** While the Court agrees with Defendants that not every employment policy needs to be reduced to writing to be a legitimate, non-discriminatory basis for making employment decisions, it believes that this particular policy's lack of documentation, combined with its uneven application, raises a permissible and reasonable inference that the policy was not the true reason that Plaintiff's employment with Defendants was terminated. As a reasonable trier of fact could rationally conclude that Defendants were using the Board certification policy as a pretext for impermissible discrimination, Plaintiff's ADEA and PHRA claims survive Defendant's motion for summary judgment.

The Court does not believe, however, that summary judgment is in Plaintiff's favor is appropriate on Plaintiff's ADEA and PHRA claims. While Plaintiff has met his burden of casting doubt upon Defendants' proffered reason for terminating him, the Court finds that he has not produced evidence such that no reasonable jury could find that Defendants acted with discriminatory intent as a matter of law. Because a material question of fact exists as to whether Defendants' actions constituted improper discrimination on the basis of Plaintiff's age, the Court will deny Plaintiff's cross-motion for summary judgment on his ADEA and PHRA claims.

## V. BREACH OF CONTRACT CLAIM

In Count III of the Complaint, Plaintiff alleges that Defendants' termination of him without cause and in bad faith constituted a material breach of his employment agreement, entitling him to damages therefrom. Pl.'s Compl. at ¶¶ 66-67. Defendants assert that they are entitled to summary judgment on

Plaintiff's contract claim as they notified Plaintiff of his separation from their employment in accordance with the terms of his contract and compensated him accordingly. Defs.' Mot. at 18.

Two sections of the employment contract between the parties are at issue here. Paragraph 1 states that "The effective date of this arrangement shall be January 2, 2002, and shall continue in effect for a period of one (1) year until January 1, 2003."Pl.'s Cross-Mot. at Ex. A. Paragraph 11 reads "Your part time employment shall continue for a period of one (1) year unless terminated earlier. Either party may terminate this arrangement at any time by providing a thirty (30) day notice to the other party."*Id.* The parties have conflicting interpretations as to how these two paragraphs define the term of Plaintiff's employment. These conflicting interpretations lead Plaintiff to conclude that he had a one-year employment contract with Defendants, which could only be terminated for good cause. Pl.'s Cross-Mot. at 10. For their part, Defendants characterize the contract as providing them with the ability to terminate Plaintiff without cause, so long as the thirty day notice provision is satisfied.

The Court believes that neither Defendants' nor Plaintiff's interpretation of the contract language and that interpretation's legal ramifications are entirely correct. "The presumption under Pennsylvania law is that all employment is at-will, and, therefore, an employee may be discharged for any reason or no reason."*Luteran v. Loral Fairchild Corp.,* 455 Pa.Super. 364, 688 A.2d 211, 214 (Pa.Super.1997) (citing *Scott v. Extracorporeal, Inc.,* 376 Pa.Super. 90, 545 A.2d 334 (1988)). Therefore, no cause of action lies against an employer for the termination of an at-will employee. *Id.* In order to rebut the presumption of at-will employment, a party must establish that one of the following is present: "(1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception."*Janis v.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 9
Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.))**

*AMP, Inc.,* 856 A.2d 140, 144 (Pa.Super.2004) (citing *Rapagnani v. The Judas Company,* 736 A.2d 666, 669 (Pa.Super.1999)).*See also*Luteran, 688 A.2d at 214 (citation omitted). A presumption of at-will employment applies to an employment agreement that lacks a definite term of employment. *Id* (citing *Rapagnani,* 736 A.2d at 670). If a term of employment does exist, an employer may not terminate an employee for the duration of that term in the absence of just cause. *Green v. Oliver Realty, Inc.,* 363 Pa.Super. 534, 526 A.2d 1192 (Pa.Super.1987). The party asserting that good cause is required bears the burden of showing, by a preponderance of the evidence, that the employment contract was for a definite time. *Id.* at 1196.

**\*10** The Court finds that Plaintiff's employment contract contained an agreement for a definite duration of time, overcoming the presumption of at-will employment. In *Schecter v. Watkins,* 395 A.2d 585 (Pa.Super.1990), the Superior Court of Pennsylvania examined an employment contract between a physician and a medical corporation that contained language virtually identical to that in Paragraph 11 of the instant contract. The contract in that case stated that "The term of this Agreement shall be one (1) year from the date set forth unless either party shall give ninety (90) day notice of their intention to terminate the agreement prior to the end of the term."*Id.* at 587.The Court found that the contract expressly limited the employer's ability to discharge its employees and set forth the conditions under which those employees could be terminated. In the instant case, the contract expressly provides for a one year term of employment with thirty days notice required for termination of the agreement by either party. As the Third Circuit has noted in its examination of Pennsylvania contract law, "the requirement of notice is antithetical to the very definition of employment at-will."*Carlson v. Arnot-Odgen Memorial Hospital,* 918 F.2d 411, 414 (3d Cir.1990) (citations omitted). The Court finds that there is no question of fact as to whether the contract at hand contains a definite term of employment.

Plaintiff has shown that his contract did not create an at-will employment situation; however, the Court finds that no reasonable trier of fact could conclude that Defendants are in breach of that agreement. The *Schecter* court noted that even though the contract contained a term of employment, it also expressly provided that either party could terminate the agreement without a required showing of cause. *Schecter,* 395 A.2d at 590. The Court declined to impose a good cause requirement on the contract in the face of explicit language permitting termination and setting forth procedures for that action.[FN5] As such, because the plaintiff in *Schecter* did not allege that he was not given the requisite ninety days notice, the lower court's judgment in favor of the defendant-employer was upheld. *Id.* The contract here contains the exact language of the contract in that case, though the number of days notice required is slightly different. Plaintiff was terminated on July 2, 2002 and Defendants continued to compensate him until August 24, 2002, well beyond the thirty days required by the contract. Plaintiff does not allege that the contract itself is not the result of a bargained-for exchange. As such, the Court finds that summary judgment in favor of Defendants is appropriate on the breach of contract claim.

> FN5. The Third Circuit reached a similar conclusion using an alternative analysis in *Carlson v. Arnot-Odgen Memorial Hospital,* in which the court considered a contract in which either party could terminate the employment relationship by giving the other party ninety days notice. The Third Circuit concluded that the notice provision overcame the presumption of at-will employment by creating a contract with a term of at least ninety days. The defendant-hospital's failure to provide the appropriate notice in *Carlson* resulted in its liability for a breach of a ninety day contract. *Carlson,* 918 F.2d at 414-15.

## VI. ERISA CLAIM

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 10
Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.))**

Count IV of Plaintiff's Complaint asserts that Defendants deliberately misclassified Plaintiff as a part-time employee in order to avoid paying him benefits that he was entitled to under ERISA. Pl.'s Compl. at ¶¶ 68-70. Defendants assert that summary judgment is appropriate on this claim as a matter of law, as there is no cause of action under ERISA for misclassification. Def.'s Opp'n at 18. Defendants also claim that, even if there were a cause of action under ERISA for misclassification, Plaintiff has failed to exhaust his administrative remedies. *Id.*

*11 In his complaint, Plaintiff does not mention under which section of ERISA his claim is brought. In his cross-motion for summary judgment, he cites 29 U.S.C. § 1132(a)(1)(B), which states that:

A civil action may be brought

(1) by a participant or beneficiary

...

(A) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to further benefits under the term of terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

The Court finds that Plaintiff has not come forward with any evidence that would allow his claim to survive summary judgment. Specifically, Plaintiff has not produced any evidence that (1) Defendants offered a benefits plan covered by ERISA; (2) that he was a "participant" of that plan, as defined at 29 U.S.C. § 1002, [FN6] or (3) that he exhausted his administrative remedies under that plan or that an exception to the exhaustion requirement is warranted because resort to the administrative process is futile.[FN7] *See Weldon v. Kraft, Inc.,* 896 F.2d 793, 800 (3d Cir.1990) ("Except in limited circumstances ... a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan.") (citing *Wolf v. Nat'l Shopmen Pension Fund,* 728 F.2d 182, 185

(3d Cir.1984)); *Berger v. Edgewater Steel Co.,* 911 F.2d 911, 916 (3d Cir.1990) (recognizing an exception to the exhaustion rule for futility); *Harrow v. Prudential Ins. Co. of America,* 279 F.3d 244, 249 (3d Cir.2002) (requiring a "clear and positive showing of futility."). As Plaintiff has not come forth with evidence of the most basic elements of his ERISA claim, the Court accordingly grants summary judgment to the Defendants.

> FN6. Participant is defined as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit."29 U.S.C. § 1002(2)(B)(7).

> FN7. Plaintiff's claim that he has somehow attempted to exhaust his ERISA claim by filing a claim with the EEOC that he was denied full-time benefits is insufficient to create a material issue of fact on this matter. The exhaustion requirement clearly relates to the administrative process set up by the plan itself and no other administrative process.

VII. CONCLUSION

An appropriate Order follows.

*ORDER*

AND NOW, this 22nd day of February, 2005, it is hereby ORDERED that the Motion for Summary Judgment filed by Defendants Temple Professional Associates, Temple Physicians, Inc., and Temple University Health System Inc. on August 2, 2004 (Defs.' Mot., Doc. No. 7) is GRANTED in part and DENIED in part. Defendants' Motion is GRANTED with respect to Counts III and IV and DENIED

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.))**

Page 11

with respect to Counts I and II.

It is further ORDERED that the Cross-Motion for Summary Judgment filed by Plaintiff Luis E. Nunez on August 23, 2004 (Pl.'s Cross-Mot., Doc. No. 8) is DISMISSED in part and DENIED in part. Plaintiff's Cross-Motion is DISMISSED as moot with respect to Counts III and IV and DENIED with respect to Counts I and II.

E.D.Pa.,2005.
Nunez, MD v. Temple Professional Associates
Not Reported in F.Supp.2d, 2005 WL 435238 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                                              Page 1
Slip Copy, 2008 WL 706917 (N.D.Tex.)
**(Cite as: 2008 WL 706917 (N.D.Tex.))**

**H**
Baney v. Mukasey
N.D.Tex.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Texas,Dallas Division.
John-Pierre BANEY, Plaintiff,
v.
Michael MUKASEY,[FN1] Defendant.

FN1. Effective November 9, 2007, Michael Mukasey succeeded Alberto Gonzales as the United States Attorney General. Under Rule 25(d), Fed.R.Civ.P., Michael Mukasey "is automatically substituted as a party." The clerk of the court is **directed** to change the docket sheet to reflect Michael Mukasey as Defendant.
**Civil Action No. 3:06-CV-2064-L.**

March 14, 2008.

John-Pierre Baney, Seagoville, TX, pro se.
Charles O. Dobbs, US Attorney's Office, Fort Worth, TX, for Defendants.

### ORDER

SAM A. LINDSAY, District Judge.
*1 Before the court are Defendant's Second Motion to Dismiss and Motion for Summary Judgment, filed July 2, 2007, and Plaintiff's Motion to Deny Second Motion to Dismiss and Deny Motion for Summary Judgment, filed December 5, 2007.[FN2] On January 22, 2007, the case was referred to United States Magistrate Judge Irma C. Ramirez for pretrial management, including the determination of nondispositive motions and issuance of findings of fact and recommendations for dispositive motions. On January 9, 2008, the Findings and Recommendation of the United States Magistrate Judge ("Report") was filed. Defendant filed objections to the Report on January 18, 2008.

FN2. Plaintiff filed a motion to deny, but

did not file a response to Defendant's Second Motion to Dismiss and Motion for Summary Judgment.

This is a *pro se* employment discrimination and civil rights action.[FN3] With respect to Defendant's Second Motion to Dismiss and Motion for Summary Judgment, Magistrate Judge Ramirez found that Plaintiff's pleadings were sufficient to state a claim upon which relief could be granted under the Whistleblower Protection Act and recommended that the court deny Defendant's Motion to Dismiss as to this claim. Because the No FEAR Act does not provide for a private cause of action and Plaintiff could, therefore, not set forth sufficient facts in support of this claim that would entitle him to relief, Magistrate Judge Ramirez also recommended that, pursuant to Fed.R.Civ.P. 12(b)(6), the court *sua sponte* dismiss Plaintiff's claim under the No FEAR Act with prejudice. Magistrate Judge Ramirez further found that Plaintiff's Title VII claims of falsification of government documents, placement on Absent Without Official Leave ("AWOL") status, termination of annual and sick leave, and loss of seniority in the work schedule were time barred. She recommended that the court grant Defendant's Motion for Summary Judgment as to these claims. Finally, Magistrate Judge Ramirez found that the Government had not met its burden of showing that no genuine issue of material fact existed as to Plaintiff's Title VII claim regarding the termination of his medical, dental, and life insurance benefits and recommended that the court deny Defendant's Motion for Summary judgment as to this claim.

FN3. Plaintiff's civil rights action is based on the decision of the Equal Employment Opportunity Commission ("EEOC"), which determined that he failed to establish his claim of employment discrimination. In his amended complaint, Plaintiff also alleges discrimination and retaliation based on his military status, citing the Uni-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2
Slip Copy, 2008 WL 706917 (N.D.Tex.)
(Cite as: 2008 WL 706917 (N.D.Tex.))

formed Services Employment and Reemployment Rights Act ("USERRA"), the Notification and Federal Employee Anti-discrimination and Retaliation Act of 2002 ("No FEAR Act") and Whistleblower Protection Act. After dismissing several claims and Defendants, the court stated in its order dated June 27, 2007, that only Plaintiff's Title VII claim against Michael Mukasey, his claims under the No FEAR ACT, and his claims under the Whistleblower Protection Act remained for disposition.

It appears that the magistrate judge treated the Amended Complaint as a supplement to the Original Complaint rather than a superseding pleading. Because the court determines that it is not prudent to exalt procedure over substance at this juncture, it will also treat the Amended Complaint as a supplement to the Original Complaint.

With respect to Plaintiff's Motion to Deny Second Motion to Dismiss and Deny Motion for Summary Judgment, Magistrate Judge Ramirez made several findings. First, she found that the court ruled on these arguments in its order dated June 27, 2007. Next, she found that Plaintiff had an adequate opportunity to respond to Defendant's motion and recommended that the court deny Plaintiff's request for additional time to respond to Defendant's Second Motion to Dismiss and Deny Motion for Summary Judgment. Finally, the magistrate judge found that Plaintiff had not shown exceptional circumstances warranting the appointment of counsel and recommended that the court deny such request.

The Government has made two objections to the Report. First, the Government objects to the magistrate judge's finding that Plaintiff's pleadings were sufficient to state a claim under the Whistleblower Protection Act. The Government argues for the first time in its objections that Plaintiff's claim is insufficient because he failed to exhaust his administrative

remedies as to this claim. Just as a movant cannot raise an issue for the first time in a reply, a party may not raise an issue for the first time in an objection to a magistrate judge's findings and recommendation. Because the Government did not advance this argument before the magistrate judge (in its motion, brief, supplemental brief, or at the hearing conducted by the magistrate judge), it may not advance this argument now. *Fireman's Ins. Co. of Newark, N.J. v. Todesca Equip. Co.,* 310 F.3d 32, 38 (1st Cir.2002); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996); *Chisolm v. Headley,* 58 F.Supp.2d 281, 284 n. 2 (S.D.N.Y.1999) (citing *Harris v. Pulley,* 885 F.2d 1354 (9th Cir.1988); *Aikens v. Shalala,* 956 F.Supp. 14, 19 (D.D.C.1997) (citing *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988). Accordingly, the court **overrules** this objection.

**\*2** Second, the Government objects to the magistrate judge's findings that denial of insurance benefits constitutes an adverse employment action and that the Government had not met his burden of showing that no genuine issue of material fact existed as to Plaintiff's allegation of racial discrimination in the termination of his insurance benefits. As the magistrate judge correctly noted, the Government's attack on Plaintiff's claim was extremely narrow and read: "Plaintiff has failed to assert that any of the alleged discriminatory actions affected his employment status or otherwise altered the conditions of his workplace."Def.'s 2d Mot. 11. The Government now argues that it presented evidence that Plaintiff's health and dental benefits were never terminated and that his life insurance benefits terminated by operation of law because his leave-without-pay status exceeded 365 days. These arguments fail on two grounds. First, the arguments were not advanced before the magistrate judge and may not be advanced now. Second, the evidence that the Government purports to have "presented" was included in a 137-page appendix to its motion with no specific references to such evidence. The court has no duty to sift through the record in search of support for arguments that have not been

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

advanced.FN4Accordingly, the court also **over-rules** this objection.

> FN4. Moreover, one of the exhibits to which the Government refers the court, Exhibit 13, is not included in the appendix.

Having reviewed the magistrate judge's Report, the motions, briefs, record, and applicable law, the court determines that the findings and conclusions are correct. The magistrate judge's findings and conclusions are therefore **accepted** as those of the court. Accordingly, the court **grants** Defendant's Second Motion to Dismiss and Motion for Summary Judgment as to Plaintiff's No FEAR Act claim and all of Plaintiff's Title VII claims, except his allegation of racial discrimination in the termination of his insurance benefits, and **dismisses** these claims with prejudice. The court **denies** Defendant's Second Motion to Dismiss and Motion for Summary Judgment as to Plaintiff's Whistleblower Protection Act claim and Plaintiff's Title VII allegation that his insurance benefits were terminated. The court also **denies** Plaintiff's Motion to Deny Second Motion to Dismiss and Deny Motion for Summary Judgment and all relief therein requested.

**It is so ordered.**

### FINDINGS, CONCLUSIONS, AND RECOM-MENDATIONS

IRMA CARRILLO RAMIREZ, United States Magistrate Judge.
Pursuant to the District Court's *Standing Order of Reference,* filed January 22, 2007, this case was referred to this Court for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions. Before the Court are the following:

(1) *Defendant's Second Motion to Dismiss and Motion for Summary Judgment* ("Mot."), filed July 2, 2007;

(2) *Defendant's Supplemental Brief* ("Def.Supp.Br."), filed November 13, 2007;

**\*3** (3) Plaintiff's *Supplemental Briefing of the Response to a Motion for Summary Judgment* ("Pl.Supp.Br."), filed November 14, 2007;

(4) Plaintiff's *Additional Evidence* ("Pl.App."), filed November 14, 2007;

(5) *Defendant's Reply to Plaintiff's Submission of Additional Evidence* ("Reply"), filed November 26, 2007; and

(6) Plaintiff's *Motion to Deny Second Motion to Dismiss and Deny Motion for Summary Judgment,* filed December 5, 2007.

Having reviewed the pertinent filings above and the law applicable to the issues raised, the Court finds that *Defendant's Second Motion to Dismiss and Motion for Summary Judgment* should be **GRANTED** in part, and **DENIED** in part, and Plaintiff's *Motion to Deny Second Motion to Dismiss and Deny Motion for Summary Judgment* should be **DENIED.**Plaintiff's requests for additional time and for appointment of counsel, included in his motion, are hereby **DENIED.**

### I. BACKGROUND

John-Pierre Baney ("Plaintiff") is currently, and has been at all times relevant to his complaint, employed as a Cook Supervisor at the Federal Correctional Institution in Seagoville, Texas ("FCI Seagoville"). On September 17, 2001, Plaintiff was called up for active duty in the Coast Guard following the events of September 11, 2001. *Complaint, Baney v. Gonzales,* 3:06-CV-2064-L, at 3 (N.D. Tex. filed Nov. 8, 2006) (hereinafter, "Compl."). During this time, Plaintiff was in occasional contact with Jerry Heftler, his supervisor at FCI Seagoville, and with Johanna Lynne Rhodes, the administrative assistant for the food services department at FCI Seagoville. (*See e.g.,* Pl.App. at Ex. 58, p. 24; Pl.App. at Ex. 59, p. 26). Plaintiff remained on act-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 706917 (N.D.Tex.)
**(Cite as: 2008 WL 706917 (N.D.Tex.))**

ive duty at the Coast Guard base in Galveston, Texas, through September 30, 2002. (Mot. at Ex. 12, p. 1). From October 1 through December 20, 2002, Plaintiff alternated between active and inactive duty training. On December 20, 2002, Plaintiff was demobilized from the Coast Guard and returned to his regular work at FCI Seagoville. (Mot. at Ex. 12, p. 1-2). While away from FCI Seagoville, Plaintiff alleges that the agency's personnel department discriminated against him based on his race (Caucasian).[FN1]

> FN1. The EEOC appeal identifies Plaintiff's race as African-American. (Compl. at 4).

Plaintiff contacted his Equal Employment Opportunity ("EEO") counselor on January 17, 2003, and filed a formal complaint of discrimination on February 18, 2003. (Mot. at Ex. 16, p. 2). His EEO complaint alleges that he was discriminated against on the basis of race when: (1) he was accused of falsifying government documents on or about October 1, 2002; (2) he was placed on Absent Without Leave (AWOL) status on or about November 1, 2002; (3) his medical, dental, and life insurance benefits were stopped or removed in December 2002 and January 2003; (4) his annual leave was taken back on October 1, 2002, and his sick leave was stopped on November 1, 2002; and (5) his seniority in the work schedule was removed. (Compl. at 4). At the conclusion of the investigation, Plaintiff timely requested a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Judge. *Id.* The EEOC Administrative Judge assigned to the case determined *sua sponte* that the complaint did not warrant a hearing, and over Plaintiff's objections, issued a decision on May 12, 2005, finding that Plaintiff failed to prove he was subjected to the alleged discrimination. (*Id.* at 3-4). The agency issued a final order adopting the administrative judge's finding on July 8, 2005. *Id.*

*4 Plaintiff appealed the agency's decision on July 29, 2005. (*Id* . at 3). He restated his allegations of discrimination on the basis of race and argued that

he was wrongfully denied a hearing. (*Id.* at 4). On August 9, 2006, the Commission agreed with the administrative judge's finding for the agency without a hearing and affirmed the agency's decision. (*Id.* at 3-9).

On November 8, 2006, Plaintiff filed the instant action *pro se.* His complaint states in part, "Criminal and Civil Rights Violation" and attaches the EEOC's August 9, 2006 decision. The Court construes Plaintiff's complaint to be an appeal of the EEOC decision. Plaintiff also alleges discrimination and retaliation because of his military status and cites the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). On November 20, 2006, Plaintiff filed an amended complaint adding "No FEAR Act (anti-discrimination and retaliation)" and "Whistleblower Act" to the causes of action asserted in his initial complaint. *Amended Complaint, Baney v. Gonzales,* 3:06-CV-2064-L, at 2 (N.D. Tex. filed Nov. 20, 2006) (hereinafter, "Amend.Compl.")

On June 27, 2007, the District Court accepted a recommendation to dismiss Plaintiff's USERRA claims pursuant to Rule 12(b)(1) and to dismiss Plaintiff's Title VII claims against all defendants except Attorney General Alberto Gonzalez ("Defendant") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[FN2] *Baney v. Gonzales,* 2007 WL 1944462, at *8 (N.D.Tex. June 27, 2007). On July 2, 2007, Defendant filed the instant motion seeking dismissal of Plaintiff's Whistleblower and No Fear claims under Rule 12(b) and summary judgment on the Title VII claim against Attorney General Gonzalez. Plaintiff did not file a response to the motion. This Court held a hearing on November 6, 2007, to clarify the bases of Defendant's motion. The parties submitted supplemental briefs and evidence after the hearing, and the motion is now fully ripe for determination.

> FN2. Because Defendant did not initially move for dismissal of Plaintiff's claims under the Whistleblower or No FEAR Acts,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2008 WL 706917 (N.D.Tex.)
**(Cite as: 2008 WL 706917 (N.D.Tex.))**

these claims remained pending. *Baney,* 2007 WL 1944462, at *1 n. 2.

## II. MOTION TO DISMISS

Defendant initially moved for dismissal of Plaintiff's Whistleblower Protection Act ("WPA") and No Fear Act claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. (Mot. at 6-8). At the November 6, 2007 hearing and in his supplemental brief, Defendant urged this Court to convert *sua sponte* his Rule 12(b)(1) motions to Rule 12(b)(6) motions for failure to state a claim. (Def. Supp. Br. at 2-3).

### A. *Conversion of Rule 12(b)(1) Motion*

Inherent in the power to manage its own docket, a court can consider the sufficiency of a complaint on its own initiative and dismiss a complaint *sua sponte* for failure to state a claim. *Carroll v. Fort James Corp.,* 470 F.3d 1171, 1177 (5th Cir.2006); *Guthrie v. Tifco Indus.,* 941 F.2d 374, 379 (5th Cir.1991) (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, § 1357, at 301 (1990)). The district court can only dismiss a complaint if the procedure employed is fair, which requires both notice of the court's intention and the opportunity to respond. *Carroll,* 470 F.3d at 1177 (citing *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir.1998)). Where the inadequacy of the complaint is apparent as a matter of law, the court may properly dismiss a claim on its own initiative pursuant to Rule 12(b)(6). *Hernandez v. Duncanville School Dist.,* 2005 WL 723458, at *8 n. 15 (N.D.Tex. Mar.29, 2005) (Ramirez, Mag.) (citing *Vines v. City of Dallas, Tex.,* 851 F.Supp. 254, 260 (N.D.Tex.1994)).

**\*5** The instant motion to dismiss provides Plaintiff with notice of the alleged deficiency of his pleadings under the WPA and No Fear Act. The Court also notified Plaintiff at the November 6, 2007 hearing that it was considering a *sua sponte* conversion of Defendant's motion under 12(b)(1) to a Rule 12(b)(6) motion. Despite sufficient notice and the opportunity to respond, Plaintiff has not addressed the deficiencies in either his WPA or No Fear Act claims, nor has he shown why Defendant's Rule 12(b)(1) motion should not be converted to a Rule 12(b)(6) motion. The Court therefore finds that the procedure employed was fair and hereby converts Defendant's Rule 12(b)(1) motion to dismiss to a motion made pursuant to Rule 12(b)(6). *Carroll,* 470 F.3d at 1177.

### B. *Rule 12(b)(6) Standard*

Motions to dismiss under FED. R. CIV. P. 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman,* 646 F.2d 991, 993 (5th Cir.1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996); *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir.1999), *cert. denied,* 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000). It is well-established that *"pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore,* 636 F.2d 986, 988 (5th Cir.1981). However, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-plead facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992). The court must accept those well-plead facts as true and view them in the light most favorable to the plaintiff. *Baker,* 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly,* ---U.S. ----, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (citation omitted).FN3 Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The alleged facts must "raise a right to relief above the speculative level." *Id.* In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2008 WL 706917 (N.D.Tex.)
**(Cite as: 2008 WL 706917 (N.D.Tex.))**

to state a claim to relief that is plausible on its face."*Id.* at 1974.

> FN3. Although the context of the discussion in *Bell Atlantic* was the Sherman Act, nothing in the reasoning of the decision appears to limit its scope to Sherman Act claims. *Halaris v. Viacom, Inc.,* 2007 WL 4145405, at *4 (N.D.Tex. Sept.21, 2007) (Godbey, J.).

### C. *Whistleblower Protection Act*

Plaintiff identified the WPA in his amended complaint as a basis for his claims of discrimination and retaliation. (Amend. Compl. at 2). The WPA prohibits governmental agencies from taking adverse personnel actions against employees or applicants for employment because the employee or applicant disclosed information reasonably believed to evidence a violation of the law or a gross mismanagement of funds. 5 U.S.C. § 2302(b)(8). An aggrieved employee or applicant may seek corrective action from the Merit Systems Protection Board ("MSPB") as provided for in the Civil Service Reform Act ("CSRA").5 U.S.C. § 1221(a). The MSPB shall order corrective action if the employee or applicant has demonstrated that the disclosure was a contributing factor in the personnel decision with evidence that "the official taking the personnel action knew of the disclosure" and "the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action."5 U.S.C. § 1221(e). An employee or applicant adversely affected may appeal the decision of the MSPB; only after the MSPB has issued a final order or decision may the applicant or employee obtain judicial review. 5 U.S.C. § 1221(h)(1).

*6 In the instant case, Plaintiff alleges that he was discriminated against on the basis of race between October 1, 2002, and January 2003. (*See* Compl. at 4). Defendant contends that the WPA claim should be dismissed for failure to state a claim because the exclusive remedial scheme of the WPA requires

claims to proceed through the MSPB. (Mot. at 7). The sole case cited by Defendant in support of his motion to dismiss, *Grisham v. U.S.,* is inapposite to the instant case. (Mot. at 7) (citing 103 F.3d 24, 26-27 (5th Cir.1997)). In *Grisham,* the Fifth Circuit dismissed the claimant's WPA claims because they were brought in conjunction with the Federal Tort Claims Act, which is precluded by the CSRA. *Grisham,* 103 F.3d at 27 (citing *Rivera v. United States,* 924 F.2d 948, 954 (9th Cir.1991)).*Grisham* did not address WPA claims brought in conjunction with Title VII claims, and the case therefore does not support Defendant's contention that Plaintiff's WPA claims are precluded by the CSRA. Moreover, a review of the statutory language pertaining to the MSPB clearly provides for judicial review of WPA claims brought in conjunction with Title VII claims. 5 U.S.C. § 1221(h)(1); 5 U.S.C. § 7703(b)(2);

Although Plaintiff's three word WPA allegation in the amended complaint provides no explanation for how the claim relates to the appeal of his EEO decision, Plaintiff clearly asserts his WPA claim along with his Title VII claims. (*See* Amend. Compl. at 2). Under the Rule 12(b)(6) standard, the Court may not look beyond the face of the pleadings.[FN4]*Baker,* 75 F.3d at 196. Thus, when the Court views Plaintiff's WPA allegation in the light most favorable to him, his pleadings contain "enough facts to state a claim to relief that is plausible on its face."*Bell Atl.,* 127 S.Ct. at 1974. For this reason, the Court recommends that Defendant's motion to dismiss Plaintiff's WPA claim be **DENIED.**

> FN4. Because Defendant did not move for summary judgment on Plaintiff's WPA claim, (*see* Mot.), the Court cannot examine the record for evidence of exhaustion or when the allegedly unlawful personnel actions that resulted in Plaintiff's WPA claim took place in relation to his Title VII claims.

### D. *No Fear Act*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 706917 (N.D.Tex.)
**(Cite as: 2008 WL 706917 (N.D.Tex.))**

Plaintiff identified the No Fear Act in his amended complaint as a basis for his claims of discrimination and retaliation. (Amend. Compl. at 2). The Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 ("No Fear Act"), Pub.L. No. 107-174, went into effect October 1, 2003. 5 U.S.C. § 2301, *et seq.* The Act includes provisions which require agencies to reimburse the Judgment Fund of the Department of Justice in cases in which there is a settlement or an award in an employment discrimination case.*O'Brien v. Johanns,* 2007 WL 1443674, at *3 n. 7 (E.D.Ark. May 15, 2007). The Act also requires agencies to discipline employees who are responsible management officials in cases in which there has been a finding of discrimination. *Id.* Of the few courts that have considered claims made under the No Fear Act, none have found that the Act provides a private cause of action or creates a substantive right for which the government must pay damages. *Glaude v. U.S.,* 2007 WL 2682957, at *2 (Fed.Cir. Sept.7, 2007); *Pedicini v. U.S.,* 480 F.Supp.2d 438, 459 (D.Mass.2007); *Mills v. Barreto,* 2004 WL 3335448, at *3 (E.D.Va. Mar.8, 2004).

*7 Plaintiff does not provide any support for the proposition that the No Fear Act provides for a private cause of action. Although Plaintiff is *pro se,* he still must plead minimal factual allegations on those material elements that must be proved in order to withstand dismissal for failure to state a claim.*Williams v. Milligan,* 2006 WL 1867327, at *4 (N.D.Tex. July 6, 2006) (Lynn, J.) (citing *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991)). After reviewing the relevant case law, this Court agrees with the other courts that have considered the issue and finds that the No Fear Act does not provide a private cause of action or create a substantive right for which the government must pay damages. *See Glaude,* 2007 WL 2682957, at *2;*Pedicini,* 480 F.Supp.2d at 459;*Mills,* 2004 WL 3335448, at *3. Since the No Fear Act does not provide for a private cause of action, it is apparent that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Jones,*

188 F.3d at 324. The Court therefore recommends that Plaintiff's No Fear Act claim be **DISMISSED** with prejudice *sua sponte* pursuant to Rule 12(b) (6).*Guthrie,* 941 F.2d at 379;*see Carroll,* 470 F.3d at 1177 (finding reversible error in district court's *sua sponte* dismissal because parties did not have notice or an opportunity to be heard); *see also Bazrowx,* 136 F.3d at 1054-55 (*sua sponte* dismissal without prejudice was not error even though plaintiff was not given notice or an opportunity to respond) (citing *Moawad v. Childs,* 673 F.2d 850, 851-52 (5th Cir.1982)).

## III. MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on Plaintiff's Title VII claims because they are either time barred or fail to state a claim upon which relief can be granted.FN5(Mot. Br. at 8-12).

> FN5. Although a time bar and failure to state a claim are ordinarily raised as in a Rule 12(b)(6) motion to dismiss, Defendant clarified at the November 6, 2007 hearing that he moved for summary judgment of Plaintiff's Title VII claims pursuant to Rule 56. *See*FED. R. CIV. PROC. 12(b)(6); *Gates v. City of Dallas,* 1997 WL 405144 (N.D.Tex. July 15, 1997).

### A. *Standard of Review*

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)."[T]he substantive law will identify which facts are material."*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."*Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

identifying the portions of the record which reveal there are no genuine material fact issues.*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson,* 477 U.S. at 249.

**\*8** While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322-23.

**B. *Claims 1, 2, 4 and 5***

Defendant contends that summary judgment is appropriate on Plaintiff's Title VII claims 1, 2, 4 and 5 because they are time barred. (Mot. Br. at 8-12).

Title VII of the Civil Rights Act prohibits discrim-

ination against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."42 U.S.C. § 2000e-2. Federal regulations require an aggrieved federal employee to contact a counselor within 45 calendar days of the alleged discriminatory action, or, in the case of a personnel action, within 45 calendar days of the effective date of the action, before they may file a formal administrative charge with their agency's Equal Opportunity Office. *See*42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.105. Failure to notify the EEO counselor within this time period constitutes a failure to exhaust administrative remedies and acts as a time bar to judicial pursuit of those claims. *See Pacheco v. Mineta,* 448 F.3d 783, 791, n. 11 (5th Cir.2006); *see Swanson v. Perry,* 2003 WL 21356036, at \*1 (5th Cir.2003). The time bar must be construed liberally to aid the unsophisticated *pro se* claimant but must still be exacting enough to preserve Congress's goal of voluntary compliance.*Gordon v. Peters,* 489 F.Supp.2d 729, 732 (S.D.Tex.2007) (citing *Pacheco,* 448 F.3d at 788;*Fine v. GAF Chem. Corp.,* 995 F.2d 576, 578 (5th Cir.1993)).

In the instant case, Defendant argues that claims 1, 2, 4, and 5 are time barred because claims 1, 2, and 4 fell outside the 45-day period in which an employee must contact an EEO counselor and because Plaintiff failed to state when claim 5 occurred. (Mot. Br. at 8; *see Complaint,* at 4). Plaintiff's initial contact with his EEO counselor occurred on January 17, 2003. (Mot. at Ex. 16, p. 2). Thus, for Plaintiff's complaint of discrimination to be timely, the allegedly discriminatory conduct must have occurred no earlier than December 3, 2002; any allegedly discriminatory conduct occurring before this date would be time barred. *See*42 U.S.C. § 2000e-16. Based upon the statutory regulations and a strict application of 45 days from the date of initial contact, Defendant has shown that claims 1, 2, and 4 are 63, 31, and 32 days late, respectively. *Pacheco,* 448 F.3d at 791, n. 11;*Celotex,* 477 U.S. at 323. Additionally, Defendant has identified

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff's failure to state the date on which claim 5 occurred. *See Keeley v. Cisco Sys.,* 2003 WL 21919771, *3 (N.D.Tex. Aug.8, 2003) (Fitzwater, J.) (a defendant can meet its summary judgment obligation by pointing the court to the absence of evidence to support a required element of a plaintiff's case).

**\*9** The burden now shifts to Plaintiff to show that claims 1, 2, 4, and 5 are timely. *Celotex,* 477 U.S. at 324. Plaintiff does not address Defendant's timeliness argument; he did not file a response, and his supplemental brief merely restates the dates of the allegedly discriminatory acts and makes a conclusory assertion that he did not fail to exhaust administrative remedies. (*See* Pl. Supp. Br. at 2-3). The Court is mindful that it must liberally construe the time bar requirement for unsophisticated *pro se* litigants. *See Gordon,* 489 F.Supp.2d at 732. Under federal regulations governing Title VII complaints by federal employees, Plaintiff is entitled to an extension of the 45-day period if he can show he was not notified of the time limits and was not otherwise aware of them; he did not know and reasonably should not have known when the discriminatory matter occurred; or despite due diligence he was prevented by circumstances beyond his control from contacting the counselor within the time limits. 29 C.F.R. § 1614.105(a)(2); *Pacheco v. Rice,* 966 F.2d 904, 906 (5th Cir.1992) (the 45-day time limit for EEO complaints is subject to the traditional equitable defenses of waiver, estoppel, and tolling). Plaintiff has not brought forth any evidence to show that any of these exceptions to the 45-day period apply to his situation. *Wilson v. Sec'y, Dept. of Veterans Affairs,* 65 F.3d 402, 404 (5th Cir.1995) (plaintiff bears the burden of showing equitable tolling is justified in a particular case). The record reflects that he was aware of the confusion regarding his paperwork while he was in Galveston, and he was in contact with his supervisor and time keeper via cell phone prior to returning to work. (Mot. Ex. 12; Pl.App. at Ex. 58, p. 24; Pl.App. at Ex. 59, p. 26). Moreover, Plaintiff has not shown that he was unable to file his complaint

while he was in Galveston. The Court therefore finds that Plaintiff is not entitled to an extension of the 45-day period. *Davis v. Johnson,* 158 F.3d 806, 811 811 (5th Cir.1998) (equitable tolling applies only in rare and exceptional circumstances).

For the foregoing reasons, the Court finds that even under a liberal construction of the events in question, Defendant has shown there is no genuine issue of material fact that claims 1, 2, 4, and 5 are time barred because Plaintiff did not file his EEO complaint within 45 days of the allegedly discriminatory incidents. *Pacheco,* 448 F.3d at 788. Accordingly, Defendant's motion for summary judgment on claims 1, 2, 4, and 5 should be **GRANTED.**

## C. *Claim 3*

The Court next considers Plaintiff's Title VII claim 3, in which he alleges that sometime between December 2002 and January 2003 his medical, dental, and life insurance benefits were stopped or removed for racially discriminatory reasons. (Compl. at 4). Defendant asserts that Plaintiff failed to state a claim under which relief can be granted because he fails to allege an element of a *prima facie* case of discrimination, i.e., an adverse employment action. (Mot. at 11).

### 1. Title VII Framework

**\*10** Claims for racial discrimination in the employment context are analyzed under Title VII's well established burden-shifting paradigm. "First, the plaintiff must establish by a preponderance of the evidence a *prima facie* case of discrimination."*Nichols v. Lewis Grocer,* 138 F.3d 563, 566 (5th Cir.1998). A plaintiff may establish a *prima facie* case of racial discrimination through either direct evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).*See Urbano v. Continental Airlines, Inc.,* 138 F.3d 204, 206 (5th Cir.1998). Under the framework set forth in *Mc-*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Donnell Douglas,* a plaintiff must show that he (1) belongs to a protected group; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by or was treated less favorably than a similarly qualified individual outside the protected class. *See McDonnell Douglas,* 411 U.S. at 802.

A defendant can meet its summary judgment obligation by pointing the court to the absence of evidence to support a required element of a plaintiff's case. *See Keeley,* 2003 WL 21919771, *3 (noting that although the defendant did not explicitly argue that plaintiff had failed to establish a *prima facie* case, the defendant had satisfied its summary judgment burden by pointing to the absence of evidence to support one prong of the *prima facie* case) (citing *Celotex Corp.,* 477 U.S. at 325). This is because the defendant will not have the burden at trial concerning the elements of the plaintiff's *prima facie* case. *Id.*

If, however, the plaintiff establishes a *prima facie* case, an "inference of intentional discrimination" arises. *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir.1996). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Okoye v. Univ. of Texas Houston Health Science Ctr.,* 245 F.3d 507, 512 (5th Cir.2001) (citing *Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Once the defendant has met its burden of production and responded with a legitimate, non-discriminatory reason for the employment action,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 341 (5th Cir.2005) (citing *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir.2004)). Under the pretext alternative, the plaintiff must introduce "some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason."*Nichols,* 138 F.3d at 566. Under the mixed-motive alternative, a plaintiff need only present sufficient evidence for a reasonable jury to conclude that the protected characteristic was a motivating factor for the employment practice; direct evidence is not needed. *Desert Palace,* 539 U.S. at 101. However, "[t]he question of pretext versus mixed-motive treatment is only reached after a plaintiff has met his *prima facie* showing under the modified *McDonnell Douglas* standard and the defendant has responded with a legitimate nondiscriminatory reason."*Keelan,* 407 F.3d at 341.

**2. Adverse Employment Action**

*11 The Fifth Circuit has a strict interpretation of the "adverse employment action" element of the *prima facie* case for discrimination under Title VII. *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 282 (5th Cir.2004). An adverse employment action must be an "ultimate employment decision" such as hiring, firing, promoting, demoting, compensating, and granting leave. *Id.; see also Dollis,* 77 F.3d at 781-782 (stating that "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.")."An employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action for purposes of Title VII."*Pegram,* 361 F.3d at 282 (quoting *Banks v. East Baton Rouge Parish Sch. Bd.,* 320 F.3d 570, 575 (5th Cir.2003)).

Defendant's sole basis for summary judgment on claim 3 is that Plaintiff cannot show the third prong of the *McDonnell Douglas* test, that he suffered an adverse employment action. (Mot. at 11-12). De-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2008 WL 706917 (N.D.Tex.)
**(Cite as: 2008 WL 706917 (N.D.Tex.))**

fendant contends that the suspension of medical, dental, and life insurance benefits does not constitute an adverse employment action, but provides no case law to support this assertion. (*See* Mot. at 11; Def. Supp. Br.; Reply at 7-8.). Instead, Defendant cites to *Burlington Northern and Santa Fe Ry. v. White* for the proposition that "the anti-discrimination provision of Title VII explicitly limits its application to actions that affect employment status or alter conditions of the workplace."(Mot. at 11) (citing 548 U.S. 53, 126 S.Ct. 2405, 2411-12, 165 L.Ed.2d 345 (2006)).

A more complete reading of the portion cited to by Defendant includes the statutory language of Title VII's anti-discrimination provision, which makes it unlawful for an employer

> (1) *to fail or refuse to hire or to discharge* any individual, or otherwise to discriminate against any individual *with respect to his compensation, terms, conditions, or privileges of employment,* because of such individual's race, color, religion, sex, or national origin; or

> (2) to limit, segregate, or classify his employees or applicants for employment in any way *which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee,* because of such individual's race, color, religion, sex, or national origin.

*Burlington Northern,* 126 S.Ct. at 2411 (citing 42 U.S.C. § 2000e-2(a)) (emphasis in the original). The Supreme Court found that "[t]he underscored words in the substantive provision-'hire, 'discharge,' 'compensation, terms, conditions, or privileges of employment,' 'employment opportunities,' and 'status as an employee'-explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace."*Id.* at 2411-12.However, this language does not address whether insurance benefits are "terms, conditions, or privileges of employment," and Defendant does explain how cessation of these

benefits, even if temporary, did not adversely affect as a matter of law Plaintiff's status as an employee.

**\*12** Defendant cites two additional cases in his reply, but neither supports the proposition that the cessation of insurance benefits does not constitute an adverse employment action for Title VII purposes. The first case cited by Defendant, *Willis v. Coca Cola Enters., Inc.,* affirmed the district court's grant of summary judgment because the plaintiff failed to adduce evidence that the defendant's legitimate, non-discriminatory reason was pretextual. (Reply at 7) (citing 445 F.3d 413, 420 (5th Cir.2006)).*Willis* did not address the showing of a *prima facie* case of discrimination, which is the issue in the instant case. *Willis* never discussed what constitutes an adverse employment action, and the parenthetical supplied by Defendant is wholly unsupported by the case.

The second case cited by Defendant, *Pryor v. Wolfe,* is of limited precedential value; moreover, it actually *supports* the notion that the temporary cessation of insurance benefits constitutes an adverse employment action. (Reply at 7) (citing 196 Fed. Appx. 260, 262-63 (5th Cir.2006)). In *Pryor,* the Fifth Circuit reversed and remanded the district court's dismissal of plaintiff's retaliation claim because it found that temporarily withholding a paycheck met both the "materially adverse" standard applicable to retaliation claims after *Burlington Northern*[FN6] and the previously applicable and more stringent "ultimate employment decision" standard that still applies to discrimination claims. *Pryor,* 196 Fed. Appx. at 263. Although not precedential, *Pryor* therefore suggests that the temporary cessation of insurance benefits would constitute an adverse employment action under Title VII's anti-discrimination provision. *See also E.E.O.C. v. Dunbar Diagnostic Servs., Inc.,* 92 Fed. Appx. 83, 84 (5th Cir.2004) (non-precedential decision finding that denial of insurance benefits is an adverse employment action).

> FN6.*Burlington Northern* changed the standard for "adverse employment actions"

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in retaliation claims, but it did not change the standard for discrimination claims. *McCoy v. City of Shreveport,* 492 F.3d 551, 559-60 (5th Cir.2007); *Dixon v. Moore Wallace, Inc.,* 2006 WL 1949501, at *8 n. 13 (N.D.Tex. July 13, 2006) (Fitzwater, J.).

Finally, the statutory language of Title VII's anti-discrimination provision indicates that insurance benefits are a term, condition, or privilege of employment and that their cessation, even if temporary, would adversely affect Plaintiff's status as an employee. *See* 42 U.S.C. § 2000e-2(a). The few courts that have expressly addressed this issue found that the denial or temporary cessation of insurance benefits is either an adverse employment action as a matter of law or, at the very least, a question of fact. *See Gill v. North Greene Unit School Dist. No. 3,* 2007 WL 4293500, at *8 (C.D.Ill.Dec.5, 2007) (finding that whether the school district's cessation of health insurance benefit payments while employee was on temporary leave was an adverse employment action was an issue of fact); *Lewis v. K2 Indus. Servs., Inc.,* 2007 WL 3442189, at *6 (M.D.Ala. Nov.14, 2007) (plaintiff established a *prima facie* case because denial of insurance benefits is an adverse employment action).

In sum, Defendant's narrow attack on claim 3 of Plaintiff's complaint fails to show that the suspension of health, dental, and life insurance benefits is not an adverse employment action. Since Defendant does not move for summary judgment on any other grounds,[FN7] the Court finds that Defendant has not met his burden to show that no genuine issue of material fact remains for trial regarding Plaintiff's allegation of racial discrimination in the suspension of his insurance benefits. *Celotex,* 477 U.S. at 323. Defendant's motion for summary judgment for claim 3 should therefore be **DENIED.**

> FN7. Defendant did not address the fourth prong of a *prima facie* case (less favorable treatment than a similarly qualified indi-

vidual outside the protected class), nor did he proffer a legitimate, non-discriminatory reason for the challenged employment action. *See McDonnell Douglas,* 411 U.S. at 802; *Okoye,* 245 F.3d at 512.

## IV. PLAINTIFF'S MOTION TO DENY SECOND MOTIONS

**\*13** Plaintiff's *Motion to Deny Second Motion to Dismiss and Deny Motion for Summary Judgment* argues that (1) the discrimination claims against the individual defendants should not be dismissed as a matter of law, (2) the Court has jurisdiction over his Title VII claims because he did not fail to exhaust administrative remedies, and (3) the Court has jurisdiction to hear his USERRA Claims. These claims are not at issue in the instant motion, but rather, were the subject of Defendant's first motion to dismiss. The District Court ruled on these claims when it accepted the findings and recommendation dated May 24, 2007, without objection. To the extent that Plaintiff's motion seeks reconsideration of the District Court's previous ruling on these claims, the motion should be **DENIED** for the same reasons set forth in the May 24, 2007 findings and recommendation.

Plaintiff's motion further seeks additional time to file a response to Defendant's supplemental brief. Plaintiff has had ample opportunity to respond to the motion to dismiss and motion for summary judgment by filing a response as permitted by the local rules (which he did not do), by presenting argument at the November 6, 2007 hearing, and by filing a supplemental brief and appendix based on the order of the Court. Accordingly, the motion for additional time to respond to the supplemental briefing is **DENIED.**

Finally, Plaintiff also seeks appointment of counsel by this motion, and this request is also **DENIED.** Plaintiff has not shown "exceptional circumstances" warranting the appointment of counsel. *See Ulmer v. Chancellor,* 691 F.2d 209, 212 (5th Cir.1982); *Cooper v. Sheriff, Lubbock County,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                   Page 13
Slip Copy, 2008 WL 706917 (N.D.Tex.)
(Cite as: 2008 WL 706917 (N.D.Tex.))

*Tex.,* 929 F.2d 1078, 1084 (5th Cir.1991).

## V. CONCLUSION

For the reasons stated above, the Court recommends that *Defendant's Second Motion to Dismiss and Motion for Summary Judgment* be **GRANTED** in part and **DENIED** in part.

(1) Defendant's *Second Motion to Dismiss* should be **DENIED** for Plaintiff's Whistleblower Protection Act claim.

(2) Plaintiff's claims relating to the No Fear Act should be **DISMISSED** with prejudice *sua sponte* pursuant to Rule 12(b) (6).

(3) Defendant's *Motion for Summary Judgment* should be **GRANTED** as to Plaintiff's Title VII claims of falsification of government documents, AWOL status, annual leave and sick leave, and seniority in work schedule (claims 1, 2, 4, and 5). These claims should be dismissed, with preju- dice.

(4) Defendant's *Motion for Summary Judgment* should be **DENIED** as to Plaintiff's Title VII claim regarding the suspension of medical, dental, and life insurance benefits (claim 3).

The Court further recommends that Plaintiff's *Motion to Deny Second Motion to Dismiss and Deny Motion for Summary Judgment* be **DENIED.**Plaintiff's requests for additional time and for appointment of counsel, included therein, are hereby **DENIED.**

**SO RECOMMENDED** on this 9th day of January, 2008.

N.D.Tex.,2008.
Baney v. Mukasey
Slip Copy, 2008 WL 706917 (N.D.Tex.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                   Page 1
Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.))**

Timothy v. Our Lady of Mercy Medical Center
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Angella TIMOTHY, Plaintiff,
v.
OUR LADY OF MERCY MEDICAL CENTER
and Our Lady of Mercy Healthcare System, INC.,
Defendants.
No. 03 Civ. 3556(RCC).

March 12, 2004.

**Background:** Employee sued health care company
and medical center, asserting claims for employ-
ment discrimination, retaliation, and constructive
discharge under federal, state, and local laws. Com-
pany and center moved to dismiss in part.

**Holdings:** The District Court, Casey, J., held that:
(1) complaint sufficiently alleged that health care
company was employer and that its acts constituted
discrimination, retaliation, and constructive dis-
charge;
(2) Title VII claims based on alleged discriminatory
acts which occurred more than 300 days before em-
ployee filed complaint with Equal Employment Op-
portunity Commission (EEOC) were time-barred;
(3) allegations supported adverse employment ac-
tion element of retaliation claim; and
(4) allegations supported constructive discharge
claim.

Motion granted in part and denied in part.

West Headnotes

**[1] Civil Rights 78 ⟨⟩1532**

78 Civil Rights
    78IV Remedies Under Federal Employment Dis-
crimination Statutes
        78k1532 k. Pleading. Most Cited Cases

**Health 198H ⟨⟩266**

198H Health
    198HI Regulation in General
        198HI(C) Institutions and Facilities
            198Hk259 Officers and Employees
                198Hk266 k. Adverse Employment
Action; Wrongful Discharge. Most Cited Cases
Employee's complaint, which referred to both
health care company and medical center in its intro-
ductory paragraph with single acronym, such that
factual allegations throughout complaint referred to
both entities, sufficiently alleged that health care
company was her employer and that its acts consti-
tuted discrimination, retaliation, and constructive
discharge, precluding dismissal of claims against
company on grounds that it was not alleged to be
employer or to have played role in alleged acts.

**[2] Civil Rights 78 ⟨⟩1505(7)**

78 Civil Rights
    78IV Remedies Under Federal Employment Dis-
crimination Statutes
        78k1503 Administrative Agencies and Pro-
ceedings
            78k1505 Time for Proceedings; Limita-
tions
                78k1505(7) k. Continuing Violations;
Serial, Ongoing, or Related Acts. Most Cited Cases
Alleged discriminatory acts that occurred more than
300 days before employee filed complaint with
Equal Employment Opportunity Commission
(EEOC) were discrete acts, rather than part of any
systematic discriminatory policy or practice by em-
ployers triggering application of continuing viola-
tion doctrine, and therefore Title VII claims based
on such alleged acts were time-barred. Civil Rights
Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et
seq.

**[3] Civil Rights 78 ⟨⟩1532**

78 Civil Rights

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.))**

Page 2

78IV Remedies Under Federal Employment Discrimination Statutes
    78k1532 k. Pleading. Most Cited Cases

**Civil Rights 78 ☞1740**

78 Civil Rights
    78V State and Local Remedies
        78k1738 Pleading
            78k1740 k. Employment Practices. Most Cited Cases
Although employee was required only to give employers fair notice of her retaliation claims to properly plead those claims, and did not have to plead prima facie case under *McDonnell Douglas* standard, district court was required to determine whether employee's allegations stated claims upon which relief could rest in deciding motion to dismiss for failure to state claim. 42 U.S.C.A. § 1981; Fed.Rules Civ.Proc.Rules 8(a), 12(b)(6), 28 U.S.C.A.; McKinney's Executive Law § 296 et seq.; New York City Administrative Code, § 8-107 et seq.

**[4] Civil Rights 78 ☞1532**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1532 k. Pleading. Most Cited Cases

**Civil Rights 78 ☞1740**

78 Civil Rights
    78V State and Local Remedies
        78k1738 Pleading
            78k1740 k. Employment Practices. Most Cited Cases
Employee provided employers with fair notice of her retaliation claims when she alleged that her attorney sent employers letter raising claims of employment discrimination and that she thereafter experienced retaliatory actions which impaired her working conditions, limited her job responsibilities, subjected her to hostile work comments, resulted in her exclusion from meetings, and made it more dif-

ficult for her to perform her duties. 42 U.S.C.A. § 1981; Fed.Rules Civ.Proc.Rules 8(a), 28 U.S.C.A.; McKinney's Executive Law § 296 et seq.; New York City Administrative Code, § 8-107 et seq.

**[5] Civil Rights 78 ☞1246**

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1246 k. Particular Cases. Most Cited Cases

**Health 198H ☞266**

198H Health
    198HI Regulation in General
        198HI(C) Institutions and Facilities
            198Hk259 Officers and Employees
                198Hk266 k. Adverse Employment Action; Wrongful Discharge. Most Cited Cases
Allegations supported adverse employment action element of hospital employee's claims for retaliation under federal, state, and local laws when employee alleged that her attorney sent employers letter raising claims of race and sex discrimination, and, shortly thereafter, she experienced such retaliatory actions as loss of office space, interference with her computer rights, diminished job responsibilities, and exclusion from meetings. 42 U.S.C.A. § 1981; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.; McKinney's Executive Law § 296 et seq.; New York City Administrative Code, § 8-107 et seq.

**[6] Civil Rights 78 ☞1123**

78 Civil Rights
    78II Employment Practices
        78k1123 k. Constructive Discharge. Most Cited Cases

**Health 198H ☞266**

198H Health
    198HI Regulation in General
        198HI(C) Institutions and Facilities

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.))**

198Hk259 Officers and Employees
198Hk266 k. Adverse Employment Action; Wrongful Discharge. Most Cited Cases
Complaint supported claim that hospital employee suffered constructive discharge when employee alleged that, after complaining of alleged race and gender discrimination, she was passed over for positions for which she was qualified and was placed in inferior positions below her skill level, that she was stripped of her substantive responsibilities, removed from her office, and shunted to several inadequate work locations, and that employers generally engaged in actions which made it more difficult for her to work.

MEMORANDUM OPINION & ORDER

CASEY, J.

**\*1** On March 16, 2003, Angella Timothy ("Plaintiff") commenced this suit against Our Lady of Mercy Medical Center and Our Lady of Mercy Healthcare System, Inc. (collectively, "Defendants") alleging employment discrimination and retaliation, in violation of 42 U.S.C. § 1981, New York Executive Law § 296*etseq.,* and the Administrative Code of the City of New York § 8-107*etseq.*[FN1] On October 7, 2003, Plaintiff amended the complaint, adding claims of discrimination under 42 U.S.C. § 2000e*etseq* . ("Title VII") and allegations of constructive discharge. Defendants now move to partially dismiss the First Amended Complaint, asserting that: (1) all claims against Our Lady of Mercy Healthcare System, Inc. are subject to dismissal; (2) all of the Title VII claims as they relate to events occurring before June 30, 2002 are time-barred; and (3) Plaintiff's retaliation and constructive discharge claims fail as a matter of law. Defendants' motion was deemed fully submitted on November 11, 2003. For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

> FN1. Courts "commonly analyze the sufficiency of [claims under section 1981] in the same manner as Title VII claims,

reaching the same result."*Pagan v. New York State Div. of Parole,* 98 Civ. 5840, 2002 WL 398682, at \*4-5 (S.D.N.Y. Mar.13, 2002) (citations omitted); *seealsoHargett v. Nat'l Westminster Bank, U.S.A.,* 78 F.3d 836, 838 (2d Cir.1996). The standards used to analyze claims under Title VII, the Executive Law, and City Law are identical. *SeeTomka v. Seiler Corp.,* 66 F.3d 1295, 1304 n. 4 (2d Cir.1995); *seealsoKahn v. Objective Solutions, Int'l,* 86 F.Supp.2d 377, 382 (S.D.N.Y.2000).

I. BACKGROUND

For purposes of this motion, the complaint's factual allegations are accepted as true and all inferences are drawn in Plaintiff's favor.

Plaintiff, an African-American mother, was employed by Our Lady of Mercy Medical Center and Our Lady of Mercy Healthcare System, Inc. for approximately ten years. (Dkt. No. 10: First Am. Compl. ¶ 7.) These entities are non-profit corporations that operate a hospital in the Bronx, New York. (*Id.* ¶ 8.) In July 1993, after receiving her Masters of Public Administration in Health Policy and Management from New York University, Plaintiff began working as an Administrative Resident with Defendants. (*Id.* ¶ 9.) In this position, Plaintiff reported directly to Gary Horan, the hospital's President and Chief Executive Officer. (*Id.* ¶ 11.) In 1994, Plaintiff was promoted to the position of Administrative Fellow and continued to report to Horan. (*Id.*) In July 1996, Plaintiff was again promoted to the position of Associate Administrator, reporting to Horan and the Chief Operating Officer. (*Id.* ¶ 13.)Plaintiff had administrative responsibility for seven departments, attended Board of Trustees' meetings and served on numerous hospital committees. (*Id.*) In 1999, Plaintiff won the prestigious Young Healthcare Administrator of the Year Award. (*Id.* ¶ 14.)In November 2000, Plaintiff left the hospital's employ on maternity leave. (*Id.* ¶¶ 15-16.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.))**

In July 2001, Plaintiff returned from leave. (*Id.* ¶ 21.)Plaintiff alleges thereafter she was subjected to a pattern and practice of racial and gender discrimination in which she was repeatedly demoted in favor of white women without young children and in favor of white men, some of whom have young children. (*Id.* ¶¶ 10, 17, 21-22, 29.)Plaintiff also contends that Defendants stripped her of departmental responsibilities, removed her from her career track in Administration, and relegated her to an inferior nursing administration position. (*Id.* ¶¶ 17, 23, 28 .)Plaintiff was also assigned to work in inadequate workspaces. (*Id.* ¶ 25.)

**\*2** On March 24, 2003, Defendants received a letter from Plaintiff's attorney raising claims of race and gender discrimination. (*Id.* ¶ 30.)Plaintiff contends that after Defendants received this letter she was subjected to a number of alleged retaliatory actions, namely-her job responsibilities were limited, she was excluded from meetings, her working conditions were impaired, and Defendants generally made it more difficult for her to perform her job. (*Id.* ¶ 31.)As specific examples of adverse employment action, Plaintiff alleges that she was reassigned to a cramped office, she was criticized for the actions of a nurse she had previously hired, she was not consulted as to whom would be hired for a position she once occupied, and her computer usage was monitored. (*Id.* ¶ 31(a)-(e).)

On March 16, 2003, Plaintiff commenced this suit. On July 14, 2003, the Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a right to sue letter, allowing her to file Title VII claims within ninety days. (*Id.* ¶ 4.) On October 7, 2003, with Defendants' motion to dismiss already submitted, Plaintiff amended her complaint to allege such claims.[FN2]

> FN2. For this reason, the parties were granted the opportunity to supplement their initial motion papers.

### II. DISCUSSION

### A. Motion to Dismiss Standard

A court may dismiss a complaint for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of a claim which would warrant relief. *SeeConley v.. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the Court must take as true all the facts stated in the complaint and "draw all reasonable inferences in the plaintiff's favor."*Jackson Nat'l Life Ins. v. Merrill Lynch & Co.,* 32 F.3d 697, 700 (2d Cir.1995). As such, "a complaint should not be dismissed simply because a plaintiff is unlikely to succeed on the merits."*Baker v. Cuomo,* 58 F.3d 814, 818 (2d Cir.1995).

### B. Claims Against Our Lady of Mercy Healthcare System, Inc.

[1] Plaintiff asserts claims of discrimination, retaliation, and constructive discharge against both Our Lady of Mercy Medical Center and Our Lady of Mercy Healthcare System, Inc. (First Am. Compl. Introductory Paragraph.) Defendants move to dismiss all claims asserted against Our Lady of Mercy Healthcare System on the grounds that Plaintiff has failed to assert that it was her employer and that it played a role in the alleged discriminatory and retaliatory acts. Perhaps not artfully pled, the complaint's introductory paragraph refers to both Our Lady of Mercy Medical Center and Our Lady of Mercy Healthcare System, Inc. as "OLM." Therefore, the factual allegations throughout the complaint refer to both entities.

Accepting the facts in the complaint as true, Plaintiff has sufficiently alleged that Our Lady of Mercy Healthcare System was her employer and that its acts constituted discrimination, retaliation and constructive discharge. Our Lady of Mercy Healthcare System has therefore received fair notice of these claims. *SeeSwierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

L.Ed.2d 1 (2002). Defendants' motion to dismiss all claims asserted against Our Lady of Mercy Healthcare System, Inc. is denied.

### C. Title VII Claims Based on Acts Occurring from January 2001 through November 2001

**\*3** **[2]** Plaintiff has alleged violations of Title VII based on discrete discriminatory acts that allegedly occurred from January 2001 through November 2001. (First Am. Compl. ¶¶ 17-25.) The Complaint alleges that: (1) after Plaintiff took medical leave, Defendants assigned administration of the seven departments Plaintiff had previously supervised to five white employees; (2) after Plaintiff returned from leave she was relegated to performing secretarial work under the supervision of a white, childless woman; and (3) Plaintiff faced a series of significant demotions. (*Id.* ¶¶ 22-25.)Defendants contend that these claims are time-barred.

In New York, Title VII claims are time-barred if a plaintiff does not file a charge with the EEOC within three-hundred days of the alleged unlawful employment practice. *SeeHarris v. City of New York,* 186 F.3d 243, 247-48 (2d Cir.1999). Plaintiff alleges that she filed a charge of discrimination with the EEOC on or about April 25, 2003. (First Am. Compl. ¶ 4.) The operative date for determining the timeliness of her newly added Title VII claims is therefore June 30, 2002, three-hundred days before her EEOC filing. Any claims concerning alleged discriminatory acts occurring before June 30, 2002 would be untimely.

In an attempt to circumvent this bar, Plaintiff argues that the alleged discriminatory acts that occurred from January 2001 through November 2001 are part of Defendants' systematic discrimination against minority employees and women with children. As such, Plaintiff asserts that the continuing violation doctrine allows her Title VII claims to proceed.

The continuing violation theory may be invoked if

Plaintiff provides "proof of specific or ongoing policies or practices or ... specific and related instances of discrimination [which] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice."*Cornwall v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). If a continuing violation is established, "all claims of discrimination under [the discriminatory policy] will be timely even if they would be untimely standing alone."*Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993). As "a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor."*Curtis v. Airborne Freight Corp.,* 87 F.Supp.2d 234, 244 (S.D.N.Y.2000).

Here, Plaintiff has failed to provide any facts that the alleged discriminatory acts predating June 30, 2002 amount to a discriminatory policy or practice. Instead, in wholly conclusory fashion, she asserts that these acts are not merely discrete, but rather based upon systematic discrimination against minority employees and child-rearing women. Plaintiff may not, however, convert discrete acts into a pattern or practice by merely invoking those words. *See, e.g.,Blake v. Bronx Lebanon Hosp.,* No. 02 Civ. 3827, 2003 WL 21910867, at \*5 (S.D.N.Y. Aug.11, 2003) ("A plaintiff does not properly allege an ongoing discriminatory policy simply by invoking the magic words 'pattern' or 'practice.'"); *Gross v. NBC. Inc.,* 232 F.Supp.2d 58, 68 (S.D.N.Y.2002) ( "There is no indication that the term 'practice' as it is used in Title VII 'converts related discrete acts into a single unlawful practice for purposes of timely filing.'") (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 102, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).

**\*4** Moreover, the Supreme Court in *Morgan* cautioned that courts should not readily allow plaintiffs to allege pattern or practice claims based on a series of discriminatory acts. *See*536 U.S. at 113. The Court stated,

Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire [each

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.))

constitute] a separate actionable "unlawful employ-ment practice." Discrete discriminatory acts are not actionable if time barred, even when they are re-lated to acts alleged in timely filed charges. Each discrete act starts a new clock for filing charges al-leging that act.

*Id.* The actions on which Plaintiff premises her dis-crimination claims did not occur until October 2002, when Plaintiff was demoted. It may not be said that this event-occurring approximately a year after the discriminatory acts of January 2001 through November 2001-is part of a specific and systematic practice of discrimination. Rather, the discriminatory acts are discrete and each act started a new clock for filing charges. *Seeid.* Accordingly, Plaintiff's allegations concerning discrete events oc-curring from January 2001 through November 2001 are time-barred. Plaintiff's Title VII claims relating to acts or events occurring during this time-frame are therefore dismissed.[FN3]

> FN3. Defendants request that the factual allegations contained in paragraphs 17-25 of the First Amended Complaint should be completely struck as time-barred. This re-quest is denied because such factual allega-tions are timely to the extent that they re-late to Plaintiff's claims under section 1981, the Executive Law, and the City Law. *SeeWilson v. Fairchild Republic Co.,* 143 F.3d 733, 738 n. 5 (2d Cir.1998) (stating statute of limitations for federal civil rights cases is three years, including § 1981 claims); *Lambert,* 10 F.3d at 59 (claims brought under § 296 of the New York State Executive Law and § 8-107 of the New York City Administrative Code are subject to a three-year statute of limita-tions).

### D. Retaliation

For Plaintiff to ultimately prevail on her retaliation claims, she must satisfy the burden-shifting frame-work established in *McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, Plaintiff must present a *primafacie* case. To state a *primafacie* case, Plaintiff must prove the following four elements: (1) she was engaged in a protected activity; (2) De-fendants were aware of her participation in this activity; (3) Defendants took adverse action against her; and (4) a causal connection existed between the protected activity and the adverse action. *SeeCosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993). If Plaintiff shoulders this initial burden, the burden of production shifts to Defend-ants to introduce evidence of a legitimate, non-retaliatory justification for its action. *Id.* Finally, if Defendants meet their burden, Plaintiff then has the opportunity to prove that the alleged justification is merely a pretext for retaliation.

[3] Defendants argue that the defect in Plaintiff's claim is she cannot establish the third element of a prima facie case-that she suffered an adverse em-ployment action following her alleged protected activity. Plaintiff counters that at this stage of the case she need not demonstrate that the actions taken against her were adverse. The parties' disagreement stems from their conflicting interpretation of the Supreme Court's recent decision in *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Plaintiff's central argument is that, under *Swierkiewicz,* she must provide fair no-tice of her retaliation claim and no more; Defend-ants believe that Plaintiff must provide both fair no-tice and plead minimal facts, but has failed to do so as to the adverse employment element.[FN4]

> FN4. Plaintiff does assert that the acts as-serted in the complaint nevertheless consti-tute adverse employment actions. This as-pect of the motion is discussed below.

*5 In *Swierkiewicz,* a Hungarian national chal-lenged his termination as an underwriter with a re-insurance company based on his race, in violation of Title VII, and on his age, in violation of the Age Discrimination in Employment Act. *SeeSwi-erkiewicz,* 534 U.S. at 508. Ruling on a motion to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.))**

dismiss, the district court dismissed the case because the plaintiff had not adequately alleged a prima facie case, in that he had not adequately alleged circumstances that supported an inference of discrimination. *Id.* at 509.The Second Circuit affirmed the dismissal on the ground that plaintiff's allegations were insufficient as a matter of law to support an inference of discrimination under *McDonnell Douglas.SeeSwierkiewicz v. Sorema, N.A.,* No. 00-9101, 2001 WL 246077, at *1 (2d Cir. Mar.12, 2001). The Supreme Court, in order to resolve a split among the circuits, granted certiorari to determine "whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination."*Swierkiewicz,* 534 U.S. at 508. The Supreme Court answered in the negative and reversed the Second Circuit. The Court reasoned that a prima facie case under *McDonnell Douglas* is "an evidentiary standard" that "should not be transposed into a rigid pleading standard for discrimination cases."*Id.* at 510, 512.The Court therefore held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" so long as the complaint provides the defendant "fair notice of the basis for [the] claims."*Id.* at 514-15.However, the Court did not, as Plaintiff contends, stop there. The Court further stated that if a plaintiff satisfies the "fair notice" standard, a court must still determine whether " 'relief could be granted under any set of facts that could be proved consistent with the allegations." ' *Id.* at 514 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Defendants are therefore correct in articulating the framework that the Court should apply to its motion, but incorrect as to the outcome: Plaintiff has sufficiently pled a claim of retaliation, and Defendant has failed to show that the aggregated acts of which Plaintiff complains do not amount to an adverse employment action as a matter of law.

[4] Plaintiff has provided Defendants with "fair notice" of her claim. Plaintiff alleged that her "attorney sent a letter to [defendants] by Federal Express, raising claims of race and sex (including pregnancy) discrimination" and that shortly after sending the letter, she experienced retaliation. (First Am. Compl. ¶ 30.) Plaintiff contends that the alleged retaliatory actions impaired her working conditions, limited her job responsibilities, subjected her to hostile work comments, resulted in her exclusion from meetings, and made it more difficult for her to perform her duties. (*Id.* ¶¶ 30-31.)Moreover, Plaintiff also asserted five specific allegedly retaliatory acts. (*Id.* ¶ 31(a)-(e).) Therefore, Plaintiff has done more than offer conclusory allegations of retaliation. *See*Fed.R.Civ.P. 8(a); *seealso*Leeds *v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."). Plaintiff has " 'give[n] the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests." ' *Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47);*seealso*Harrison *v. New York City Admin. for Children's Servs.,* No. 02 Civ. 947, 2003 WL 22271219, at *5 (S.D.N.Y. Sept.30, 2003) (denying motion to dismiss because plaintiff provided fair notice of her race and gender discrimination claims under *Swierkiewicz* ). Plaintiff has properly pled her retaliation claim.

*6 The Court next must determine whether Plaintiff has stated claims of retaliation upon which relief might rest. As the Supreme Court reiterated in *Swierkiewicz,*" '[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ' *Swierkiewicz,* 534 U.S. at 514 (quoting *Hishon,* 467 U.S. at 73). The Supreme Court therefore held that the claims presented by the *Swierkiewicz* plaintiff could survive a motion to dismiss because the complaint provided "fair notice" *and* "state[d] claims upon which relief could be granted under Title VII." *Id.* at 515.

The Court declines to adopt the proposition that Plaintiff need only provide Defendants with fair notice of the retaliation claim. First, such a position would require the Court to overlook the plain lan-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.))**

guage of *Swierkiewicz.* Second, doing so would all but eviscerate Rule 12(b) and its proviso that a complaint should be dismissed when a plaintiff fails "to state a claim upon which relief could be granted." Fed.R.Civ.P. 12(b)(6). Finally, the consequences of such a position would be significant and adverse to the purpose of Title VII. Its purpose is to assure equality of employment opportunities, to eliminate discriminatory employment practices, and to prohibit retaliation against employee's engaged in certain protected activities. Requiring a plaintiff to plead those facts, which if accepted as true would entitle a litigant to legal relief, furthers this purpose. There is no doubt that "discrimination is odious but a frivolous or malicious charge of such conduct ... is at least equally obnoxious." *Carrion v. Yeshiva Univ.,* 535 F.2d 722, 728 (2d Cir.1976). Adopting the position Plaintiff advances would allow such cases to survive, at least until the summary judgment stage. Such a result, however, would be unjust to those plaintiffs who present meritorious claims, as it would strain federal dockets and would mean that years would pass before an aggrieved employee could present his claim in court. *See Cicero v. Borg-Warner Automotive, Inc.,* 163 F.Supp.2d 743, 758 (E.D.Mich.2001) ("Not only are frivolous suits wasteful, expensive and meddlesome to the immediate participants, they prevent plausible discrimination claims from being timely heard, and dissuade those who have actually been wronged from filing suit because of the inordinate length of time it would take to obtain a remedy."). Therefore, Plaintiff's contention that *Swierkiewicz* prevents a court from analyzing the detailed factual allegations of retaliation is misplaced.

[5] The Second Circuit has stated that "no bright-line rules ... determine whether the challenged employment action reaches the level of [being] adverse." *Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 446 (2d Cir.1999). Moreover, "Title VII does not define adverse employment action solely in terms of job termination or reduced wages and benefits, and ... less flagrant reprisals by employers may indeed be adverse." *Id.* Even if none

of the actions that a plaintiff alleges could individually be characterized as adverse, a series of actions taken against a plaintiff may, in the aggregate, constitute such conduct. *Fowler v. New York City Transit Auth.,* No. 96 Civ. 6796, 2001 WL 83228, at *7 (S.D.N.Y. Jan.31, 2001) ("[T]he accumulation of small reprisals may be aggregated so as to permit consideration of their impact in their totality and to support their being deemed sufficient to constitute adverse employment action sustaining a claim for retaliation for engaging in a protected activity."); *see also Reiter v. Metro. Transit Auth.,* No. 01 Civ. 2762, 2002 WL 31190167, at *10 (S.D.N.Y. Sept. 30, 2002) (holding that "changes in ancillary job-related benefits and job responsibilities, when viewed as a whole rather than individually, may rise to the level of materially adverse actions.") (citations omitted).

*7 Taken in the aggregate, the series of actions that Plaintiff alleges-loss of office space, interference with computer rights, diminished job responsibilities, and exclusion from meetings-may constitute adverse employment action. Accordingly, the Court concludes that Defendant has failed to show that Plaintiff cannot demonstrate any set of facts which would entitle her to relief.

### E. Constructive Discharge

[6] Plaintiff also alleges claims of constructive discharge against Defendants. An employee is constructively discharged when an employer "deliberately [makes] his working conditions so intolerable that he [is] forced into an involuntary resignation." *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 161 (2d Cir.1998). To prove constructive discharge, Plaintiff must show that a reasonable person subjected to the working conditions which she experienced would have felt compelled to resign. *See Ongsiako v. City of New York,* 199 F.Supp.2d 180, 187 (S.D.N.Y.2002). In other words, Plaintiff must show that Defendants deliberately made her working condition so intolerable that she was forced into an involuntary resignation. *See,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.))

Page 9

*Sinopoli v. Regula,* No. 97-7229, 1997 WL 624987, at *2 (2d Cir. Oct.9, 1997). Whereas courts generally disfavor viewing allegedly discriminatory *practices* in an aggregated matter when claims related to such practices would otherwise be *untimely* (see Section II.C.), courts take a different view as to allegedly *adverse employment actions* that are *timely.* The Second Circuit has stated that although "certain factors, standing alone, [may be] legally sufficient to support constructive discharge" a constructive discharge claim may nonetheless proceed given that "the effect of a number of adverse conditions in the workplace is cumulative." *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 90 (2d Cir.1996). Moreover, the Second Circuit has held that, "[b]ecause a reasonable person encounters life's circumstances cumulatively and not individually, it [is] error to treat the various conditions as separate and distinct rather than additive." *Id.*

Plaintiff alleges that not only has she been passed over for positions for which she was qualified, but also that she has been placed in inferior positions below her skill level. (First Am. Compl. ¶¶ 28-29.) Plaintiff further alleges, among others examples, that she was stripped of her substantive responsibilities, removed from her office, shunted to several inadequate work locations, and that Defendants generally engaged in actions that made it more difficult for her to work. (*Id.* ¶ 31.) A reasonable person could infer from these combined facts that Plaintiff "was not wanted as an employee and that [s]he was going to be forced out of" her employment. *Terry v. Ashcroft,* 336 F.3d 128, 152 (2d Cir.2003); *see also Chertkova,* 92 F.3d at 90 ("Certain factors, standing alone, are legally insufficient to support constructive discharge.... But, the effect of a number of adverse conditions in the workplace is cumulative.") (citations omitted). Therefore, similar to the claims of retaliation, the aggregated allegations underlying Plaintiff's constructive discharge claim allow this claim to withstand a motion to dismiss.

### III. CONCLUSION

*8 For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART as follows: (1) the motion to dismiss all allegations against Our Lady of Mercy Healthcare System, Inc. is denied; (2) Defendants' motion to dismiss the Title VII claims as they relate to acts that occurred from January 2001 through November 2001 is granted; (3) Defendants' motion to dismiss the retaliation claims is denied; and (4) the motion to dismiss the constructive discharge claim is denied.

The parties are directed to appear for a conference before the Court on August 13, 2004 at 9:30 a.m., at which time all discovery must be complete.

So Ordered:

S.D.N.Y.,2004.
Timothy v. Our Lady of Mercy Medical Center
Not Reported in F.Supp.2d, 2004 WL 503760 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

RONALD S. RILEY,                          :
                                          :
                 Plaintiff,               :        C.A. No. 05-746-(MPT)
                                          :
          v.                              :        Related Case:
                                          :        C.A. No.: 05-126 (MPT)
THE DELAWARE RIVER AND                    :
BAY AUTHORITY,                            :
                                          :
                 Defendant,               :

## CERTIFICATE OF SERVICE

I, James P. Hall, Esquire, hereby certify that on June 9, 2008, I electronically filed a true and correct copy of the foregoing **Unreported Decisions to Plaintiff Ronald S. Riley's Answering Brief In Opposition to Defendants' Motion for Summary Judgment,** with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Adria B. Martinelli, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

PHILLIPS GOLDMAN & SPENCE, P.A.

_____
JAMES P. HALL, ESQUIRE (#3293)
1200 North Broom Street
Wilmington, DE 19806
Telephone:      (302) 655-4200
Facsimile:      (302) 655-4210
Attorney for Plaintiff

Date:   June 9, 2008