## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD S. RILEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No.: 05-746 (MPT) |
| | : | (Consolidated) |
| THE DELAWARE RIVER AND BAY | : | |
| AUTHORITY, JAMES JOHNSON, Individually, | : | |
| JAMES WALLS, Individually, TRUDY | : | |
| SPENCE-PARKER, Individually, and CONSUELA | : | |
| PETTY-JUDKINS, Individually, | : | |
| | : | |
| Defendants. | : | |

---

### PLAINTIFF RONALD S. RILEY'S
### <u>AMENDED</u> ANSWERING BRIEF IN OPPOSITION TO
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

JAMES P. HALL, ESQUIRE (#3293)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE  19806
(302) 655-4200
Attorney for Plaintiff,
Ronald S. Riley

DATE:  June 10, 2008

# TABLE OF CONTENTS

**PAGE**

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

NATURE AND STATE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT

    I.    PLAINTIFF'S MEMBERSHIP IN A COLLECTIVE
        BARGAINING UNIT DOES NOT PREVENT HIM FROM
        PURSING CLAIMS DIRECTLY AGAINST
        THE DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    II.    PLAINTIFF HAS MADE A PRIMA FACIE CASE
        OF EMPLOYMENT DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    III.    ISSUES OF FACT EXIST REGARDING WHETHER THE
        DEFENDANTS' PROFFERED REASONS ARE
        PRETEXT FOR DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    IV.    A GENUINE ISSUE OF MATERIAL FACT EXISTS
        REGARDING WHETHER THE INSTANCES OF RETALIATION
        ALLEGED BY PLAINTIFF AS PART OF HIS PRIMA FACIE CASE
        CONSTITUTE MATERIALLY ADVERSE
        EMPLOYMENT ACTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    V.    A GENUINE ISSUE OF MATERIAL FACT EXISTS
        REGARDING WHETHER THE REASONS PROFFERED BY DRBA
        FOR ITS UNLAWFUL RETALIATION ARE PRETEXTUAL . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**TABLE OF CITATIONS**

<u>CASES</u>                                                                                            <u>PAGE</u>

<u>Alungbe v. Bd. of Trustees of Connecticut State Univ.</u>,
283 F. Supp. 2d 674, 684 (D. Conn. 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Antol v. Perry</u>, 82 F.3d 1291, 1302 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Baney v. Mukasey</u>, 2008 WL 706917, *12 (N.D. Tex. March 14, 2008) . . . . . . . . . . . . . . . . 22

<u>Barricks v. Eli Lilly and Co.</u>, 481 F.3d 556, 560 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 15

<u>Brennan v. Norton</u>, 350 F.3d 399, 422 n. 17 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Burlington Northern & Santa Fe Ry. White</u>, 126 S. Ct. 2405, 2415-16 (2006) . . . . . . . . . . . . 21

<u>Byrd v. Ronayne</u>, 61 F.3d 1026 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986) . . . . . . . . . . . . . . . . . . . . . . .    11

<u>Conway v. Electro Switch Corp.</u>, 825 F.2d 593, 597 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . 19

<u>Corning Glass Works v. Brennan</u>, 417 U.S. 188, 209-10 (1974) . . . . . . . . . . . . . . . . . . . . . 12

<u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 94 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>E.E.O.C. v. Green City, Wisconsin</u>, 618 F. Supp. 91, 94 (D. Wis. 1985) . . . . . . . . . . . . . . . . 12

<u>E.E.O.C. v. Horizon/CMS Healthcare Corp.</u>, 220 F.3d 1184, 1193 (10th Cir. 2000) . . . . . . 14, 15

<u>Enzo Life Sciences, Inc. v. Digene Corp.</u>, 305 F. Supp.2d 406 (D. Del. 2004) . . . . . . . . . . . . . 11

<u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 352 (6th Cir. 1998) . . . . . . . . . . . 15

<u>Ezold v. Wolf, Block, Schorr and Solis-Cohen.</u>, 983 F.2d 509, 546 (3d Cir. 1992) . . . . . . . 19, 23

<u>Falsetti v. Local Union No. 2026</u>, 161 A.2d 882 (Pa. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Fuentes v. Perskie</u>, 32 F.3d 759 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

<u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hare v. Potter, 220 Fed. Appx. 120, 128-29 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Holifield v. Reno, 115 F.3d 1555 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Circ. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 14

Krouse v. American Sterilizer Co., 126 F. 3d 494 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 19

Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 447 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . 12

Madel v. FCI Marketing, Inc., 116 F.3d 1247, 1252 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . 19

Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 16

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1972) . . . . . . . . . . . . . . . . . . . . . 15, 18

Miller v. Delaware Probation and Parole, 41 Fed. Appx. 581, 585 n.4 (3d Cir. 2002) . . . . . . . 13

Monaco v. American General Assur. Co., 359 F.3d 296, 305 (3rd Circ. 2004) . . . . . . . . . . 15, 16

Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507 (D.C. Cir. 1995) . . . . . . . . . . . . 15

Nottelson v. Smith Steel Workers D.A.L.U., 643 F.2d 445, 452 (7th Cir. 1981) . . . . . . . . . . . . 12

Nunez, MD v. Temple Professional Associates,
2005 WL 435238 *4 (E.D. Pa. Feb. 22, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Ozlek v. Potter, 259 Fed. Appx. 417 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 15

Salas v. Wisconsin Dept. of Corrections, 493 F.3d 913, 923 (7th Cir. 2007) . . . . . . . . . . . . . . . 16

Scheidemantle v. Slippery Rock Univ. State System of Higher Ed
470 F.3d 535,539 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Sempier v. Johnson & Higgins, 45 F.3d 724 (3d Cir.), cert. denied,
515 U.S. 1159 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Snyder v. Saberliner Corp., 101 F. Supp.2d 1239, 1245 (E.D. Mo. 1999) . . . . . . . . . . . . . . . . 23

St. Mary's Honor Ctr. Hicks, 509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Timothy v. Our Lady of Mercy Medical Ctr., 2004 WL 503760, *6
(S.D.N.Y. March 12, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Circ. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003) . . . . . . . . . . . . . . . . 14

Wiley v. Glassman, 511 F.3d 151, 156 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 273-74 (7th Cir. 1996) . . . . . . . . . . . . . . 21

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Title VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

U.S.C. §§1981 and 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ii.

## NATURE AND STAGE OF PROCEEDINGS

On May 4, 2005, plaintiff Ronald S. Riley ("Plaintiff") filed a Complaint with this Court against his employer, The Delaware River and Bay Authority ("DRBA"), and James Johnson, individually, James Walls, individually, Trudy Spence-Parker, individually and Consuella Petty-Judkins, individually, (collectively, the "Defendants") as agents, servants and/or employees of DRBA.  In that Complaint, Plaintiff, who is an African American, asserted that DRBA, through its agents, servants and/or employees, discriminated against him in violation of Title VII and 42 U.S.C. §§ 1981 and 1983 and breached the implied covenant of good faith and fair dealing by depriving him of equal employment opportunities on the basis of his race.  Specifically, Plaintiff alleged that the Defendants discriminated against him by failing to compensate him at a level commensurate with his job duties, failed to promote him, and created a hostile work environment.

Because Plaintiff had not filed a Charge of Discrimination for his Title VII claim prior to filing his May 4, 2005 Complaint, he voluntarily withdrew that Complaint and pursued his administrative remedies.  Plaintiff exhausted his administrative remedies under Title VII and, on November 25, 2005, filed a new Complaint with this Court against the Defendants in which he re-asserted his claims for unlawful discrimination and breach of the implied covenant of good faith and fair dealing.

On November 28, 2005, the Defendants filed a Motion to Dismiss.  By Order dated October 25, 2006, the Court dismissed Plaintiff's Title VII claims against defendants Johnson, Walls, Spence-Parker, and Petty-Judkins, his Title VII claims for discrete acts that occurred before July 29, 2004, his hostile work environment claims, his § 1981 claims for discrete acts

1

that occurred before October 18, 2001, and his claim for intentional infliction of emotional distress claim. The Court denied Defendants' Motion to Dismiss in all other respects.

Following the Court's October 25, 2006 Order, Defendants answered the Complaint and the parties engaged in discovery.

On May 25, 2007, Plaintiff filed a second Complaint with this Court against DRBA alleging that it unlawfully created a hostile work environment and/or retaliated against him in response to the complaints he filed against it with the Equal Employment Opportunity Commission and this Court.

On June 26, 2007, the parties stipulated to consolidate the two actions and, on January 31, 2008, consented to the jurisdiction of United States Magistrate Judge Mary Pat Thynge.

On May 15, 2008, the Defendants filed a Motion for Summary Judgment in the consolidated action. This is Plaintiff's Answering Brief in Opposition to Defendant's Motion for Summary Judgment.

2

## SUMMARY OF ARGUMENT

1.      Plaintiff's membership in a collective bargaining unit does not prevent him from pursuing claims directly against the Defendants.

2.      Plaintiff has made a *prima facie* case of employment discrimination.

3.      Issues of fact exist regarding whether the Defendants' proffered reasons are pretext for discrimination.

4.      A genuine issue of material fact exists regarding whether the instances of retaliation alleged by Plaintiff as part of his *prima facie* case constitute materially adverse employment actions.

5.      A genuine issue of material fact exists regarding whether the reasons proffered by DRBA for its unlawful retaliation are pretextual.

3

## STATEMENT OF FACTS

Plaintiff Ronald S. Riley was deposed on December 6, 2007 and February 21, 2008 in the above-captioned action. (A-1) Plaintiff, an African American male, has been employed with DRBA from April 29, 1996 through the present.  He has performed the duties of an Airport Operations Clerk since Fall 2001, when he returned to duty at DRBA following recovery from a work-related injury.  Despite the fact that Plaintiff thereafter continued to perform the duties of an Airport Operations Clerk, he remained classified and compensated as an Airport Maintenance Technician and later as a Temporary Airport Operations Assistant until February 13, 2003.  (A-2 and A-3)  On April 28, 2003, Mr. Riley was provided with the job title of Operations Clerk with a paygrade of "P".  (A-4 through A-8).  On or about August 25, 2003, Plaintiff met with Consuella Petty-Judkins, DRBA's Equal Employment Officer and filed a "Complaints Statement of Events" asserting that he was being denied adequate compensation for the job he was performing based on his race.  Plaintiff asserted that he was entitled to retroactive pay based on the specific duties he was performing as an Operations Clerk.  (A-9 through A-11)

Mr. Riley filed an EEOC Charge of Discrimination with the State of Delaware Department of Labor on May 24, 2005. (A-12 and A-13)  Mr. Riley stated that he was discriminated against based on his race and retaliated against after he filed an internal complaint about his salary and hostile work environment.  On July 29, 2005, the State of Delaware, Department of Labor issued a Final Determination and Right to Sue Notice. (A-14) On November 25, 2007, Plaintiff filed his initial complaint against Defendants alleging inter alia, unlawful discrimination.

Despite the fact that Mr. Riley's job responsibilities exceed that of an Operations Clerk, the Defendants have failed to reclassify and/or promote Mr. Riley to a position which properly

4

reflects his job responsibilities. (See Plaintiff's Complaint)   Mr. Riley made complaints to Alexander Coles, Senior Airport Manager, and to Steve Williams, Director of Airports, his direct supervisors at DRBA, that his job responsibilities exceeded that of his job description and pay grade. (A-15 and A-16)  Specifically, Mr. Riley stated that monthly credit card reconciliation, airport driver training, key card access, airfield access, customer service responsibilities and working with outside agencies such as the FBI, FEMA and DNREC are all job duties he performs, but which are beyond those required of an Operations Clerk.  (A-17 through A-21) Mr. Riley's work responsibilities are that of an Administrative Assistant and/or Customer Service Representative, as per the DRBA's job descriptions for Administrative Assistant and/or Customer Service Representative positions, by way of a reclassification and/or promotion. (A-6, A-7 and A-22 through A-25)

Mr. Coles, Mr. Riley's supervisor, admitted to Mr. Riley that he should be receiving more compensation for the added job responsibilities that he performs at the airport.  (A-26 and A-27) Mr. Coles and Mr. Williams met with Mr. Walls and Mr. Johnson to address Mr. Riley's job status.  Mr. Williams and Mr. Coles told Mr. Riley that Mr. Walls and Mr. Johnson advised that Mr. Riley's job could not be reclassified or job changed since he was in the union.  (A-26) Mr. Riley was denied a reclassification of his job title, promotion or pay increase due to the fact that he was a union employee.  (A-27) Mr. Riley met with his Local Union 542 representatives, Ken Overton and Steve Carroll, to place a union grievance regarding his pay.  (A-28)  Mr. Riley testified that the union representatives met with management from DRBA and were advised that nothing could be done for him.  (A-28) Mr. Carroll also advised him that he met with Jim Johnson the Chief Operating Officer ("COO") at DRBA and requested that Mr. Riley receive additional compensation for his added job responsibilities and Mr. Johnson responded "Ron

5

Riley, absolutely no" to Mr. Carroll's request. (A-30 and A-31) Subsequent to Mr. Riley being

told by DRBA that his denial of reclassification, promotion and/or pay increase was due to the

fact that he was a union employee, two (2) white union employees, Barry Arnold and Michael

Casey, were reclassified by management. (A-15)  On June 14, 2006, Mr. Riley filed a Grievance

against DRBA through his union, International Union of Operating Engineers, Local 542. (A-32)

To date, no action has been taken by Defendants to reclassify and/or promote the Plaintiff.

Mr. Riley filed a second complaint in U.S. District Court on May 25, 2007, asserting that

following his internal complaint filed with DRBA, the grievance filed through his union and his

EEOC complaint filed with the Department of Labor, he has been subject to a hostile work

environment and retaliation.  Mr. Riley has outlined DRBA's conduct demonstrating a hostile

work environment and/or retaliation by DRBA.   Mr. Riley testified in June 2006, he wore dress

shoes to work and that Alexander Coles told him that his foot wear was not appropriate. (A-33)

Mr. Riley later contacted Andrew Ritchie in Human Resources who advised him that his foot

wear was appropriate for work. (A-34)

On October 11, 2006 Alexander Coles sent Mr. Riley to an empty room without any

cause or justification and told him to remain in the room alone and away from his normal work

station. (A-34)  He remained in the empty room from 8:30 a.m. to 12:30 p.m. without cause or

justification. (A-34 through A-38)   In October 2006, Mr. Riley addressed Andrew Ritchie an

employee in the HR Department at DRBA due to the fact that Alexander Coles, plaintiff's

supervisor, altered Mr. Riley's work time removing three (3) hours of pay. (A-39 and A-40)

Mr. Ritchie advised Mr. Riley that he spoke to Mr. Coles and Mr. Riley was later compensated

for the three (3) hours removed from his paycheck. (A-39 and A-40)

6

Mr. Riley made a request for training to his supervisors for Customer Service Ambassador Training through the American Association of Airport Executives in Columbus, Ohio. (A-41 and A-42)  Mr. Coles approved Mr. Riley for the training because he believed the training was appropriate for Mr. Riley's position. (A-49)  Jim Walls, denied Mr. Riley this training opportunity.  Mr. Walls provided Mr. Riley with no basis for the denial. ( A-31 and A-39)  Mr. Riley later learned that Patty Stevenson, a white female employee with DRBA, working part time as a Maintenance Clerk was approved and attended a training course.  In addition, Vicki Keatts, white female employee with DRBA, working as an Airport Security Operations Specialist, was approved to attend training in airport safety and scheduled to attend training in November, 2006. (A-99 and A-100)

On September 19, 2006, Mr. Riley filed a second EEOC Charge of Discrimination with the State of Delaware, Department of Labor.  Mr. Riley stated that after DRBA was served with a copy of Mr. Riley's complaint charging discrimination, he was denied the opportunity to attend training in retaliation for his filing his previous charge of discrimination.  (A-43 and A-44) On October 23, 2006, the State of Delaware Department of Labor issued a Final Determination and Right to Sue Notice.  The Department of Labor determined that there was no further benefit which could be provided to the parties under the administrative process and issued the Right to Sue Letter in order to file the instant action. (A-45 and A-46)

On Friday, May 18, 2007, Mr. Riley received a call from Mr. Coles when Mr. Coles was not even at work accusing Mr. Riley of failing to be at his work station during business hours. (A-47)  Mr. Coles accused Mr. Riley of being in the cafeteria for two (2) to three (3) hours talking to people in the cafeteria rather than performing his job responsibilities. (A-47)  In addition to the fact that Mr. Riley was not in the cafeteria for the alleged length of time, Mr.

7

Coles could not have had any personal knowledge of Mr. Riley's whereabouts, as he made the phone call while on vacation in California. (A-47)

Alexander Coles was deposed on February 27, 2008. (A-48) Mr. Coles testified that he is the Senior Airport Manager at DRBA. As the Senior Airports Manager he is responsible for management of the DRBA's Airports at New Castle, Delaware Park and the Civil Air terminal. Mr. Coles testified that he has previously been subject to racial discrimination at DRBA prior to receiving the Senior Airport Manager position. (A-50)  Mr. Coles expressed his observations to management at DRBA that African Americans are not treated fairly at DRBA. (A-51 through A-53) Mr. Coles is Mr. Riley's direct supervisor. (A-54) Mr. Riley met with Mr. Coles to address the fact that his job responsibilities exceed that of an Operations Clerk.  (A-55) Mr. Coles told Mr. Riley that his pay scale is not equal to his job responsibilities. (A-56) Jim Walls, the COO at DRBA told Mr. Coles and Mr. Williams that they could not change Mr. Riley's job description or pay since he was a union member.  (A-57) Mr. Coles later learned that Mr. Walls statement the DRBA could not change Mr. Riley's job description or pay scale was not a true statement since the two (2) white union members received pay increases of more than five (5%) percent. (A-57, A-58, A-59 and Affidavit of Ronald S. Riley at A-106 and A-107) Moreover, Mr. Riley receives compensation for an Operations Clerk with a paygrade of "P" (annual salary of $34,000), although his job responsibilities are that of an Administrative Assistant and/or Customer Service Representative at DRBA. (A-61) Mr. Riley has also identified a number of white personnel at DRBA who are similarly situated to him in their job responsibilities are virtually the same as Mr. Riley's, but these white employees receive more compensation as an Administrative Assistant and/or Customer Service Representative. See Plaintiff's Responses to

8

Defendants' First Set of Interrogatories, a copy of which is attached hereto as A-60 through A-62, at No. 21.

Plaintiff identified the following employees of DRBA, all whom are outside of the protected class (*i.e.*, they are Caucasian) and are similarly situated to Plaintiff, but receive higher compensation than Plaintiff: Chris James (Senior Customer Service Representative ("CSR") – paygrade M); Rick Lane (Administrative Assistant - paygrade N); Kristen Flocco (Airport Clerk - paygrade N); Marylou Jordan (Administrative Assistant - paygrade N); June Riedenbach (Administrative Assistant - paygrade N); Peggy Lamana (Administrative Assistant - paygrade N); Joan Moreno (Administrative Assistant - paygrade N); Tom Naglee (CSR - paygrade M); Judi Twist (CSR - paygrade M); Steve Lafferty (CSR - paygrade M); Todd Fisher (CSR - paygrade M); Amy Littletown (CSR - paygrade M); Tara Roberts (CSR - paygrade N); and Jerry Reese (CSR/Acting Supervisor - paygrade N). See Plaintiff's Responses to Defendants' First Set of Interrogatories, a copy of which is attached hereto as A-60 through A-62, at No. 21.

Stephen Williams was deposed on February 22, 2008. (A-63) Mr. Williams confirmed that two (2) white union members, Barry Arnold and Michael Casey, were reclassified and/or promoted from Tech 2 to Tech 3 during this time, despite the fact that Ron Riley was denied a reclassification. (A-64 through A-70)

Consuella Petty-Judkins, the Equal Employment Opportunity Officer (EEO) at DRBA was deposed on April 2, 2008. (A-71) Ms. Petty-Judkins testified that DRBA has issues with racial discrimination. (A-72 through A-73) Trudy Spence Parker, the Chief Human Relations Officer, and Jim Walls, the COO, are responsible for the job description for Ron Riley. (A-74) Ms. Petty-Judkins testified that she is aware of meetings that Mr. Coles had with Steve Williams and Jim Walls to support reclassifying Mr. Riley's job position. (A-75) Ms. Petty-Judkins had

9

recommended to Jim Walls to reclassify Ron Riley's job title to a higher pay scale since Mr.

Riley was performing activities beyond that of an Operations Clerk. (A-76) Ms. Petty-Judkins

believed that Ron should receive at least a reclassification to "M" which would increase he

salary by $5,000 to $10,000.00 per year. (A-77) Ms. Petty-Judkins testified that either Ms.

Spence-Parker, the Chief Human Resources Officer, or Mr. Walls, the COO, had the authority

to reclassify Mr. Riley's position but refused to do so, despite Ms. Petty-Judkins'

recommendation. (A-78 and A-79)

**ARGUMENT**

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court is to enter summary judgment only when the record demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Enzo Life Sciences, Inc. v. Digene Corp., 305 F. Supp.2d 406 (D. Del. 2004). In deciding a motion for summary judgment, the Court's role is not to weigh the evidence or to determine the truth of the matters asserted, but to determine whether there is a genuine issue of fact for trial. Anderson, 477 U.S. at 248.

In so doing, the Court must view all facts and draw all reasonable inferences in favor of the non-movant, take as true all allegations of the non-movant that conflict with those of the movant, and resolve all doubts against the movant. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985). Moreover, the Court must treat direct and circumstantial evidence alike for purposes of summary judgment. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 94 (2003) ("circumstantial evidence is not only sufficient but may also be more certain, satisfying and persuasive than direct evidence.").

Because there is ample evidence from which the finder of fact could decide in favor of Plaintiff, the Defendants' Motion for Summary Judgment must be denied.

I.     **Plaintiff's Membership in a Collective Bargaining Unit Does Not Prevent Him From Pursuing Claims Directly Against the Defendants.**

The Defendants' contention that DRBA was unable to increase Plaintiff's compensation as he requested because he became a member of a collective bargaining unit is without foundation in law or fact. "It is well settled... that Title VII rights cannot be bargained away and that a collective bargaining agreement therefore does not of itself provide a defense for Title VII

11

violations." <u>Nottelson v. Smith Steel Workers D.A.L.U.</u>, 643 F.2d 445, 452 (7th Cir. 1981).  An

employer simply cannot perpetuate prior illegal, discriminatory pay practices by phrasing those

practices in a facially neutral collective bargaining agreement.  <u>See</u> <u>Corning Glass Works v.</u>

<u>Brennan</u>, 417 U.S. 188, 209-10 (1974); <u>see also</u> <u>Laffey v. Northwest Airlines, Inc.</u>, 567 F.2d 429,

447 (D.C. Cir. 1976) ("[U]nion activity cannot strip individual employees of the opportunity to

seek vindication of their statutory entitlements in court.  Rights established under Title VII and

the Equal Pay Act are 'not rights which can be bargained away either by a union, by an

employer, or by both acting in concert.'" (citations omitted) (abrogated on other grounds);

<u>E.E.O.C. v. Green City, Wisconsin</u>, 618 F. Supp. 91, 94 (D. Wis. 1985).  Plaintiff claims that he

has been undercompensated as a result of unlawful discrimination since he began performing the

duties of an Airport Operations Clerk in Fall 2001 – several years **before** the collective

bargaining agreement between the Local 542 and DRBA came into existence.  That unlawful

discrimination is not excused, and may not be perpetuated, by the Defendants' inclusion of

Plaintiff's improper, discriminatory paygrade within a facially neutral collective bargaining

agreement.[1]

     Moreover, the Defendants' cries that DRBA could not increase Plaintiff's compensation

because he was a member of a collective bargaining unit ring hollow in light of the increases in

pay DRBA bestowed upon certain of Plaintiff's fellow union members.  During his deposition,

Plaintiff testified that the DRBA recently reclassified to a higher paygrade two (2) employees

who are members of the Local 542 and, incidentally, are Caucasian.  <u>See</u> February 11, 2008

deposition of R. Riley at (A-15, A-16, A-26, A-27 and Affidavit of Ronald S. Riley at A-106).

---

[1]     <u>Falsetti v. Local Union No. 2026</u>, 161 A.2d 882 (Pa. 1960), which the Defendants rely upon in their
Opening Brief, is inapposite here because the plaintiff in that case sought to enforce the terms of a collective
bargaining agreement, which only the union to do pursuant to the terms of that agreement.  In the instant matter,
Plaintiff is not seeking to enforce rights arising under the terms of the collective bargaining agreement, but instead to
protect his civil rights arising under federal law and the Constitution.

12

Plaintiff's supervisor, Alex Coles, confirmed during his deposition that "two union guys were bumped up" by DRBA and that at least one of them was Caucasian, but was unable to reconcile why membership in the union allegedly prevented DRBA from raising Plaintiff's salary but did not prevent it from raising the other two union employees' salaries. See February 27, 2008 deposition of A. Coles at A-84 through A-87. In an effort to justify that disparate treatment, DRBA's Director of Airport Operations, Stephen Williams, testified at his deposition that he had heard from one of his superiors that DRBA increased the two union members' salaries because they had been promoted as opposed to reclassified, but he had no firsthand knowledge of those alleged promotions and, more importantly, failed to meaningfully define or differentiate what constitutes "promotion" and "reclassification" at DRBA. See February 27, 2008 deposition of S. Williams at A-63 through A-70. The above deposition testimony at the very least creates an issue of fact regarding whether the increase in pay received by those union members was, in fact, the result of a reclassification, promotion, or some other kind of employment action that was denied to Plaintiff.

Finally, assuming *arguendo* that the Defendants correctly argue that Plaintiff's membership in a collective bargaining unit precluded DRBA from raising his salary (which they do not), they have painted their argument with too broad of a brush. Although the Defendants allege that the collective bargaining agreement did not take effect until February 1, 2006, they somehow conclude that the collective bargaining agreement somehow fixes the amount of Plaintiff's compensation and bars **all** of his discriminatory pay claims all the way back to Fall 2001 (when he began performing the duties of an Airport Operations Clerk) - well **before** the collective bargaining agreement became effective or DRBA was unionized. To the extent this Court is inclined to find that Plaintiff's membership in a collective bargaining unit prevents him

from pursuing claims against the Defendants, it should not bar any claims that occurred before the collective bargaining agreement became effective on February 1, 2006.

**II.    Plaintiff Has Made A *Prima Facie* Case of Employment Discrimination.**

In order to make out a *prima facie* case of race discrimination, a plaintiff must prove that: (i) he is a member of a protected class; (ii) he suffered some form of adverse employment action; and (iii) that action occurred under circumstances that give rise to an inference of unlawful discrimination, as when a similarly situated person outside of the protected class is treated more favorable from the plaintiff.[2] Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir.1999). Therefore, in the context of a discriminatory compensation claim, a plaintiff must show that he was paid less than an employee who is outside of the protect class and performed a substantially similar job. "[T]here is a low bar for establishing a *prima facie* case of employment discrimination." Scheidemantle v. Slippery Rock Univ. State System of Higher Ed., 470 F.3d 535, 539 (3d Cir. 2006). Considering that the burden of making a *prima facie* case is "not onerous," a plaintiff's uncorroborated deposition testimony may create a material issue of fact. Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir.1990).

Contrary to the Defendants' assertions, a plaintiff in an employment discrimination case need not prove as part of his *prima facie* case that his membership in a protected class motivated his employer's decision. See Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003) (finding that employer's alleged nondiscriminatory reason for taking an adverse employment action may not be considered when analyzing *prima facie* case); E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1193 (10th Cir. 2000) (same); Nunez, MD v.

---

[2]    The elements of a *prima facie* case of discrimination under § 1981 and Title VII are the same. Miller v. Delaware Probation and Parole, 41 Fed. Appx. 581, 585 n.4 (3d Cir. 2002) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993)).

14

Temple Professional Associates, 2005 WL 435238, *4 (E.D. Pa. Feb. 22, 2005) (same). "[T]o
hold otherwise would be tantamount to collapsing the first and second stages of the McDonnell
Douglas analysis and would deny a plaintiff the opportunity to demonstrate that the defendant's
explanation for the adverse employment action is pretextual." Horizon/CMS Healthcare Corp.,
220 F.3d at 1193.

The Defendants do not dispute in their Opening Brief that Plaintiff is a member of a
protected class (i.e., African American) and that he suffered an adverse employment action in
that he was paid less than other DRBA employees who are outside of the protected class.
Instead, the Defendants dispute that Plaintiff can make a prima facie case that those other DRBA
employees were situated similarly to him because his position at DRBA is "unique." Plaintiff
vehemently disagrees with the Defendants' conclusion that they are permitted to trample his civil
rights and subject him to employment discrimination with impunity just because he is the only
Airport Operations Clerk at DRBA. Plaintiff in employment discrimination cases need not show
an exact correlation with employees outside of the protected class who are treated more
favorably in order for them to be considered similarly situated, but instead must be similar in "all
of the **relevant** aspects." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir.
1998) (emphasis in original) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796 (6th
Cir. 1994)). See also Monaco v. American General Assur. Co., 359 F.3d 296, 305 (3d Cir.
2004); Holifield v. Reno, 115 F.3d 1555 (11th Cir. 1997); Neuren v. Adduci, Mastriani, Meeks &
Schill, 43 F.3d 1507 (D.C. Cir. 1995); Byrd v. Ronayne, 61 F.3d 1026 (1st Cir. 1995). To hold
otherwise effectively would "remove[ ] from the protective reach of the anti-discrimination laws
employees occupying 'unique' position...." Ercegovich, 154 F.3d at 353.

15

Thus, the relevant inquiry is not whether Plaintiff can show that DRBA employed other Airport Operations Clerks, but whether he can show that the relevant aspects of his employment as an Airport Operations Clerks were similar to the relevant aspects of the employment of other DRBA employees, regardless of their formal position or title.  Because that inquiry is fact intensive and to be made on a case-by-case basis rather than in a mechanistic and inflexible manner, it ordinarily is an issue of fact reserved for the finder of fact.[3]  See Monaco, 359 F.3d at 305; Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003); Alungbe v. Bd. of Trustees of Connecticut State Univ., 283 F. Supp.2d 674, 684 (D. Conn. 2003).  Factors considered in that inquiry include the respective employees' job functions and descriptions, salaries, levels of supervisory responsibility, whether they were subject to the same supervisor, whether they were subject to the same standards and discipline, and their experience, education, and other qualifications. See Monaco, 359 F.3d at 305; Salas v. Wisconsin Dept. of Corrections, 493 F.3d 913, 923 (7th Cir. 2007).

In response to the Defendants' First Set of Interrogatories, Plaintiff identified the following employees of DRBA, all whom are outside of the protected class (i.e., they are Caucasian) and are similarly situated to Plaintiff, but receive higher compensation than Plaintiff: Chris James (Senior Customer Service Representative ("CSR") – paygrade M); Rick Lane (Administrative Assistant - paygrade N); Kristen Flocco (Airport Clerk - paygrade N); Marylou Jordan (Administrative Assistant - paygrade N); June Riedenbach (Administrative Assistant - paygrade N); Peggy Lamana  (Administrative Assistant - paygrade N); Joan Moreno (Administrative Assistant - paygrade N); Tom Naglee (CSR - paygrade M); Judi Twist (CSR - paygrade M); Steve Lafferty (CSR - paygrade M); Todd Fisher (CSR - paygrade M); Amy

---

[3]      "The similarly situated inquiry is a flexible, common-sense one that asks, at bottom, whether 'there are enough common factors ... to allow for a meaningful comparison in order to divine whether intentional discrimination was at play.'" Barricks v. Eli Lilly and Co., 481 F.3d 556, 560 (7th Cir. 2007).

Littletown (CSR - paygrade M); Tara Roberts (CSR - paygrade N); and Jerry Reese (CSR/Acting

Supervisor - paygrade N).  See Plaintiff's Responses to Defendants' First Set of Interrogatories,

a copy of which is attached hereto as A-60 through A-62, at No. 21.  All of these employees

perform job responsibilities the same and/or similar to Mr. Riley; however, these Caucasian

employees are classified as either an Administrative Assistant and/or Customer Service

Representative, receiving a paygrade of either "M" or "N", which is higher than Mr. Riley's pay

grade of "P".  The job descriptions published by DRBA for Administrative Assistant or

Customer Service Representative are substantially similar to the work that Mr. Riley performs in

excess of his responsibilities as an Operations Clerk.

Plaintiff performs the following clerical duties, which are part of his job description as an

Airport Operations Clerk:  welcoming and assisting visitors, notifying staff of visitors, keeping a

log of visitors, routing incoming calls and messages, creating and filing correspondence for

DRBA Operations personnel, engaging in intra-Airport communications, managing the ID badge

system, and providing support to Operations personnel.   Plaintiff however, also is expected to

and, in fact, does perform the following job duties and responsibilities in his capacity as an

Airport Operations Clerk, even though they are not  included in his job description:  controlling

flight access to the airfield, administering and evaluating written airfield driving tests,

performing credit card reconciliation, scheduling for the department, communicating and

coordinating with local, state and federal regulatory authorities regarding substantive issues,

handling inquiries regarding customs and foreign currency, and reporting to senior Airport

management.  In fact, Plaintiff performs many duties and responsibilities affiliated with the

Administrative Assistant and Customer Services Representative positions, both position having a

higher pay grade.

17

There is no genuine dispute that Plaintiff is a member of a protected class and that DRBA paid him less than other employees who are outside of the protect class. In addition, the above demonstrates that those other employees are similarly situated to Plaintiff in the relevant aspects of their respective employment. Therefore, Plaintiff has made a *prima facie* case of employment discrimination.

**III.    Issues of Fact Exist Regarding Whether the Defendants' Proffered Reasons Are Pretext for Discrimination.**

The Defendants claim that Plaintiff did not receive an increase in salary because DRBA believed that he was being compensated at a level commensurate with his job duties and responsibilities. That explanation does not account for the greater compensation received by the similarly situated, Caucasian employees identified *supra*, and the Defendants do not even address in their Opening Brief the nature of those employees' job duties and responsibilities, let alone whether they are greater than those of Plaintiff. Moreover, Defendants ignore the testimony of their own employees, Alex Coles and Consuella Petty-Jenkins, that Plaintiff should be reclassified due to the fact that he functions at a higher level than that of an Operations Clerk. Therefore, the Defendants have not met their burden under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1972), of articulating a legitimate, nondiscriminatory reason for compensating Plaintiff less than his similarly situated, Caucasian co-workers.

However, assuming *arguendo* that Defendants' contention that Plaintiff is compensated at a level commensurate with his job duties and responsibilities satisfies their burden under <u>McDonnell Douglas</u> (which it does not), Plaintiff has produced evidence that creates issues of fact as to whether that reason is pretextual. To show a genuine issue of fact as to whether an employer's proffered reasons are pretextual, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's

18

articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Fuentes v. Perskie</u>, 32 F.3d 759 (3d Cir. 1994). To do so, a plaintiff must generally demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." <u>Ozlek v. Potter</u>, 259 Fed. Appx. 417 (3d Cir. 2007) (quoting <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494 (3d Cir. 1997) (internal quotations and citations omitted)). However, "[a] plaintiff is not required to produce evidence which necessarily leads to the conclusion 'that the employer did not act for nondiscriminatory reasons.'" <u>Sempier v. Johnson & Higgins</u>, 45 F.3d 724 (3d Cir.), <u>cert. denied</u>, 515 U.S. 1159 (1995).

Defendants' contention that Plaintiff's compensation was set at a level commensurate with his job duties and responsibilities is unworthy of credence because, as described in detail *supra*, several Caucasian employees with job duties and responsibilities equal or less than those of Plaintiff received higher compensation than Plaintiff. That inconsistency alone creates an issue of fact as to the legitimacy of the Defendants' proffered reasons.

In addition, "proof of a discriminatory atmosphere may be relevant in proving pretext since such evidence 'does tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.'" <u>Ezold v. Wolf, Block, Schorr and Solis-Cohen</u>, 983 F.2d 509, 546 (3d Cir. 1992) (quoting <u>Conway v. Electro Switch Corp.</u>, 825 F.2d 593, 597 (1st Cir. 1987)). <u>See also</u> <u>Madel v. FCI Marketing, Inc.</u>, 116 F.3d 1247, 1252 (8th Cir. 1997) (finding that evidence of workplace atmosphere discriminatory to protected class "can, if sufficient together with other evidence of pretext, support a reasonable inference of... discrimination); <u>Antol v. Perry</u>, 82 F.3d 1291, 1302 (3d Cir. 1996).

19

In the instant case, Alex Coles, who is the Senior Airport Manager and Plaintiff's direct supervisor, and defendant Petty-Judkins, who is DRBA's Equal Employment Opportunity/ Recruitment Manager, both agreed with Plaintiff that he should be reclassified to a higher pay status because his job performance and duties exceeded his current job description and responsibilities.[4]  See February 27, 2008 Deposition of A. Coles at A-95 and A-96; April 2, 2008 Deposition of C. Petty-Judkins at A-77.  More importantly, Mr. Coles acknowledged that there are "racial issues" at DRBA in that African Americans are not treated fairly.  See February 27, 2008 Deposition of A. Coles at A-87 and A-88.  He discussed how he, as an African American, received unfair, disparate treatment as he was "coming up through [DRBA]" to the point that he was prepared to leave his employment at DRBA.  See February 27, 2008 Deposition of A. Coles at A-80 through A-85 and A-87 through A-92.  During her deposition, defendant Petty-Judkins echoed Mr. Coles opinion that racial discrimination is present at DRBA:

> MR. HALL:  Are you aware that Mr. Coles has said that there are problems with racial discrimination at [DRBA]?
>
> MS. PETTY-JUDKINS:  I'm sure he probably has mentioned that.  I think that we have had some issues there, yes.

See April 2, 2008 Deposition of C. Petty-Judkins at A-72 and A73.

The testimony of Mr. Coles and defendant Petty-Judkins regarding the racial issues present at DRBA, their testimony that Plaintiff's job performance exceeded his job description and paygrade, and the more favorable treatment received by Caucasian employees similarly situated to Plaintiff, when viewed together, create genuine issues of material fact regarding whether the Defendants' proffered reason is pretext for discrimination.  As such, their Motion for Summary Judgment must be denied.

---

[4]    Mr. Coles testified that he believes that his entire staff deserves a pay raise, but that does not change the fact that he agreed that Plaintiff's job performance warranted greater compensation.

20

**IV.     A Genuine Issue of Material Fact Exists Regarding Whether the Instances of Retaliation Alleged by Plaintiff as Part of His *Prima Facie* Case Constitute Materially Adverse Employment Actions.**

DRBA contends that Plaintiff has not alleged a materially adverse employment action as part of his *prima facie* case of retaliation.  However, that issue to be determined by the finder of fact - "[t]he question whether a change in an employee's job or working conditions is materially adverse, rather than essentially neutral, is one of fact… and so can be resolved on summary judgment only if the question is not fairly contestable."  Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 273-74 (7th Cir. 1996).

Regardless, Plaintiff has alleged materially adverse employment actions.  For example, Plaintiff alleges DRBA retaliated against him by denying him training, despite the fact that a slot and funding were available for him to attend.  See December 6, 2007 of R. Riley at A-97, A-98 and A-99 As DRBA admits in its Opening Brief, a denial of training can constitute a materially adverse employment action for purposes of a retaliation claim if the training would significantly contribute to the employee's professional advancement.  See Burlington Northern & Santa Fe Ry. v. White, 126 S.Ct. 2405, 2415-16 (2006).  Based on nothing more than defendant Walls' subjective opinion and the fact that the word "Executive" appeared in the title of the organization providing the training requested by Plaintiff (who is not a DRBA executive),[5] DRBA contends that said training was inapplicable to Plaintiff and, therefore, its denial of said training cannot constitute a materially adverse action.  However, DRBA's denial of said training is materially adverse to Plaintiff, even if it was not applicable to him in his current position, if it might have taught him the kinds of techniques and skills needed to advance beyond that position.  Hare v. Potter, 220 Fed. Appx. 120, 128-29 (3d Cir. 2007) (finding materially adverse employment action where employer denied management training to non-management employee because it

---

[5]     See December 6, 2007 of R. Riley at A-98 and A-99.

21

allegedly wanted to train only employees who were at a higher job grade than plaintiff). In addition, Alex Coles, who is Plaintiff's supervisor and presumably knows the requirements of Plaintiff's job better than anyone else, stated that the training would "help[ ] prepare Mr. Riley for his day-to-day job duties." See D00328. Mr. Coles' assessment that the requested training would assist Plaintiff in his current position at DRBA at least creates an issue of fact as to whether that training would have contributed to Plaintiff's professional advancement and whether DRBA's denial of such training satisfies the "materially adverse" test.

Plaintiff also claims that DRBA withheld three hours of pay from his paycheck (which Alex Coles admitted in his deposition) as retaliation for Plaintiff's complaints about race-based discrimination. See February 27, 2008 Deposition of A. Coles at A-103, A-104 and A-105. The fact that Plaintiff eventually received that pay after complaining to the Human Resources Department does not change the fact that said activity by DRBA satisfies the "materially adverse" standard. See, e.g., Baney v. Mukasey, 2008 WL 706917, *12 (N.D. Tex. March 14, 2008) (noting that temporarily withholding paycheck or insurance benefits meets "materially adverse" standard applicable to retaliation claims).

In addition, DRBA's discussion of each instance of retaliation in isolation ignores that, when viewed together, they can cumulatively allege a materially adverse employment action. See Brennan v. Norton, 350 F.3d 399, 422 n.17 (3d Cir. 2003) ("The cumulative impact of retaliatory acts may become actionable even though the actions would be *de minimis* if considered in isolation."); Timothy v. Our Lady of Mercy Medical Ctr., 2004 WL 503760, *6 (S.D.N.Y. March 12, 2004) ("Even if none of the actions that a plaintiff alleges could individually be characterized as adverse, as series of actions taken against a plaintiff may, in the aggregate, constitute such conduct.").

22

Therefore, genuine issues of material fact exist as to whether the instances of retaliation alleged by Plaintiff, viewed individually and in the aggregate, satisfy the "materially adverse" test for purposes of Plaintiff's *prima facie* case of retaliation.

**V.      A Genuine Issue of Material Fact Exists Regarding Whether the Reasons Proffered By DRBA for Its Unlawful Retaliation Are Pretextual.**

DRBA attributes the acts of retaliation alleged by Plaintiff to "failed communication" and DRBA's subjective opinion that the training requested by Plaintiff was inappropriate for his position. As explained above, the fact that Plaintiff's direct supervisor, Alex Coles, recommended that Plaintiff receive said training because it would assist him in performing his daily activities as an Airport Operations Clerk is the type of inconsistency or contradiction that creates an issue of fact as to whether DRBA's proffered reason is a pretext for discrimination. In addition, as explained *supra,* the testimony of Mr. Coles and defendant Petty-Judkins regarding the latent racial issues present at DRBA "add[s] 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to" the instances of retaliation directed at Plaintiff. Ezold, 983 F.2d at 546. Therefore, genuine issues of fact exist regarding whether DRBA's actions were motivated by a retaliatory animus.[6]

---

[6]      DRBA suggests in its Opening Brief that Plaintiff cannot establish pretext because he has not demonstrated that similarly situated DRBA employees were not subjected to the type of acts he alleges were retaliatory. However, that argument is without merit, as disparate treatment among similarly situated employees is not an element of a claim for retaliation. See, e.g., Wiley v. Glassman, 511 F.3d 151, 156 (D.C. Cir. 2007) (finding that employee was not required to offer evidence that someone similarly situated to her was promoted to establish *prima facie* case of retaliation based upon denial of promotion); Snyder v. Saberliner Corp., 101 F. Supp.2d 1239, 1245 (E.D. Mo. 1999) ("Plaintiff was not required to offer evidence of similarly situated males who were treated differently despite comparable deficiencies, or of individuals who had not complained of discrimination and who were treated preferentially, to establish her prima facie retaliation claim based on her being put on probation. Neither of these factors are part of a prima facie case of retaliation.").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the

Defendants' Motion for Summary Judgment.

Respectfully submitted,

PHILLIPS, GOLDMAN & SPENCE, P.A.

_____

JAMES P. HALL, ESQUIRE (#3293)
1200 North Broom Street
Wilmington, DE  19806
(302) 655-4200
Attorney for Plaintiff,
Ronald S. Riley

DATE:  June 10, 2008

24

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

RONALD S. RILEY,                      :
                                      :
          Plaintiff,                  :        C.A. No. 05-746-(MPT)
                                      :
     v.                               :        Related Case:
                                      :        C.A. No.: 05-126 (MPT)
THE DELAWARE RIVER AND                :
BAY AUTHORITY,                        :
                                      :
          Defendant,                  :

## CERTIFICATE OF SERVICE

I, James P. Hall, Esquire, hereby certify that on June 10, 2008, I electronically filed a true and correct copy of the foregoing **Plaintiff's Amended Answering Brief In Opposition to Defendants' Motion for Summary Judgment** with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Adria B. Martinelli, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

                                   PHILLIPS GOLDMAN & SPENCE, P.A.


                                   _____
                                   JAMES P. HALL, ESQUIRE (#3293)
                                   1200 North Broom Street
                                   Wilmington, DE 19806
                                   Telephone:   (302) 655-4200
                                   Facsimile:   (302) 655-4210
                                   Attorney for Plaintiff


Date:  June 10, 2008