IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RONALD S. RILEY, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|     v. | )   C.A. No. 05-746 (MPT) |
| | ) |
| THE DELAWARE RIVER AND BAY | )   (Consolidated) |
| AUTHORITY, JAMES JOHNSON, | ) |
| Individually, JAMES WALLS, Individually, | ) |
| TRUDY SPENCE-PARKER, Individually, | ) |
| and CONSUELLA PETTY-JUDKINS, | ) |
| Individually. | ) |
| | ) |
|       Defendants. | ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6613
Facsimile: (302) 576-3282, 3314
E-mail: wbowser@ycst.com; amartinelli@ycst.com
*Attorneys for Defendant*

Date: June 26, 2008

**TABLE OF CONTENTS**

**Page**

TABLE OF CITATIONS ................................................................................................................ ii

SUMMARY OF ARGUMENT ........................................................................................................1

ARGUMENT ....................................................................................................................................2

I.  SUMMARY JUDGMENT SHOULD BE GRANTED ON
    RILEY'S RACIAL DISCRIMINATION CLAIMS ........................................................2

    A.  The Fact That Riley's Wages Were Negotiated Into A
        Collective Bargaining Agreement Constitutes A Legitimate
        Non-Discriminatory Reason For The Authority's Refusal
        To Raise His Wages ..............................................................................................2

    B.  Riley Has Not Offered Any Evidence To Rebut DRBA's
        Legitimate, Non-Discriminatory Reason For Not Changing
        His Salary ...............................................................................................................3

    C.  Riley Has Not Met His Burden of Showing Similarly-
        Situated Comparators Were Treated Differently ...................................................7

II. SUMMARY JUDGMENT SHOULD BE GRANTED ON
    RILEY'S RETALIATION CLAIMS ..............................................................................9

CONCLUSION ................................................................................................................................13

## TABLE OF CITATIONS

**Cases**

Aman v. Cort Furniture Rental Corp.
   85 F.3d 1074 (3d Cir. 1996) .................................................................................... 9

Amati v. United States Steel Corp
   No. 04-1442
   2007 U.S. Dist. LEXIS 82079, (W.D. Pa. Nov. 2, 2007) ........................................ 11

Beaumont v. Tex. Dep't of Criminal Justice
   468 F. Supp. 2d 907 (E.D. Tex. 2006) ..................................................................... 10

Burlington Northern & Santa Fe Railway Co. v. White
   548 U.S. 53
   126 S.Ct. 2405 (2006) ................................................................................................ 9

DeHart v. Baker Hughes Oilfield Operations
   214 Fed. Appx. 437 (5th Cir. 2007) ......................................................................... 12

Hall v. Bell Atl. Corp.
   152 F. Supp. 2d 543 (D. Del. 2001) ........................................................................... 8

Hare v. Potter
   220 F. App'x 120 (3d Cir. 2007) .............................................................................. 10

Hohe v. Midland Corp.
   613 F. Supp. 210 (E.D. Mo. 1985) ............................................................................ 9

Keck v. PPL Elec. Utils. Corp.
   No. 02-4071
   2003 U.S. Dist. LEXIS 12528 (E.D. Pa. July 21, 2003) ........................................... 2

Marshall v. Western Grain Co.,
   838 F.2d 1165 (11th Cir. 1988) ............................................................................ 3, 8

Monaco v. American Gen'l Assur. Co.,
   359 F.3d 296 (3d Cir. 2004) ...................................................................................... 8

Red v. Potter
   211 F. App'x 82 (3d Cir. 2006) ................................................................................. 7

Sharp v. Continental Express Airlines, Inc.
   No. 98-cv-3818
   2000 U.S. Dist. LEXIS 1431, (E.D. Pa. Feb. 3, 2000) ............................................ 11

Simpson v. Kay Jewelers, Inc.
   142 F.3d 639 (3d Cir. 1998) .................................................................................................. 7

Solomon v. Phila. Newspapers, Inc.
   No. 05-05326
   2008 U.S. Dist. LEXIS 41978, (E.D. Pa. May 21, 2008) ........................................................ 11

Taylor v. United Parcel Serv., Inc.
   237 F. App'x 34 (6th Cir. 2007) ............................................................................................. 2

Visser v. Packer Eng'g Assoc., Inc.,
   924 F.2d 655 (7th Cir. 1991) .................................................................................................. 5

Walters v. Jewel Food Stores
   No. 96 C 3536
   1998 U.S. Dist. LEXIS 12499 (N.D. Ill. Aug. 4, 1998) ............................................................ 2

Whitmire v. Kvaerner Philadelphia Shipyard, Inc.
   No. 05-253
   2007 U.S. Dist. LEXIS 46910 (E.D. Pa. June 27, 2007) ........................................................ 2

**SUMMARY OF ARGUMENT**

Defendants have provided a legitimate, non-discriminatory reason for Plaintiff, Ronald S. Riley's ("Riley") salary: it is established pursuant to a collective bargaining agreement. Riley has not offered any evidence to cast doubt on this reason. Alex Coles ("Coles") and Consuella Petty-Judkins ("Petty-Judkins") testified unequivocally that they had no reason to believe any of the Delaware River and Bay's ("DRBA" or the "Authority") actions with respect to Riley were motivated by discrimination or retaliation.

Riley offers nothing more than his own opinion his salary is low, supplemented by a list of incomparable employees who are outside the bargaining unit. Moreover, the allegedly discriminatory and retaliatory acts were perpetrated by members of the same protected class. Given these facts, Riley has not met his burden to demonstrate that the DRBA's non-discriminatory reason is pretextual.

# ARGUMENT

## I. SUMMARY JUDGMENT SHOULD BE GRANTED ON RILEY'S RACIAL DISCRIMINATION CLAIMS

### A. The Fact That Riley's Wages Were Negotiated Into A Collective Bargaining Agreement Constitutes A Legitimate Non-Discriminatory Reason For The Authority's Refusal To Raise His Wages

The fact that Riley's wages were established in a Collective Bargaining Agreement ("CBA") constitutes a legitimate, non-discriminatory reason for the Authority's denial of his request for a pay raise.[1]  See Walters v. Jewel Food Stores, No. 96 C 3536, 1998 U.S. Dist. LEXIS 12499, at *8 (N.D. Ill. Aug. 4, 1998) (in response to plaintiff's allegation that her salary was the result of racial discrimination, defendant "offered a legitimate, nondiscriminatory reason for the pay difference . . . both individuals were paid according to the union pay schedule."); see also Taylor v. United Parcel Serv., Inc., 237 F. App'x 34, 37 (6th Cir. 2007) (affirming summary judgment in favor of employer where employer reduced employee's pay because "the collective bargaining agreement required it to do so"); Whitmire v. Kvaerner Philadelphia Shipyard, Inc., No. 05-253, 2007 U.S. Dist. LEXIS 46910, at *12 (E.D. Pa. June 27, 2007) (granting summary judgment where employer offered legitimate non-discriminatory reason why plaintiffs did not receive the training they requested—"their level of training was dictated by the terms of the collective bargaining agreement"); Keck v. PPL Elec. Utils. Corp., No. 02-4071; 2003 U.S. Dist. LEXIS 12528, at *17  (E.D. Pa. July 21, 2003) (employer proferred a legitimate, non-discriminatory reason by asserting its actions were based on the terms of the CBA).

---

[1] The CBA was formally executed in February 1, 2006, but the negotiation as to its terms began in September 2004, after the Union won the election.  (A25, A28).  From this point forward, DRBA had to negotiate with the Union with respect to union members' wages, this constitutes a legitimate, non-discriminatory reason as to why DRBA did not unilaterally change Riley's salary.

"Where the collective bargaining agreement is neither discriminatory on its face nor in its application, the policies of Title VII give way to federal labor policies. As a matter of federal labor law, courts will not intervene in the collective bargaining process and require the employer to take steps unauthorized by the duly-negotiated agreement. This principle applies even in cases where the concerns of Title VII are indirectly implicated." Marshall v. Western Grain Co., 838 F.2d 1165, 1169 (11th Cir. 1988) (citations omitted). Riley has not alleged that the collective bargaining agreement was discriminatory on its face; nor, as discussed below, has he provided evidence that it was applied in a discriminatory fashion. Therefore, this court should not intervene with Riley's wages, as established by the collective bargaining process.

> B. **Riley Has Not Offered Any Evidence To Rebut DRBA's Legitimate, Non-Discriminatory Reason For Not Changing His Salary**
>
>> 1. **Riley Has Not Presented Evidence That The Collective Bargaining Agreement Was Enforced Inconsistently**

Riley has not presented evidence sufficient to rebut the Authority's legitimate, non-discriminatory reason for not raising his pay. Riley asserts in his brief that two Caucasian union members, Barry Arnold and Michael Casey, were recently "reclassified and/or promoted to a higher pay grade." Although Riley attempts uses the two terms interchangeably; the difference is substantial. Riley asserts that Stephen Williams, Director of Airports ("Williams") "failed to meaningfully define or differentiate what constitutes 'promotion' and 'reclassification' at the DRBA." (D.I. 63 at 13). Williams, however, explained that the "two [caucasian union members] submitted their qualifications to a job offer that had been publicly posted. And they were selected based on a process." (Ex. 1, Williams Deposition Transcript at p. 40).

The distinction, therefore, is that there was a determination that there was a need for the positions, the openings were publicly posted and competed for within the Authority; Arnold and Casey applied for positions; and as a result of this process the positions were

awarded to them. (Ex. 2 , Walls Declaration at ¶ 7-9). They were compensated for those positions as outlined in the CBA. (A28). (Ex. 2 at ¶10). If Riley believed that Williams' explanation of the distinction was insufficient, it was his responsibility to obtain testimony from a witnesses better qualified to answer the question.[2]

Riley seeks to compare apples to oranges, and has in no way has shown inconsistent enforcement of the CBA. In fact, Riley was afforded the exact same promotional opportunity as Arnold and Casey, when he applied for the ASOS position, for which he would have received a salary a grade higher than his current position. (A89).[3] Riley competed for the position, was awarded it, and ultimately decided not to take it.[4] (A89-90). Instead, he seeks greater compensation without taking on any more, or different, responsibilities.

Riley also ignores the fact that no one at the Authority establishes pay grades. Pay grades are submitted to an outside group, the Hay Group, which establishes the pay grade for each position based on their review of the job description, a questionnaire completed by the employee in the position and their supervisor, and interviews conducted with the employee. (A11-12). Thus, the job description is a critical component of the pay grade determination. Williams testified that he believes that Riley's job description accurately reflects his responsibilities. (Ex. 1, at p. 47). In addition, Riley met on at least one occasion in 2006 with Williams, Walls, and a union representative. During the meeting, the participants carefully reviewed Riley's job responsibilities and confirmed they matched and did not exceed his job

---

[2] Williams is the Director of Airports; he is not involved in the promotion or reclassification process. James Walls, whom Williams identified in his testimony, was most knowledgeable about this process; as would be Spence-Parker or another member of the human resources department. (Ex. 1, at p. 40-41).

[3] All citations to "A__" are to the Appendix to Defendants' Opening Brief in Support of Their Motion for Summary Judgment, previously filed with the Court.

[4] Among other reasons for his decline of the position, he cited to the work schedule, which would interfere with his second job. (A148-149).

description. (Ex. 2 at ¶11; Ex. 3, Williams Declaration at ¶7). Riley has presented no evidence suggesting these legitimate, non-discriminatory reasons for his salary are pretextual.

### 2. Neither Coles' Nor Petty-Judkins' Testimony Lends Support To Riley's Argument That The DRBA's Reasons Were Pretextual

Riley claims that the testimony of Coles and Petty-Judkins regarding alleged racial issues at the DRBA creates a genuine issue of material fact regarding whether or not its legitimate non-discriminatory reason for Riley's pay rate. Coles and Petty-Judkins testified in a very general manner that there were "racial problems" at the Authority. This testimony is too vague to suggest anything with respect to racial discrimination at the Authority. It does not reflect any wrongdoing by DRBA management; it suggests only that there may be racial tension at the Authority, as unfortunately exists in and outside of workplaces across America.

At most, the statement constitutes speculation about DRBA's motivation for some of its actions. Even if read in this light, neither witness reports admissions from Defendants about their motive, nor do they report primary facts from which a reasonable person would infer a discriminatory motive. "Discrimination law would be unmanageable if disgruntled employees–friends of the plaintiff and often people in the same legal position as plaintiff–could defeat summary judgment by . . . speculating about the defendant's motives." Visser v. Packer Eng'g Assoc., Inc., 924 F.2d 655, 659 (7th Cir. 1991) (granting summary judgment for defendant and rejecting as evidence of discrimination speculation by other employees as to the employer's discriminatory motive). As such, Petty-Judkins' and Coles' speculations are insufficient to cast any doubt as to DRBA's legitimate, non-discriminatory motive.

In sharp contrast to the vague and unsupported assertions offered by Coles and Petty-Judkins as to general "racial problems,"[5] their testimony as to the Authority was motivated by discrimination or retaliation with respect to Riley was clear and unequivocal:

> Q:  Do you believe that the Authority has discriminated against Ron because he's African American?
>
> A:  No.
>
> Q:  Do you believe that the Authority has retaliated against Ron because he filed a grievance complaint against the Authority in a lawsuit?
>
> A:  No.

(Ex. 4 at p. 70).

> Q:  Do you believe that Mr. Riley has been subject to racial discrimination in his employment with the Authority?
>
> A:  No.

(Ex. 5, Petty-Judkins Deposition Transcript at pp. 36-37).

> Q:  Are you aware of any retaliation or different treatment that Mr. Riley's received because he's filed a lawsuit?
>
> A:  No.

(Ex. 5 at p. 41).

Therefore, to the extent that Coles' or Petty-Judkins' testimony lends any "color" to this case, it would support DRBA's position that Riley's wages had nothing to do with his race or his lawsuit.

Riley further claims that Coles and Petty-Judkins' opinion that Riley should be paid more also supports pretext. Each and every time (at least three) that Coles testified Riley should be getting more pay, he said so in the context of his assertion that _everyone_ in his

---

[5] Coles testified that "[w]hen I say you have racists, you do but it's probably both sides. I wouldn't say whites is racist, blacks as well within the Authority." (Ex. 4, Coles Deposition Transcript at p. 79).

department should be getting paid more, black and white employees alike. (Ex. 4 at p. 37, 68, 70). Riley buries this fact in a nine-point-sized footnote, asserting that it "[did] not change the fact that he agreed that Plaintiff's job performance warranted greater compensation." (D.I. 63 at 20).

To the contrary, this significant qualification obliterates any value the statement might have with respect to establishing pretext. Coles' testimony that his entire group (including Riley) deserves more pay amounts to nothing more than his acting as a loyal advocate for his subordinates. It does not make it any more likely that DRBA's reasons were pretextual.

Petty-Judkins' testimony as to this issue was similarly qualified by her opinion that the airport staff <u>as a whole</u> should be paid more. (Ex. 5 at p. 37). "I agree that his job probably should be reclassified to a higher pay status. I had even mentioned that to Walls, just reclassify him to a higher pay status, but I had also mentioned about the airport safety people because we had to continuously repost it and nobody wanted it due to the salary." (Ex. 5 at p. 37). Just as with Coles, the context of her testimony, together with her unequivocal statement that she did not believe that Riley was discriminated against or retaliated against do not support a pretext argument.

### C. Riley Has Not Met His Burden of Showing Similarly-Situated Comparators Were Treated Differently

Riley bears the burden of demonstrating that similarly situated persons were treated differently. <u>Simpson v. Kay Jewelers, Inc.</u>, 142 F.3d 639, 645 (3d Cir. 1998). Contrary to Riley's contention, courts, including this one, have routinely addressed this issue at the summary judgment stage. <u>See</u>, <u>e.g.</u>, <u>Red v. Potter</u>, 211 F. App'x 82, 84 (3d Cir. 2006) (affirming the district court's dismissal of plaintiff's Title VII claim based on the fact that the comparator employees she used were not similarly situated); <u>Hall v. Bell Atl. Corp.</u>, 152 F. Supp. 2d 543,

550-51 (D. Del. 2001) (granting summary judgment as to discrimination claim, holding that "plaintiff has failed to identify any white employees who are similarly situated; therefore, he has failed to demonstrate that defendants' conduct toward him is racially motivated").

Clearly, Riley has not met his burden of showing similarly situated employees who are similar in "all relevant aspects." Monaco v. American Gen'l Assur. Co., 359 F.3d 296, 305 (3d Cir. 2004). Riley has identified fifteen other employees, all with the titles of Customer Service Representative ("CSR") or Administrative Assistant ("AA"), whom he claims are similarly situated.[6] However, none of these employees is a member of the collective bargaining unit. (Ex. 2 at ¶4). By virtue of this fact alone, they are not similarly situated for salary purposes. See, e.g., Marshall v. Western Grain Co., 838 F.2d 1165 (11th Cir. 1988). In Marshall, the Eleventh Circuit Court of Appeals squarely rejected the plaintiff's allegation that non-bargaining agreement unit employees could be comparable to bargaining unit employees:

> Under the theory set forth by the plaintiffs, the courts are asked to provide a remedy based upon the contention that non-minority, non-union employees were being treated differently from minority, union employees." Id. at 1170. "For several reasons, we conclude that Count One does not state a claim of "discrimination" under Title VII. First and foremost, because of their unique status in the workplace, bargaining unit employees are *never* similarly situated with non-bargaining unit employees.

Marshall, 838 F.2d at 1170 (emphasis added).

Even if the Court were to hold that Riley's position could be compared to a non-union position for purposes of salary review, Riley cannot show that he is "performing work substantially equal to that of [white employees] who [are] were compensated at higher rates than

---

[6] Notably, he excludes from his list three African American individuals he identified in his interrogatory responses who also hold the title of CSR or AA (Carmen Acevedo, Bernadette Milton, and Grace Cramer). (D.I. 60 at A62). To the extent Riley's list sheds any light with respect to a pretext argument, the fact that there are at least three African American employees with these titles and paygrades would refute any such suggestion.

[he is]." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1087 (3d Cir. 1996) (holding that positions were not "substantially equal" where job duties were different and defendant showed varying pay structures between different departments). Riley's responsibilities are not "substantially equal" to those of an AA or CSR. Although there is some overlap, there are many responsibilities of both AAs and CSRs that differ substantially from Riley's responsibilities. (Ex. 2 at ¶12; Ex. 3 at ¶4). For instance, the AA position requires an ability to handle highly confidential matters and preparing memos, letters, and general correspondence in support of the business unit. (Ex. 2 at ¶14; Ex. 3 at ¶6). Riley's clerk position requires neither of these. (Ex. 2 at ¶14; Ex. 3 at ¶6). The CSR position requires "handling and resolving customer complaints," which Riley's position does not. (Ex. 2 at ¶13; Ex. 3 at ¶5).

## II.     SUMMARY JUDGMENT SHOULD BE GRANTED ON RILEY'S RETALIATION CLAIMS

Whether considered collectively, or individually, the actions alleged by Riley would not "dissuade[] a reasonable worker from making or supporting a charge of discrimination." See Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2415-16 (2006). Instead, they constitute nothing more than "petty slights or minor annoyances . . that all employees experience." Id. Riley has presented absolutely no evidence suggesting that these actions were motivated by retaliation. Furthermore, they were each perpetrated by a member of the same protected class (Williams or Coles), making such an interpretation even more implausible.

Riley argues that the fact that other employees he identified received training supports the notion that the denial of his training was due to fact he had filed a lawsuit. In Defendants' opening brief, they cite to Riley's own testimony that the identified employees held entirely different positions, with different responsibilities, and received training directly relevant

to their positions (and not—even according to Riley—at all relevant to his position).  (A125-128).

Walls' decision to deny the training was based on more than the fact that the word "executive" appeared in the title of the organization; it was based on a review of the course description and consultation with Stephen Williams as to whether the training was appropriate for Riley's position.  (A171-172; A178).  Walls and Williams concurred that the training was not applicable to the operations clerk position.  Moreover, the training would not assist Riley in advancing within the organization.  Williams had previously counseled Riley that there was no opportunity for advancement at the airport from the clerk position (regardless of what training he received).  (A178).  Williams advised him that the best way to move up within the organization was to accept the ASOS position, and Riley chose to ignore that advice.  (A178).

This fact differentiates Riley's training from that in Hare v. Potter, 220 F. App'x 120, 128-29 (3d Cir. 2007), cited in Plaintiff's brief.  In the Hare case, the denied training was characterized by the plaintiff's manager as an important "stepping stone to advancement."  Id. at 129.  To the contrary, in Riley's case, it "is wholly speculative and unsupported by the record" that the denied training could have helped him get a promotion.  Beaumont v. Tex. Dep't of Criminal Justice, 468 F. Supp. 2d 907, 930 (E.D. Tex. 2006) (holding that the denied training did not constitute a materially adverse action, where there was no evidence that it affected plaintiff's opportunity for advancement).

Riley's claim that the hours removed from his paycheck constitutes a materially adverse action is similarly unavailing.  Absent unusual circumstances, the temporary withholding of pay does not meet the "materially adverse" standard for retaliation claims.  See, e.g., Solomon v. Phila. Newspapers, Inc. No. 05-05326, 2008 U.S. Dist. LEXIS 41978, at *48-49

(E.D. Pa. May 21, 2008) (citing Sharp v. Continental Express Airlines, Inc., No. 98-cv-3818, 2000 U.S. Dist. LEXIS 1431, at *20 (E.D. Pa. Feb. 3, 2000) (holding that "a one-week delay in receiving pay for a single overtime shift . . . does not constitute an adverse employment action"); Amati v. United States Steel Corp., No. 04-1442, 2007 U.S. Dist. LEXIS 82079, at *70-71 (W.D. Pa. Nov. 2, 2007) (holding that delayed pay did not constitute a materially adverse employment action). Where, as in this case, the amount was relatively small, and there is no evidence that the Authority did not take prompt action once notified of the error, there is no materially adverse action. Solomon, 2008 U.S. Dist. LEXIS at *48-49.

Moreover, Coles testified that he routinely goes into the payroll system and adjusts his employees' time accordingly when he had information that their reported time was incorrect. (Ex. 4 at p. 62). Therefore, the evidence reflects that Riley was not singled out by this action. See Amati, 2007 U.S. Dist. LEXIS at *70-71 (noting that the plaintiff's delayed pay was "the sort of trivial incident that does not establish retaliation under Title VII; there is no evidence that [the plaintiff] was injured or harmed, and the Plaintiff was not singled out but was one of a number of employees who experienced the same aggravation").

The remaining instances of alleged retaliation (mostly involving conversations about Riley's shoes) are so *de minimus* and trivial that Riley does not even belittle his argument by addressing them. Clearly, they are not "materially adverse" individually; nor do they serve to elevate the actions described above to a material status.

All of the allegedly retaliatory actions taken together would not deter a reasonable employee, nor did they, in fact, deter Riley in any way from pursuing his case. As noted in Defendant's Opening Brief, since the allegedly retaliatory actions in 2006, Riley has filed an additional lawsuit, two internal grievances, and two union grievances. (A91; A98). See DeHart

v. Baker Hughes Oilfield Operations, 214 Fed. Appx. 437, 442 (5th Cir. 2007) (holding that written warning would not have dissuaded a reasonable worker from pursuing claims when there were colorable grounds for the warning and plaintiff later filed a charge with the EEOC).

## CONCLUSION

For the foregoing reasons, as well as those asserted in Defendants' opening brief, summary judgment should be entered in favor of the Defendants.

YOUNG CONAWAY STARGATT & TAYLOR, LLP


*/s/ Adria B. Martinelli*
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6613
Facsimile: (302) 576-3282, 3314
E-mail: wbowser@ycst.com; amartinelli@ycst.com
*Attorneys for Defendants*


Date:  June 26, 2008