Exhibit 1

WILLIAMS, STEPHEN

Page 1

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE


RONALD S. RILEY          :  C.A. No. 05-746 (MPT)
     Plaintiff          :  C.A. No. 07-336 (MPT)
                         :
  - vs -                 :
                         :
THE DELAWARE RIVER AND BAY  :
AUTHORITY, JAMES JOHNSON,   :
Individually, JAMES WALLS,   :
Individually, TRUDY SPENCE-  :
PARKER, Individually, and    :
CONSUELLA PETTY-JUDKINS,     :
Individually             :
     Defendants          :


          ORAL DEPOSITION OF STEPHEN WILLIAMS, taken before

Nancy R. Toner, Registered Professional Reporter, Notary

Public, at the offices of Young, Conaway, Stargatt and

Taylor, 1000 West Street, Wilmington, Delaware on Wednesday,

February 27, 2008, commencing at 11:55 a.m.

                    KARASCH & ASSOCIATES
            REGISTERED PROFESSIONAL REPORTERS
                 PENNSYLVANIA AND DELAWARE
                      800-621-5689

WILLIAMS, STEPHEN

Page 40

1    Mr. Coles?

2        A.    Mr. Walls explained the nature of that

3    issue relative to promotional or reclassifications

4    as they were alleged.  And Mr. Walls explained

5    somewhat in detail the methodology and the process

6    by which two individuals in the DRBA were promoted,

7    were given a pay increase, and then what happened

8    thereafter.

9        Q.    They were two union members?

10       A.    Yes.

11       Q.    And they were promoted and given a pay

12   increase?

13       A.    Yes.

14       Q.    And what was Mr. Walls' explanation, if

15   any, as to why two union members were promoted and

16   given a pay increase, yet Mr. Riley was not given

17   that opportunity based on the fact that he was a

18   union member?

19       A.    The two individuals submitted their

20   qualifications to a job offer that had been publicly

21   posted.  And they were selected based on a process.

22            I emphasize the word "promotion" based on

23   a selection process is my understanding.  I

24   distinguish that between that and a reclassification

25   or adjustment.  It's my understanding how it's been

## WILLIAMS, STEPHEN

1    explained to me.

2        Q.    And this is a decision made by human

3    resources or Mr. Walls?  It's above -- you didn't

4    have any involvement in deciding whether to promote

5    these two individuals or not, correct?

6        A.    Right, correct.

7        Q.    Did you have any information about the

8    promotion of these two union individuals at all

9    other than what was talked about at the meeting last

10   week?

11       A.    No.

12       Q.    Were the two individuals that received

13   promotions who were members of the union, were they

14   white?

15       A.    I don't know the race of the individuals.

16       Q.    Do you know the names of the individuals?

17       A.    I do not know.

18       Q.    Mr. Coles recalled the first name of one

19   of the individuals was Barry and that that

20   individual was white.  Does that help refresh your

21   recollection as to the full name or whether the

22   person was white or not?

23       A.    No.

24       Q.    Did Mr. Walls or anyone else at the

25   meeting indicate that the union was threatening to

WILLIAMS, STEPHEN

Page 47

1      Q.    You don't know?

2      A.    I don't believe they do.  By saying no, I

3  don't mean I don't know.

4      Q.    You don't believe they do?

5      A.    No.

6      Q.    You think that Mr. Riley's job description

7  accurately portrays or depicts what he does on a

8  day-to-day business as an operations clerk?

9      A.    Yes.

10      Q.    Are you aware that Mr. Riley has testified

11  that there are issues that or job responsibilities

12  he has that he does not believe are in his job

13  responsibility description?

14      A.    Yes.

15      Q.    You saw that part of his deposition

16  testimony?

17      A.    I have not.

18      Q.    What information do you have about the job

19  responsibilities that Mr. Riley performs that exceed

20  that of an operations clerk according to Mr. Riley?

21      A.    Okay.  Not as a result of the deposition.

22  I have just -- I just have tangential information

23  about how Mr. Riley believes his job description

24  doesn't reflect what his daily tasks are.

25      Q.    Do you have any specifics in terms of what

Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RONALD S. RILEY,                    )
                                    )
            Plaintiff,              )
                                    )
     v.                             )    C.A. No. 05-746 (MPT)
                                    )
THE DELAWARE RIVER AND BAY          )    (Consolidated)
AUTHORITY, JAMES JOHNSON,           )
Individually, JAMES WALLS, Individually,)
TRUDY SPENCE-PARKER, Individually,  )
and CONSUELLA PETTY-JUDKINS,        )
Individually,                       )
                                    )
            Defendants.             )

## DECLARATION OF JAMES H. WALLS

I, James H. Walls, under penalty of perjury, do hereby declare as follows:

1.    I am the Chief Operations Officer ("COO") of the Delaware River and

Bay Authority ("DRBA"), a position I have held since March 3, 2003.

2.    Of the fourteen employees identified on pp. 16-17 of Riley's Answering

Brief, none is a member of a bargaining unit.

3.    With the exception of Kristen Flocco, all identified employees hold the

title of Customer Service Representative ("CSR") or Administrative Assistant ("AA").

4.    No CSRs or AAs are a member of Local 542, the union to which Riley

belongs.

5.    Kristen Flocco, whom Riley identifies as an "Airport Clerk" has not been

employed at the Authority since March 23, 2006.

6.    Barry Arnold ("Arnold") and Michael Casey ("Casey") are members of

the Local 542.

7.    Openings were posted within the Authority for the position of Electronic Systems Technician III on May 6, 2006.  See Exhibit A.

8.    Arnold and Casey were the only internal candidates to apply for the position.

9.    Following an interview and review of their qualifications, they were selected for the position.

10.    As a result of this selective process, they Arnold and Casey were promoted to a new position which paid at a higher pay grade.

11.    On at least one occasion in 2006, I met with Riley, Stephen Williams, and a union representative.  During that meeting, we carefully reviewed Riley's job responsibilities and confirmed that they matched and did not exceed his job description.

12.    Based upon my review of the relevant job descriptions and my knowledge of the general responsibilities of these positions, it is my conclusion that Riley's responsibilities are not substantially equal to that of a CSR or AA.

13.    CSRs, as reflected in the job description contained in Riley's Appendix at A-24 and attached hereto as Exhibit B, are responsible for "handl[ing] large sums of money" and "handling and resolving customer complaints/problems in a courteous, professional manner." The Operations Clerk position does not have either of these responsibilities.

14.    AAs, as reflected in the job description contained in Riley's Appendix at A22-23 and attached hereto as Exhibit C[1], are responsible for preparing memos, letters, and

---

[1] Since 2004, when the AA job description (Police Department) supplied by Riley was posted, the AA job descriptions have been revised and standardized, so that there is only one AA job description used by all departments.  A copy of that description is attached hereto as Exhibit D. That description includes the substantially the same language described above in paragraph 14, and distinguishing that position from the Operations Clerk position.

general correspondence in support of assigned business unit activities. The AA position also requires dealing with "highly confidential" matters and requires discretion in dealing with managers, supervisors, and employees. The Operations Clerk position does not require these responsibilities.

I declare under penalty of perjury that the foregoing is true and correct.

_____
JAMES H. WALLS

Dated: June 26, 2008
Wilmington, Delaware

Christine D Johnson
6/26/2008
CHRISTINE D. JOHNSON
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Sept. 17, 2009

Exhibit A

**\*\* Position open only to current permanent full-time employees \*\***

## ELECTRONIC SYSTEMS TECHNICIAN III

*Location:* Lewes, DE

*Salary:* $46,004    (Grade K)

Opening Date:  May 5, 2006                    Closing Date:  May 19, 2006

**POSITION SUMMARY**

This is the advanced classification of a skilled electronic systems technician at the Delaware River and Bay Authority. Employees in this classification primarily service and support the electronic systems and equipment located at the *Lewes Ferry Facilities, the Delaware Air Park (DAP) and the Civil Air Terminal (CAT)*. The electronic systems and equipment serviced and supported by this classification include: *Fare Collection, Intercom, Life Safety, RF Communications, Cabling, Telephone, Cellular Telephone, Pagers/Paging and Others*. Servicing and supporting the Authority's electronic systems and equipment will require travel to other facilities as needed to support Authority operations. Technicians in this classification must be self-sufficient and work independently on structured and unstructured activities using existing and acquired technical skills and knowledge. An Electronic Systems Technician III will lead problem-solving teams using the necessary technical, interpersonal, and facilitation skills to ensure successful activity completion. Employees in this classification are also required to document service activities and generate reports using a combination of verbal and written communication skills. This position is a bargaining unit position that is represented by International Union of Operating Engineers, Local 542.

Electronic Systems Technician IIIs provide leadership, guidance, instruction, and assistance to other Electronic Systems Technicians. Additionally, employees in this classification assist the Department Supervisor/Manager plan, coordinate, and implement departmental activities and projects. Employees in this classification are considered essential, FLSA non-exempt

D00633

employees and are subject to call twenty-four (24) hours a day, as may be required to maintain continuous operation of the electronic systems/equipment at the Delaware River and Bay Authority. This position reports to the Lewes Ferry Terminal for work, unless otherwise directed, and receives supervision from the Director of Technical Operations.

The work assigned may be performed internal or external to any Authority building or structure and at great heights. These tasks may be performed over roadways, over waterways, on towers and on, in or under bridges. Personnel assigned to the classification shall maintain a detailed knowledge of appropriate and/or established safety requirements, procedures and precautions for all assigned duties. Additionally, technicians shall maintain, exercise, and monitor safety requirements, procedures and precautions to prevent/reduce personal injuries and loss/damage of Authority property.

## REQUIRED KNOWLEDGE, SKILLS, AND ABILITIES

- Detailed knowledge of analog and digital electronics and fault isolation techniques
- Detailed knowledge of proper test equipment operating procedures
- Detailed knowledge of electronic/electrical safety and soldering techniques
- Detailed knowledge of body mechanics and ergonomics
- Detailed knowledge of and the ability to use office application software and office equipment
- Ability to read, comprehend, and use schematics during fault identification/isolation
- Ability to make independent decisions
- Ability to climb stairs, consisting of at least ten (10) steps, more than twenty-(20) time per scheduled work day
- Ability to reach or place items at ankle level, waist level, or above the head without assistance
- Ability to work from heights exceeding sixty (60) feet above the ground
- Ability to lift thirty-five (35) pound loads without assistance
- Ability to work within limited, restricted, and/or confined areas
- Ability to climb vertical ladders exceeding fifty (50) feet in height

## MINIMUM QUALIFICATIONS

- Valid driver's license
- Associate Degree in Electronics, Computer Science/Information, Engineering, or other related field from an accredited college or a minimum of six years technical service experience in one or more of the following areas: general electronics, telephone KSU/PBX systems, life safety systems, or radio communications.

D00634

- A valid FCC General Radiotelephone Operator's License or approved equivalent is preferred. A candidate may be selected for this classification without a valid FCC General Radiotelephone Operator's License or approved equivalent. However, the candidate shall obtain the required license within 120 days worked in this position.

**********************

Interested applicants may apply on-line at www.drba.net or submit an application or resume to:

Delaware River and Bay Authority
Human Resources Department
P.O. Box 71
New Castle, DE 19720
FAX (302) 571-6420

Trudy Spence-Parker
Chief Human Resources Officer

D00635

Exhibit B

**DELAWARE RIVER AND BAY AUTHORITY**

| | |
|---|---|
| Department: | Toll Operations/Ferry Operations |
| Position Title: | Customer Service Representative |
| Status: | Non Exempt |
| Grade: | N |
| Reports To: | Supervisor |

## I.     POSITION SUMMARY

This is an essential customer service position for the Authority.  Provides courteous, professional service to customers, accommodates customer requests regarding DRBA crossings, and resolves customer inquiries in a timely manner.  Responsible for accurate money handling, including cash, check and credit card transactions as required, may maintain required bank, may make daily deposit of funds and completes required reports. This employee may, at times, assist the supervisory staff with training and mentoring new employees, handling commercial accounts and group sales, updating customer service and group sales databases, distributing promotional materials, conducting data entry for customer surveys, and performing other administrative support duties as needed. This employee is responsible for following established safety procedures to protect self, co-workers and public from harm. Employees within this classification may be required to work rotating shifts that involve evenings, weekends and holidays.

## II.     ESSENTIAL DUTIES AND RESPONSIBILITIES

- Interacts with the public, customers, and businesses in a professional manner; providing accurate  information regarding DRBA crossings
- Answers phone calls, performs telephone sales and business transactions, handles business related out-calls
- Provides excellent customer service, including handling and resolving customer complaints/problems in a courteous, professional manner
- Processes customer information and transactions using a personal computer using a variety of computer applications including Microsoft Windows applications, toll software, and/or other applications
- Provides accurate information, researches customer issues, and resolves disputes in a timely manner
- Handles large sums of money as required and follows policies regarding change funds (banks) and deposits
- Accepts and accurately processes financial transactions including cash, checks, credit cards, and bank debit cards required for various customer transactions
- Completes required reports
- Provides traveling directions, maps, brochures and information about local

**A-24**

attractions to customers
- Follows established safety practices


### III.   REQUIRED KNOWLEDGE, SKILLS, AND ABILITIES

- Excellent telephone and interpersonal customer service skills
- Working knowledge of call center sales and customer service
- Decision making and conflict resolution skills
- Ability to operate a variety of office equipment including a personal computer with word processing applications, spreadsheet applications, toll collection/reservation applications, and/or other applications
- Detailed knowledge of toll rates, fare rates and discount plans preferred
- Familiarity with the New Jersey/Delaware area, knowledge of available forms of transportation
- Ability to process and update credit card and bank debit card transactions
- Ability to handle, count and secure cash and check transactions


### IV.   MINIMUM QUALIFICATIONS

- High School Diploma or equivalent
- Ability to operate personal computer
- Three years experience in call center and/or customer service preferred


### V.   SPECIAL REQUIREMENTS

- May be required to work rotating shifts, evenings, weekends and holidays
- All potential employees will be subject to a background investigation


Revised:  June 6, 2007


**A-25**

Exhibit C

# Administrative Assistant

**Location:   New Castle, DE**
(Police Department)

**Salary: $31,546 (Grade N)**

**Opening Date: June 1, 2004    Closing Date: June 15, 2004**

## I.    NATURE OF WORK:

An Administrative Assistant performs full clerical, administrative and general office duties involving transcription, typing, record and file maintenance, and mail distribution and telephone reception.   Business contacts may include persons at all levels within the Authority, related organizations and community.   The nature of this work is highly confidential and requires discretion in dealing with managers, supervisors, and employees.

**Essential Duties and Responsibilities**

- Assist in the administrative requirements of assigned business unit and performs related duties as required.
- Prepares memos, letters and general correspondence in support of assigned business unit activities.
- Coordinates departmental communications and processes.
- Supervises the completion of front-line surveys.
- Provides routine information to applicants and employees.
- Routes incoming mail to appropriate personnel.
- Manages appropriate record keeping and databases for assigned department.
- Receives phone calls and visitors, makes appointments and keeps schedules as directed.
- Facilitates    the    process    regarding    police,    maritime    or    other    authority accreditation/certifications (i.e., tracking, and follow-up within timeframes, up-to-date files).
- May prepare and submit payroll.

## II.    REQUIRED KNOWLEDGE:

- Must be willing and capable of learning technical requirements related to the assigned area of work.

## II.    MINIMUM QUALIFICATIONS:

- Associate's degree or appropriate equivalent experience.

# A-22

**Preferred Education and Experience**

- Bachelor's degree

**Present employees who are interested must contact the Human Resources office
NO LATER than 4:00 p.m. Tuesday, June 15, 2004.**

_____

**Trudy Spence-Parker
Chief Human Resources Officer**

**A-23**

Exhibit D

DELAWARE RIVER AND BAY AUTHORITY

Department:         (Generic)
Class Title:        Administrative Assistant
Status:             Non-Exempt
Reports To:
Grade:              N

## I.   POSITION SUMMARY

An Administrative Assistant performs full clerical, administrative, and general office duties involving transcription, typing, record and file maintenance, mail distribution and telephone reception.  Business contacts may include persons at all levels within the Authority, related organizations, and community.  The nature of this work is highly confidential and requires discretion in dealing with managers, supervisors, and employees.

## II.   ESSENTIAL DUTIES AND RESPONSIBILITIES

- Assists in the administrative requirements of assigned business unit and performs related duties as required
- Prepares memos, letters, and general correspondence in support of assigned business unit activities
- Coordinates departmental communications and processes
- Supervises the completion of front-line surveys
- Provides routine information to applicants and employees
- Routes incoming mail to appropriate personnel
- Manages appropriate record keeping and databases for assigned department
- Receives phone calls and visitors, makes appointments and keeps schedules as directed
- Facilitates the process regarding police, maritime or other authority accreditation/certifications (i.e., tracking, follow-up within timeframes, up-to-date files)
- May prepare and submit payroll

## III.   REQUIRED KNOWLEDGE, SKILLS, AND ABILITIES

- Must be willing and capable of learning technical requirements related to the assigned area of work
- Exercise judgment within generally defined guidelines and instructions
- Effective oral and written communication skills
- Excellent typing and computer skills
- Ability to operate standard office equipment
- Proficiency in organizing and maintaining files

D00636

- Ability to prioritize assignments
- Must be able to handle confidential information with a high level of discretion

## IV.    REQUIRED EDUCATION AND EXPERIENCE

- Associate's degree or appropriate equivalent experience

D00637

Exhibit 3

06/26/2008 15:20 FAX 3025716305          DRBA EXEC OFFICES          → MARTINELLI YCST          ☑005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD S. RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-746 (MPT) |
| | ) | |
| THE DELAWARE RIVER AND BAY | ) | (Consolidated) |
| AUTHORITY, JAMES JOHNSON, | ) | |
| Individually, JAMES WALLS, Individually, | ) | |
| TRUDY SPENCE-PARKER, Individually, | ) | |
| and CONSUELLA PETTY-JUDKINS, | ) | |
| Individually, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>DECLARATION OF STEPHEN D. WILLIAMS</u>

I, Stephen Williams, under penalty of perjury, do hereby declare as follows:

1.    Since January of 2005, I have been the Director of Airports at the Delaware River and Bay Authority.

2.    In my position, I directly supervise the Senior Airport Manager, who, in turn, supervises Ronald S. Riley ("Riley).

3.    Through my supervisory role with regard to Riley, I am familiar with his daily duties and level of responsibility as an Operations Clerk.

4.    Riley's responsibilities of an Operations Clerk are not substantially equal to either an Administrative Assistant ("AA") or a Customer Service Representative ("CSR"), as described in the job descriptions for those positions.

5.    CSRs, as reflected in the job description contained in Riley's Appendix at A-24 and attached hereto as Exhibit A, are responsible for "handl[ing] large sums of money" and "handling and resolving customer complaints/problems in a courteous, professional manner." The Operations Clerk position does not have either of these responsibilities.

6.      AAs, as reflected in the job description contained in Riley's Appendix at A22-23 and attached hereto as Exhibit B, are responsible for preparing memos, letters, and general correspondence in support of assigned business unit activities.  The AA position also requires dealing with "highly confidential" matters and requires discretion in dealing with managers, supervisors, and employees.  The Operations Clerk position does not require these responsibilities.

7.      On at least one occasion in 2006, I met with Riley, James Walls, and a union representative.  During that meeting, we carefully reviewed Riley's job responsibilities and confirmed that they matched and did not exceed his job description.

I declare under penalty of perjury that the foregoing is true and correct.

_____
STEPHEN D. WILLIAMS

Dated:  June 26, 2008
Wilmington, Delaware

Christine D Johnson
6/26/2008
CHRISTINE D. JOHNSON
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Sept. 17, 2009

DB01:2564724.1                                          051649.1014

Exhibit A

**DELAWARE RIVER AND BAY AUTHORITY**

| | |
|---|---|
| Department: | Toll Operations/Ferry Operations |
| Position Title: | Customer Service Representative |
| Status: | Non Exempt |
| Grade: | N |
| Reports To: | Supervisor |

## I.  POSITION SUMMARY

This is an essential customer service position for the Authority.  Provides courteous, professional service to customers, accommodates customer requests regarding DRBA crossings, and resolves customer inquiries in a timely manner.  Responsible for accurate money handling, including cash, check and credit card transactions as required, may maintain required bank, may make daily deposit of funds and completes required reports. This employee may, at times, assist the supervisory staff with training and mentoring new employees, handling commercial accounts and group sales, updating customer service and group sales databases, distributing promotional materials, conducting data entry for customer surveys, and performing other administrative support duties as needed. This employee is responsible for following established safety procedures to protect self, co-workers and public from harm. Employees within this classification may be required to work rotating shifts that involve evenings, weekends and holidays.

## II.  ESSENTIAL DUTIES AND RESPONSIBILITIES

- Interacts with the public, customers, and businesses in a professional manner; providing accurate  information regarding DRBA crossings
- Answers phone calls, performs telephone sales and business transactions, handles business related out-calls
- Provides excellent customer service, including handling and resolving customer complaints/problems in a courteous, professional manner
- Processes customer information and transactions using a personal computer using a variety of computer applications including Microsoft Windows applications, toll software, and/or other applications
- Provides accurate information, researches customer issues, and resolves disputes in a timely manner
- Handles large sums of money as required and follows policies regarding change funds (banks) and deposits
- Accepts and accurately processes financial transactions including cash, checks, credit cards, and bank debit cards required for various customer transactions
- Completes required reports
- Provides traveling directions, maps, brochures and information about local

**A-24**

attractions to customers
- Follows established safety practices

## III.    REQUIRED KNOWLEDGE, SKILLS, AND ABILITIES

- Excellent telephone and interpersonal customer service skills
- Working knowledge of call center sales and customer service
- Decision making and conflict resolution skills
- Ability to operate a variety of office equipment including a personal computer with word processing applications, spreadsheet applications, toll collection/reservation applications, and/or other applications
- Detailed knowledge of toll rates, fare rates and discount plans preferred
- Familiarity with the New Jersey/Delaware area, knowledge of available forms of transportation
- Ability to process and update credit card and bank debit card transactions
- Ability to handle, count and secure cash and check transactions

## IV.    MINIMUM QUALIFICATIONS

- High School Diploma or equivalent
- Ability to operate personal computer
- Three years experience in call center and/or customer service preferred

## V.    SPECIAL REQUIREMENTS

- May be required to work rotating shifts, evenings, weekends and holidays
- All potential employees will be subject to a background investigation

Revised: June 6, 2007

**A-25**

Exhibit B

## Administrative Assistant

**Location:   New Castle, DE**
(Police Department)

**Salary: $31,546 (Grade N)**

**Opening Date: June 1, 2004    Closing Date: June 15, 2004**

**I.    NATURE OF WORK:**

An Administrative Assistant performs full clerical, administrative and general office duties involving transcription, typing, record and file maintenance, and mail distribution and telephone reception.   Business contacts may include persons at all levels within the Authority, related organizations and community.   The nature of this work is highly confidential and requires discretion in dealing with managers, supervisors, and employees.

**Essential Duties and Responsibilities**

- Assist in the administrative requirements of assigned business unit and performs related duties as required.
- Prepares memos, letters and general correspondence in support of assigned business unit activities.
- Coordinates departmental communications and processes.
- Supervises the completion of front-line surveys.
- Provides routine information to applicants and employees.
- Routes incoming mail to appropriate personnel.
- Manages appropriate record keeping and databases for assigned department.
- Receives phone calls and visitors, makes appointments and keeps schedules as directed.
- Facilitates the process regarding police, maritime or other authority accreditation/certifications (i.e., tracking, and follow-up within timeframes, up-to-date files).
- May prepare and submit payroll.

**II.    REQUIRED KNOWLEDGE:**

- Must be willing and capable of learning technical requirements related to the assigned area of work.

**II.    MINIMUM QUALIFICATIONS:**

- Associate's degree or appropriate equivalent experience.

## A-22

**Preferred Education and Experience**

- Bachelor's degree


**Present employees who are interested must contact the Human Resources office
NO LATER than 4:00 p.m.  Tuesday, June 15, 2004.**


_____

**Trudy Spence-Parker
Chief Human Resources Officer**


**A-23**

Exhibit 4

COLES, ALEX E.

Page 1

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE


RONALD S. RILEY              :  C.A. No. 05-746 (MPT)
     Plaintiff              :  C.A. No. 07-336 (MPT)
                             :
  - vs -                     :
                             :
THE DELAWARE RIVER AND BAY   :
AUTHORITY, JAMES JOHNSON,    :
Individually, JAMES WALLS,   :
Individually, TRUDY SPENCE-  :
PARKER, Individually, and    :
CONSUELLA PETTY-JUDKINS,     :
Individually                 :
     Defendants              :



        ORAL DEPOSITION OF ALEX E. COLES, taken before

Nancy R. Toner, Registered Professional Reporter, Notary

Public, at the offices of Young, Conaway, Stargatt and

Taylor, 1000 West Street, Wilmington, Delaware on Wednesday,

February 27, 2008, commencing at 9:30 a.m.





                KARASCH & ASSOCIATES
        REGISTERED PROFESSIONAL REPORTERS
               PENNSYLVANIA AND DELAWARE
                  800-621-5689

COLES, ALEX E.

Page 37

1    do about it.  I can't change the job description.  I
2    can't, you know, rewrite it and put stuff in it or
3    take stuff out of it.
4        Q.    All right.  So in meeting with Ron, you
5    told him that you agree that his pay scale is not
6    according to his job responsibilities but there's
7    nothing you can do about it personally?
8        A.    I don't believe no one in my department's
9    pay scale is what they are responsible for, but
10   there's nothing I can do about it.
11       Q.    And Ron is included in that?
12       A.    Yes.  This has been in ops meeting with
13   everyone.
14       Q.    Who is present at the operations meeting?
15       A.    All my operations.
16       Q.    And you've told that to Ron personally?
17       A.    Yes.  I even had because after that,
18   because they were talking to me.  I had discussions
19   with Steven Walls.  And Walls came to our meeting
20   and I had him explain to them the process as far as
21   the job descriptions are concerned because it's
22   nothing I can do.
23       Q.    And your advice to Ron and any other
24   person in your department that felt that they were
25   not being compensated appropriately was to make the

COLES, ALEX E.

Page 62

1     A.    You have to ask Mr. Williams.

2     Q.    I will do that.

3     A.    It's not the first time.  It's not the

4  first time that he's called me.  Other people have

5  called me about the operations staff.  To me, it's

6  not out of ordinary.  To you, it may seem that.

7            I receive phone calls all the time about

8  staff.  We run a 24-hour business so I receive phone

9  calls 8:00 in the morning and 2:00 in the morning.

10           I do the same thing.  I will call the

11  individual themselves, ask them to tell me what's

12  going on.  If they give me a viable explanation, the

13  conversation is over.

14     Q.    What did Ron tell you during the

15  conversation that you had with him?

16     A.    I believe he said he was talking to

17  somebody.  I don't know.  Whatever he said to me

18  must have made sense because that was the end of the

19  conversation as far as I was concerned.

20     Q.    You didn't take any further action against

21  Ron?

22     A.    That's it.

23     Q.    Did Ron say I was in the cafeteria for as

24  long as Mr. Williams told you?

25     A.    Yeah, probably.

COLES, ALEX E.

Page 68

1    Q.    Senior airport customer service

2    representative.

3    A.    I don't know what they do.

4    Q.    Do you believe that he functions at a

5    higher level than an operations clerk?

6    A.    I believe -- we went over that.  I believe

7    the whole department functions at a higher level

8    than the levels they were put in.  Not just Ron.

9    Q.    Do you know what a Notam, N-O-T-A-M, is?

10    A.    Notice to airman.

11    Q.    Does Ron issue Notams?

12    A.    Yes, he does.

13    Q.    Is that something outside his job

14    responsibilities as an operations clerk?

15    A.    No, it's not.

16    Q.    You believe that falls within his job

17    responsibilities?

18    A.    It's in his job, example of his work.

19    Q.    Does Ron manage access to the West T air

20    gate?

21    A.    Yes.

22    Q.    And that's done by key card access,

23    correct?

24    A.    Yes.

25    Q.    And Ron manages the ID badging system at

COLES, ALEX E.

Page 70

1    American?

2        A.    No.

3        Q.    Do you believe that the Authority has

4    retaliated against Ron because he filed a grievance

5    complaint against the Authority in a lawsuit?

6        A.    No.

7        Q.    You don't believe that the Authority has

8    either discriminated upon him or retaliated upon

9    him, but you do believe that he should receive a pay

10   increase for his responsibilities, correct?

11       A.    I believe my whole department should

12   receive a pay increase.

13       Q.    I understand that.  But we're in a

14   situation where the rest of your department is not

15   subject to a lawsuit and Ron is.

16       A.    I understand.

17       Q.    And we are only talking about Ron today.

18   With respect to Ron and his claim or lawsuit, you

19   believe that Ron should receive a pay increase from

20   his current pay of Pay Grade P as operations clerk,

21   correct?

22       A.    Yes.

23       Q.    And you've expressed that to Mr. Williams

24   and Mr. Walls, correct?

25       A.    Yes.

COLES, ALEX E.

Page 79

1   treatment of minorities, the adequate pay they

2   receive, and the consideration for promotions, that

3   you see discrimination or unfair treatment as to

4   minorities including African Americans at the

5   Authority, correct?

6        A.   Yeah.   I worked in the maintenance

7   department.

8             Let me break it down.   I worked in

9   maintenance and then came to airports.   I didn't

10  start dealing with, as we say, the upper echelon

11  until I came to airports and was bumped to my

12  position.

13            A lot of my experiences when I was coming

14  through the Authority I dealt with and when they

15  thought I was just a Maintenance 1 Tech to now --

16  and that's probably why, like, now I don't see as

17  much probably because of where I am, to be honest

18  with you, in my opinion.

19        Q.   Because you are management now?

20        A.   Right.   When I say you have racists, you

21  do but it's probably both sides.   I wouldn't say

22  whites is racist, blacks as well within the

23  Authority.   You have issues.   That's what I say in

24  the experiences that I talk about.

25            As far as the pay and all that, could it

Exhibit 5

Page 1

                IN THE U.S. DISTRICT COURT IN AND FOR THE
                         DISTRICT OF DELAWARE

                              - - -

RONALD S. RILEY,                :
                                :
        Plaintiff,              :  No. 05-746
                                :
        Vs.                     :
                                :
THE DELAWARE RIVER & BAY        :
AUTHORITY, JAMES JOHNSON,       :
Individually, JAMES WALLS,      :
Individually,                   :
TRUDY SPENCE-PARKER,            :
Individually and Consuella      :
Petty-Judkins, individually,    :
                                :
        Defendants.             :


                              - - -
                  WEDNESDAY, APRIL 2, 2008
                              - - -




        oral deposition of CONSUELLA PETTY-JUDKINS, taken
pursuant to Notice, before Shari Bowen, Certified
Shorthand Reporter and Notary Public, at Young,
Conaway, Stargatt & Taylor, LLP, 1000 West Street, 17th
Floor, Wilmington, Delaware, commencing at 4:45 p.m.




                    KARASCH & ASSOCIATES
               REGISTERED PROFESSIONAL REPORTERS
                   PENNSYLVANIA and DELAWARE

A P P E A R A N C E S:

Page 36

1    turned over to Trudy and they go to HAY.  Now, I don't

2    even know if Jim Walls even sits present when those job

3    descriptions are reviewed.  As far as I knew that was

4    only something that was done between HAY and Trudy.

5        Q.    Are you aware either from Trudy, or any

6    conversations you've had with The Authority, that Jim

7    Johnson made a statement concerning Mr. Riley that he

8    would not be reclassified and his pay would not be

9    adjusted because he had filed the grievances, the EEOC

10   complaints and the lawsuits?

11       A.    No.

12       Q.    Do you have any other information regarding

13   Mr. Riley's complaints of racial discrimination or

14   retaliation other than what you've told me today?

15       A.    No, those are the only ones I have so far.

16             MR. HALL:  I think I'm done.  Let's just

17   take a two-minute break.

18             (Whereupon, a break was taken.)

19   BY MR. HALL:

20       Q.    Ms. Petty-Judkins, I just have a few

21   questions for you and I think we can wrap things up.

22       A.    Okay.

23       Q.    Do you believe that Mr. Riley has been

24   subject to racial discrimination in his employment at

25   The Authority?

Page 37

1      A.    No.

2      Q.    You hold that opinion despite the fact that

3   Mr. Coles believes that he should be compensated at a

4   higher level than he is, but either Mr. Walls or

5   Mr. Johnson refused to do so?

6      A.    I don't know that Mr. Walls or Mr. Johnson

7   had anything with refusing to do so.  Again, that was

8   something that went back to HAY or was supposed to go

9   back to HAY.  That was something that would have been

10  reviewed with Trudy and HAY.  I agree that his job

11  probably should be reclassified to a higher pay status.

12  I had even mentioned that to Walls, just reclassify him

13  to a higher pay status, but I had also mentioned that

14  about the airport safety people because we had to

15  continuously re-post it and nobody wanted it due to the

16  salary.  So, yeah, I think it should be.

17     Q.    Okay.  And you reported this to Mr. Walls

18  that Mr. Riley's job should be reclassified because his

19  performance is higher than that of an operations clerk;

20  is that correct?

21     A.    I felt that some of the things that he was

22  doing probably were -- that were mentioned probably

23  should be reclassified clerical-wise, especially since

24  he was over at the airport and seemed to be little bit

25  more functions than the rest of the organization.

Page 41

1    A.    No.    I've never had any conversation with Jim

2    about anybody's pay status.

3    Q.    Are you aware of any retaliation or different

4    treatment that Mr. Riley's received from other

5    employees because he's filed a lawsuit?

6    A.    No.

7    Q.    Has Mr. Riley ever spoken to you about the

8    fact that he believes he's treated differently than

9    other employees because he's filed a lawsuit?

10    A.    No.    The only, outside of his harassment

11    complaints, I've never had anything come to mind about

12    retaliation.

13    Q.    Do you know if Mr. Coles believes, and if you

14    don't you can tell me, but through any conversations of

15    Mr. Coles, do you know whether Mr. Coles believes that

16    the reason Ron hasn't received a pay increase or

17    reclassification is because he's filed these lawsuits?

18    A.    I don't know.    I would assume not but I don't

19    know.

20    Q.    Has he ever told you anything of that nature?

21    A.    No.

22    MR. HALL:    I think that's it.    That's all.

23    (Whereupon, the deposition concluded at

24    5:35 p.m.)

25